1  Troy M. Yoshino, No. 197850
   Matthew J. Kemner, No. 188126
2  Richard J. Zuromski, Jr., No. 227569
   **CARROLL, BURDICK & McDONOUGH LLP**
3  Attorneys at Law
   44 Montgomery Street, Suite 400
4  San Francisco, CA  94104
   Telephone:    415.989.5900
5  Facsimile:    415.989.0932
   Email:        tyoshino@cbmlaw.com
6                mkemner@cbmlaw.com
                 rzuromski@cbmlaw.com
7
   Attorneys for Defendants
8  Mercedes-Benz USA, LLC, a Delaware Limited Liability
   Company; Mercedes-Benz Financial Services USA, LLC, a
9  Delaware Limited Liability Company

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12                   WESTERN DIVISION

13

14  BRIAN FRIEDMAN and DANIEL            No. CV12-07204 GAF (CWx)
    BROWN, individually and on behalf
15  of all other similarly situated,

16            Plaintiffs,                **NOTICE OF REMOVAL OF CIVIL ACTION
                                         UNDER 28 U.S.C. §§ 1332(D), 1441, 1446
17       v.                              & 1453 (CLASS ACTION FAIRNESS ACT)**

18  MERCEDEZ-BENZ USA, LLC, a
    Delaware Limited Liability
19  Company; KEYES EUROPEAN
    LLC, a California Limited Liability
20  Company; MERCEDES-BENZ
    FINANCIAL SERVICES USA,
21  LLC, a Delaware Limited Liability
    Company; and Does 1 through 10,
22  inclusive,

23            Defendants.

24

25  TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES AND

26  THEIR COUNSEL OF RECORD:

27       PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. sections 1332(d), 1441,

28  1446 and 1453, defendants MERCEDES-BENZ USA, LLC ("MBUSA") and

CBM-MERCEDES\SF557559.2

NOTICE OF REMOVAL OF CIVIL ACTION

1   MERCEDES-BENZ FINANCIAL SERVICES USA, LLC ("MB FINANCIAL"),

2   by and through their counsel of record, hereby remove to this Court the state-court

3   action described herein.

4          Federal diversity jurisdiction exists under the Class Action Fairness Act

5   ("CAFA"), 28 U.S.C. section 1332(d), because this case is a "class action" under

6   CAFA, the CAFA diversity of citizenship requirements are fully met, and the

7   matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest

8   and costs.  MBUSA and MB FINANCIAL state the following grounds for removal:

9                                    **INTRODUCTION**

10         1.    On July 13, 2012, Plaintiffs filed a Class Action Complaint against

11   MBUSA, MB FINANCIAL and Keyes European LLC in the Superior Court of

12   California for the County of Los Angeles, styled *Brian Friedman and Daniel*

13   *Brown, individually and on behalf of all others similarly situated v. Mercedes-Benz*

14   *USA, LLC, a Delaware Limited Liability Company; Keyes European LLC, a*

15   *California Limited Liability Company; Mercedes-Benz Financial Services USA,*

16   *LLC, a Delaware Limited Liability Company; and Does 1 through 10, inclusive,*"

17   Case Number BC488352 ("Class Action Complaint").  At the time of filing this

18   Notice of Removal, the case was still pending in the Superior Court of California

19   for the County of Los Angeles.  *See* 28 U.S.C. § 1441(a).

20         2.    The Class Action Complaint was served on MBUSA and MB

21   FINANCIAL on July 23, 2012.

22         3.    True and correct copies of the Class Action Complaint, Summons and all

23   other documents as served on MBUSA in this action are attached hereto as <u>Exhibit</u>

24   <u>A</u>.  True and correct copies of the Class Action Complaint, Summons and all other

25   documents as served on MB FINANCIAL in this action are attached hereto as

26   <u>Exhibit B</u>.  *See* 28 U.S.C. § 1446(a).

27         4.    When a plaintiff files suit in state court but could have invoked the

28   original jurisdiction of the federal courts, the defendant may remove the action to

CBM-MERCEDES\SF557559.2                              -2-

NOTICE OF REMOVAL OF CIVIL ACTION

1   federal court.  28 U.S.C. § 1441(a); *Sparta Surgical Corp. v. Nat'l Ass'n of*
2   *Securities Dealers,* 159 F.3d 1209, 1211 (9th Cir. 1998).

3        5.   This Court has original jurisdiction over this action under CAFA, 28
4   U.S.C. section 1332 *et seq.*, and it may be removed from the Superior Court of
5   California for the County of Los Angeles to this Court pursuant to 28 U.S.C.
6   sections 1332(d), 1446 and 1453(b), because it is a "class action" comprised of at
7   least 100 members in the aggregate, minimal diversity of citizenship exists between
8   the parties, and the amount in controversy exceeds the sum of $5,000,000,
9   exclusive of interest and costs.

10   **THE REMOVED ACTION IS A CLASS ACTION SUBJECT TO CAFA REMOVAL**

11        6.   This case is a "class action" as defined in 28 U.S.C. section
12   1332(d)(1)(B) and is therefore removable under the provisions of CAFA. (*See, e.g.,*
13   Ex. A ¶¶ 1, 2, 28-40, 86-113, Prayer ¶ 1.)

14        7.   In their Class Action Complaint, Plaintiffs purport to bring this case "as a
15   class action pursuant to the provisions of California Code of Civil Procedure
16   Section 382 and/or Civil Code Section 1781(a)." (Ex. A ¶ 28.) Further, the caption
17   of Plaintiffs' Class Action Complaint denotes that this is a "CLASS ACTION" and
18   that this case was assigned to the department hearing such actions in the Superior
19   Court of California for the County of Los Angeles. (*See* Ex. A.)

20        8.   In their Class Action Complaint, Plaintiffs define the putative class to
21   include "themselves and all others similarly-situated as a representative member of
22   the following proposed class":

23       All consumers who purchased or leased a 2012 Mercedes CLS550
    vehicle from a California dealership, for personal use to be registered in
24       the State of California, at any time between January 1, 2011 and March
    31, 2012, and the vehicle was delivered to the consumer without the
25       SiriusXM Weather and/or active parking guideline features.  [Ex. A ¶
    29.]
26
27        9.   Section 382 of the California Code of Civil Procedure authorizes actions
    to be brought by "one or more" persons who may "sue or defend for the benefit of
28

-3-

**NOTICE OF REMOVAL OF CIVIL ACTION**

1  all" where "the question is one of a common or general interest, of many persons,

2  or when the parties are numerous, and it is impracticable to bring them all before

3  the court...." Thus, actions alleged under this section qualify as "class actions" for

4  removal jurisdiction under CAFA because they "authorize[e] an action to be

5  brought by 1 or more representatives as a class action." *See* 28 U.S.C. § 1711(2);

6  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1202 (E.D. Cal. 2008)

7  (defendants properly removed case originally brought under Cal. Civ. Proc. Code

8  § 382 as a "class action" under CAFA).

9      10.  Accordingly, the Class Action Complaint falls within the definition of a

10  "class action" under CAFA. *See* 28 U.S.C. § 1332(d)(1)(8).

11  **PLAINTIFFS AND MBUSA AND MB FINANCIAL ARE CITIZENS**
**OF DIFFERENT STATES**
12

13      11.  Complete diversity of citizenship exists between a member of the

14  proposed class of Plaintiffs and at least one defendant, as required by CAFA. 28

15  U.S.C. § 1332(d)(2).

16      12.  Both at the time this action was filed and at the time of removal, MBUSA

17  was, and still is, a Delaware Limited Liability Company that maintained, and still

18  maintains, its home office and principal place of business in New Jersey.

19  (Declaration of Gail Slaughter in Support of Notice of Removal of Civil Action

20  ("Slaughter Decl.") ¶ 4.)[1] MBUSA has only one member, Daimler North America

21  Corporation ("DNAC"). DNAC is a Delaware corporation with its principal place

22  of business in New Jersey. (*Id.* ¶ 5.) Both at the time this action was commenced

23  and at the time of the filing of the Notice of Removal, neither MBUSA nor DNAC

24  were citizens of the State of California. (*Id.* ¶¶ 4, 5.)

25

26

---

27  [1]    The Court is authorized to consider declarations and "summary-judgment-type"
evidence in considering whether removal is proper. *See Lim v. Helio, LLC*, 2012 U.S.
28  Dist. LEXIS 12871, at *4 (C.D. Cal. Feb. 2, 2012).

1    13. Both at the time this action was filed and at the time of removal, MB

2  FINANCIAL was, and still is, a Delaware Limited Liability Company that

3  maintained, and still maintains, its home office and principal place of business in

4  Michigan. (Declaration of Danford E. Bickmore in Support of Notice of Removal

5  of Civil Action ¶ 4.) MB FINANCIAL has only one member, Daimler Investment

6  US Corporation ("Daimler Investment"). Daimler Investment is a Delaware

7  corporation with its principal place of business in New Jersey. (*Id.* ¶ 5.) Both at

8  the time this action was commenced and at the time of the filing of the Notice of

9  Removal, neither MB FINANCIAL nor Daimler Investment were citizens of the

10  State of California. (*Id.* ¶¶ 4, 5.)

11    14. The named Plaintiffs, Brian Friedman and Daniel Brown, are both

12  citizens of the State of California. (*See* Ex. A ¶¶ 19, 20.) Among other things,

13  Plaintiffs have alleged that "at all times material" they have "resided in the City of

14  North Hollywood, County of Los Angeles, State of California." (*Id.*)

15  <u>**THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000**</u>

16    15. CAFA provides for original jurisdiction for "any civil action in which the

17  matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest

18  and costs." 28 U.S.C. § 1332(d)(2). Unlike traditional review of the amount in

19  controversy for claims asserted by individuals, in class actions, CAFA requires that

20  claims of class members be aggregated:

21       In any class action, the claims of the individual class members shall be
         aggregated to determine whether the matter in controversy exceeds the
22       sum or value of $5,000,000, exclusive of interest and costs. [28 U.S.C.
         § 1332(d)(6).]
23

24    16. The amount in controversy is determined by evaluating the plaintiff's

25  complaint and the record as a whole. *See Lewis v. Verizon Communications, Inc.*,

26  627 F.3d 395, 400 (9th Cir. 2010); *Lim*, 2012 U.S. Dist. LEXIS 12871, at *6. The

27  amount in controversy is "simply an estimate of the total amount in dispute, not a

28  prospective assessment of defendant's liability" or "proof of the amount the

1   plaintiff will recover." *Lewis*, 627 F.3d at 400 (quoting *McPhail v. Deere & Co.*,

2   529 F.3d 947, 956 (10th Cir. 2008)).

3       17.   MBUSA and MB FINANCIAL deny all of Plaintiffs' allegations and

4   specifically deny that Plaintiffs or any putative class members are entitled to any

5   relief.  But without prejudice to their defenses in this action, MBUSA and MB

6   FINANCIAL aver that the amount in controversy exceeds the $5,000,000 threshold

7   for removal jurisdiction under CAFA, 28 U.S.C. section 1332(d)(2), based on the

8   following:

9       (a)   Plaintiff seeks to represent "[a]ll consumers who purchased or leased a

10  2012 Mercedes CLS550 vehicle from a California dealership, for personal use to be

11  registered in the State of California, at any time between January 1, 2011 and

12  March 31, 2012, and the vehicle was delivered to the consumer without the

13  SiriusXM Weather and/or active parking guideline features."  (Ex. A ¶ 29.)

14  Plaintiff alleges that "Mercedes sold over 5,000 CLS vehicles...across the United

15  States between June and December, 2011, and over 740 CLS vehicles...across the

16  United States between January and May 2012."  (*Id.* ¶ 3.)  According to MBUSA's

17  records, 1,066 of the model year 2012 CLS550 vehicles at issue were sold in 2011

18  in California, and an additional 388 of the model year 2012 CLS550 vehicles at

19  issue were sold through March 31, 2012.  (Slaughter Decl. ¶ 7.)  These figures do

20  not include resale of putative class vehicles.  Therefore, the number of putative ·

21  class members likely exceeds 1,454.  (*Id.*)

22      (b)   Plaintiffs alleged the cost of the vehicle at issue to be "roughly $80,000."

23  (Ex. A ¶ 54.)  In truth, the cost of a 2012 CLS550 can range from a low

24  "Manufacturer's Suggested Retail Price" of $72,000 to over $97,000, depending on

25  the selected options.  Many 2012 CLS550 vehicles were sold with a number of

26  different options.  Therefore, the average cost of a 2012 CLS550 is likely higher

27  than the "roughly $80,000" alleged in Plaintiffs' Class Action Complaint.

28  (Slaughter Decl. ¶ 8.)

CBM-MERCEDES\SF557559.2                             -6-

1       (c)  Plaintiffs' claims are based on allegations that "Defendants failed to

2   repurchase Plaintiffs' or Class members' vehicles and failed to provide Plaintiffs or

3   Class members with comparable 2012 CLS 550 vehicles that *are* equipped with

4   [the alleged] missing features." (Ex. A ¶ 34 (emphasis original).)  Plaintiffs also

5   claim they are entitled to relief because "[a]ll requests for a replacement vehicle or

6   a repurchase of the Vehicle have been rebuffed by Mercedes . . . ." (*Id.* ¶ 80.)

7   Plaintiffs further allege that they "demanded Keyes take the Vehicle back," and that

8   the failure to do so gives rise to their claims.  (*Id.* ¶ 70.)  Plaintiffs also specifically

9   seek rescission of all transactions relating to the putative class vehicles.  (*Id.*, Prayer

10  for Relief ¶ 4.)

11      (d)  To repurchase Plaintiffs' vehicle or to provide Plaintiffs with the

12  requested "replacement" vehicle would cost over $80,000.  To repurchase the 1,454

13  new vehicles sold in California during the putative class period, or to provide

14  replacement vehicles, assuming as Plaintiffs allege an average cost of $80,000 per

15  vehicle, would cost over $116,320,000.  If all transactions involving the putative

16  class vehicles were rescinded, the amount at issue would also be over

17  $116,320,000.  As such, CAFA's $5 million amount-in-controversy requirement is

18  met in this case.

19      (e)  **Amount in Controversy Under CLRA Claim**.  Plaintiffs seek "all

20  available remedies under Civil Code Section 1780" as well as "statutory damages

21  of up to $1,000 per consumer and/or up to $5,000 per consumer who qualifies as a

22  'senior citizen' under the CLRA . . . ." (*Id.* ¶ 96.)  Given the number of putative

23  class members, these statutory damages could amount to several million dollars by

24  themselves.  Of course, plaintiffs seek additional forms of relief as well.  For

25  example:

26      (f)  In their CLRA notification (*id.* ¶ 94), Plaintiffs demanded defendants

27  "rescind Mr. Friedman's lease agreement, refund his lease inception payment,

28  return all of his lease payments, and pay all other incidental and consequential

1   damages he has incurred." (Ex. D (CLRA Notice) at 10.) Plaintiffs also demand

2   that defendants "offer an appropriate correction, replacement, or other remedy for

3   your wrongful conduct." (*Id.* at 11 ¶ (2).)

4       (g)   The claims for rescission alone put at issue more than $116,320,000, as

5   Plaintiffs challenge 1,454 sales of new 2012 CLS550 vehicles sold in California

6   through March 31, 2012, at over $80,000 per vehicle. Thus, the amounts in

7   controversy under the first cause of action alone would make the total amount in

8   controversy well in excess of $5,000,000, exclusive of interest and costs. 28 U.S.C.

9   § 1332(d)(2).

10      (h)   **Amount in Controversy Under Unfair Competition Law Claim**. In

11  their unfair competition law claim, Plaintiffs seek "statutory damages under the

12  CLRA caused by Mercedes' misrepresentations...and by paying more for [the]

13  vehicles than Plaintiffs and the Class Members would have if they had known the

14  true facts...." (Ex. A ¶ 99.) Plaintiffs allege, therefore, that they have "paid

15  excessive amounts of money for their vehicles [and] have not been compensated for

16  the diminution in value for such vehicles..." (*Id.* ¶ 102.) Plaintiffs also request that

17  MBUSA and MB FINANCIAL be enjoined from engaging in acts of unfair

18  competition and that they be required to "engage in a corrective informational and

19  advertising campaign in compliance with all applicable laws." (*Id.* ¶ 103.) Finally,

20  Plaintiffs request that the Court order "Mercedes to provide complete equitable

21  monetary relief...including requiring the payment of restitution of any monies as

22  may be necessary to restore any money or property which may have been acquired

23  by means of such acts of unfair competition and/or disgorgement of all excessive

24  amounts paid to Mercedes or its agents or incurred by Class Members." (*Id.*)

25      (i)   As with Plaintiffs' CLRA claim, the rescission sought under the UCL

26  claim—which would cause a return of the purchase price for each of the 1,454

27  putative class vehicles—puts over $116,320,000 at issue. Further, Plaintiffs do not

28  explain how extensive a "corrective informational and advertising campaign"

1  would be required, but would presumably require MBUSA and MB FINANCIAL

2  to implement such a program at a significant cost.  As with the CLRA claim, the

3  amounts Plaintiffs seek under the UCL claim are well in excess of the $5,000,000

4  threshold, even using some conservative assumptions.  28 U.S.C. § 1332(d)(2).

5       (j)  **Amount in Controversy Under False Advertising Claim.**  Plaintiffs

6  seek "an Order enjoining Mercedes from continuing to engage in acts of unfair

7  competition and to engage in a correctional informational and advertising

8  campaign" as well as "complete equitable monetary relief . . . including requiring

9  the payment of restitution of any monies as may be necessary to restore any money

10  or property which may have been acquired by means of such acts of unfair

11  competition and/or disgorgement of all excessive amounts paid to Mercedes or its

12  agents or incurred by Class Members."  (Ex. A ¶ 111.)

13       (k)  Plaintiffs seek relief similar to that requested in their UCL cause of

14  action.  As discussed above, the rescissionary aspect alone—which would cause a

15  return of the purchase price for each of the 1,454 putative class vehicles—puts over

16  $116,320,000 at issue.  Further, MBUSA and MB FINANCIAL also face

17  unspecified damages for a "corrective informational and advertising campaign" and

18  restitution of "excessive" amounts paid to by class members for their vehicles.

19  Again, the amounts Plaintiffs seek under their False Advertising claim are well in

20  excess of the $5,000,000 threshold.  28 U.S.C. § 1332(d)(2).

21       (l)  **Other Amounts Sought in Plaintiffs' Prayer for Relief.**  Plaintiffs also

22  seek "general, special, and actual damages," "punitive and/or statutory damages,"

23  as well as "attorneys' fees and costs of suit."  (Ex. A Prayer ¶¶ 3, 6, 8.)  Courts

24  consider attorneys' fees, costs, and punitive damages in establishing the amount in

25  controversy for removal jurisdiction under the CAFA amendments.  *See, e.g.,*

26  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).  Given the $116

27  million at issue under the rescission claims alone, punitive damages, attorneys'

28

NOTICE OF REMOVAL OF CIVIL ACTION

1  fees, and costs all would likely—alone, not to mention collectively—far exceed the

2  $5,000,000 jurisdictional threshold.

3      (m) In addition, Plaintiffs seek "*both* equitable relief, including declaratory,

4  injunctive, restitutionary, and other equitable monetary relief" as a form of remedy.

5  (Ex. A ¶ 30 (emphasis added); *see also id.* Prayer ¶ 2.)  Courts have found that

6  enforcing injunctive relief will cause the company forced to do so to suffer a

7  financial loss, and thus such potential loss must be considered when determining

8  the amount in controversy under a plaintiff's complaint.  *See Keeling v. Esuarnce*

9  *Ins. Co.*, 2011 WL 4448578, at *1 (7th Cir. Sept. 26, 2011) ("The cost of

10  prospective relief cannot be ignored in the calculation of an amount in

11  controversy.").  Although Plaintiffs are not specific about the type of injunctive

12  relief required, it is clear that costs related to a "corrective informational and

13  advertising campaign" and other injunctive relief will be significant, in addition to

14  the other amounts in controversy specified above.

15  ## 28 U.S.C. § 1446 REQUIREMENTS

16      **18. Removal Is Timely**.  MBUSA and MB FINANCIAL timely filed this

17  Notice of Removal, within 30 days of service of the Class Action Complaint.  *See*

18  28 U.S.C. § 1446(b).

19      **19. Removal to This Court Is Proper**.  The Class Action Complaint was

20  filed in the Superior Court of California for the County of Los Angeles.  This Court

21  is part of the "district and division within which such action is pending...." 28

22  U.S.C. § 1446(a); 84(c).

23      **20. Pleadings and Process**.  Pursuant to 28 U.S.C. section 1446(a), a "copy

24  of all process, pleadings, and orders served upon" MBUSA and MB FINANCIAL

25  is attached to this Notice of Removal as Exhibits A and B, respectively.  Further

26  Plaintiffs' preemptory challenge to the state court judge originally assigned to this

27  matter and the Court's order on Plaintiffs' challenge are attached as Exhibit C.

28  Finally, the CLRA notices served by Plaintiffs on MBUSA and MB FINANCIAL

1   are attached as Exhibit D.  Neither MBUSA nor MB FINANCIAL has answered or

2   otherwise filed a response to the Class Action Complaint.  Other than the

3   documents attached as Exhibit A-D, no other pleadings, process, orders, or other

4   papers in this case have been filed, served, or otherwise received by defendants or,

5   to its knowledge, are presently on file in the Superior Court of California for the

6   County of Los Angeles.  In the event that additional filings, if any, come to

7   MBUSA or MB FINANCIAL'S attention, they will promptly provide this Court

8   with true and correct copies of all such papers.

9         21.  **Notice to All Parties and the State Court.**  Concurrent with the filing of

10   this Notice, MBUSA and MB FINANCIAL gave written notice of this Notice of

11   Removal to Plaintiffs' counsel of record and counsel of record for Keyes European

12   LLP, and will file a copy of this Notice of Removal with the Clerk of the Superior

13   Court of California for the County of Los Angeles.  28 U.S.C. § 1446(a), (d).

14         WHEREFORE, notice is given that this action is removed from the Superior

15   Court of California for the County of Los Angeles, to the United States District

16   Court for the Central District of California, Western Division.

17   Dated:  August 22, 2012            Respectfully submitted,

18                                       CARROLL, BURDICK & McDONOUGH
19                                       LLP

20

21                                       By _____
                                            Troy M. Yoshino
22                                       Attorneys for Defendants
                                         Mercedes-Benz USA, LLC, a Delaware
23                                       Limited Liability Company
                                         Mercedes-Benz Financial Services USA,
24                                       LLC, a Delaware Limited Liability Company

25

26

27

28

**EXHIBIT A**

 CT Corporation

**Service of Process Transmittal**
07/23/2012
CT Log Number 520910676

**TO:** Marco DeSanto, General Counsel
Mercedes-Benz USA, LLC
One Mercedes Drive, PO Box 350
Montvale, NJ 07645-0350

**RE:** **Process Served in California**

**FOR:** Mercedes-Benz USA, LLC (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Brian Friedman and Daniel Brown, individually and on behalf of all others similarly situated, Pltfs. vs. Mercedes-Benz USA, LLC, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Instructions, Cover Sheet, Addendum and Statement, Notice, ADR Packet, Complaint, Exhibit(s), Affidavit |
| **COURT/AGENCY:** | Los Angeles County - Superior Court - Hill Street, CA<br>Case # BC488352 |
| **NATURE OF ACTION:** | Product Liability Litigation - Breach of Warranty - Class Action - 2012 Mercedes CLS550 vehicles missing the SiriusXM Weather and active parking guidelines features - Seeking declaratory and injunctive relief |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/23/2012 at 17:38 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Christopher P. Barry<br>Rosner, Barry & Rabbitt, LLP<br>10085 Carroll Canyon Road<br>Suite 100<br>San Diego, CA 92131<br>858 348 1005 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/23/2012, Expected Purge Date: 08/22/2012<br>Image SOP<br>Email Notification, Marco DeSanto marco.desanto@daimler.com<br>Email Notification, Sharon Duffy Sharon.Duffy@mbusa.com<br>Email Notification, Paula Staropoli paula.staropoli@mbusa.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street<br>Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of 1 / AG

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Exhibit A
Page 1 of 67

3:10p

# SUMMONS
## (CITACION JUDICIAL)

CONFORMED SUM-100
OF ORIGINAL FILED
FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)erior Court

JUL 13 2012

John A Clarke, Executive Officer/Clerk
By _____ Deputy
A.E. LaFLEUR-CLAYTON

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MERCEDES-BENZ USA, LLC, a Delaware Limited Liability
Company; [SEE ATTACHMENT]

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
BRIAN FRIEDMAN and DANIEL BROWN, individually and on behalf
of all others similarly situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | CASE NUMBER:
*(Número del Caso):* |
|---|---|
| The name and address of the court is:
*(El nombre y dirección de la corte es):*
LOS ANGELES SUPERIOR COURT - Stanley Mosk Courthouse
111 North Hill Street
Los Angeles, CA 90012 | B C 4 8 8 3 5 2 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Christopher P. Barry                                              (858)348-1005
Rosner, Barry & Babbitt, LLP
10085 Carroll Canyon Rd, Ste 100, San Diego, CA 92131

| DATE: | John A. Clarke | Clerk, by | AMBER LaFLEUR-CLAYTON | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Mercedes-Benz USA, LLC, a Delaware Limited Liability Company

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☑ other *(specify):* VLC
4. ☐ by personal delivery on *(date):*

[SEAL]
JUL 13 2012

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Page 1 of 1

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| —Friedman / Brown v. Keyes European | |

### INSTRUCTIONS FOR USE

This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties
Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[ ] Plaintiff   [X] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

KEYES EUROPEAN LLC, a California Limited Liability Company; MERCEDES-BENZ FINANCIAL
SERVICES USA, LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

### ADDITIONAL PARTIES ATTACHMENT
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Christopher P. Barry, 179308
Rosner, Barry & Babbitt, LLP
10085 Carroll Canyon Rd, Ste 100, San Diego, CA 92131
TELEPHONE NO.: (858)348-1005    FAX NO.: (858)348-1150
ATTORNEY FOR (Name): Brian Friedman and Daniel Brown

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Friedman / Brown v. Keyes European

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: BC488352 |
|---|---|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter    ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1.** Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☒ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

**2.** This case ☒ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. ☐ Large number of separately represented parties
b. ☒ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☒ Substantial amount of documentary evidence
d. ☐ Large number of witnesses
e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. ☒ Substantial postjudgment judicial supervision

**3.** Remedies sought (check all that apply): a. ☒ monetary  b. ☒ nonmonetary; declaratory or injunctive relief  c. ☒ punitive
**4.** Number of causes of action (specify): Five (5)
**5.** This case ☒ is ☐ is not a class action suit.
**6.** If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: July 12, 2012

Christopher P. Barry
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

COPY

Exhibit A
Page 4 of 67

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Friedman / Brown v. Keyes European | B C 4 8 8 3 5 2 |

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☒ YES   CLASS ACTION? ☒ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 7   ☐ HOURS/ ☒ DAYS

**Item II. Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):**

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> **Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4
Exhibit A
Page 5 of 67

COPY

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Friedman, Brian v. Keyes European DBA Hak, Inc. | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☒ A6009  Contractual Fraud | ①, 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4
Exhibit A
Page 6 of 67

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Friedman, Brian v. Keyes European DBA Hak, Inc. | |

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons See Step 3 Above |
|---|---|---|
| **Judicial Review** | | |
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | | |
| Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | | |
| Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | ☐ A6160  Abstract of Judgment | 2., 6. |
| | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | | |
| RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | | |
| Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | ☐ A6190  Election Contest | 2. |
| | ☐ A6110  Petition for Change of Name | 2., 7. |
| | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4
Exhibit A
Page 7 of 67

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Friedman, Brian v. Keyes European DBA Hak, Inc. | |

Item III. *Statement of Location:* Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. | ADDRESS:<br>5400 Van Nuys Boulevard |
|---|---|
| ☒1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | |

| CITY: | STATE: | ZIP CODE: | |
|---|---|---|---|
| Van Nuys | CA | 91401 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk    courthouse in the Central    District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: July 12, 2012

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.

2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.  Civil Case Cover Sheet, Judicial Council form CM-010.

4.  Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5.  Payment in full of the filing fee, unless fees have been waived.

6.  A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 4 of 4
Exhibit A
Page 8 of 67

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT – CLASS ACTION CASES

Case Number _____

BC488352

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**
Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).

| ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|
| Judge Elihu M. Berle | 323 | 1707 |
| Judge Kenneth Freeman | 322 | 1702 |
| Judge William F. Highberger | 307 | 1402 |
| Judge Jane Johnson | 308 | 1415 |
| Judge Anthony J. Mohr | 309 | 1409 |
| Judge John Shepard Wiley, Jr. | 311 | 1408 |
| OTHER | | |

## Instructions for handling Class Action Civil Cases

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

**APPLICATION**
The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

**PRIORITY OVER OTHER RULES**
The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

**CHALLENGE TO ASSIGNED JUDGE**
A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

**TIME STANDARDS**
Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

**FINAL STATUS CONFERENCE**
The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

**SANCTIONS**
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____     JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

Exhibit A
Page 9 of 67

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What Is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

 **Cases for Which Mediation May Be Appropriate**
 Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

 **Cases for Which Mediation May Not Be Appropriate**
 Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding* arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

 **Cases for Which Arbitration May Be Appropriate**
 Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

 **Cases for Which Arbitration May Not Be Appropriate**
 If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

 **Cases for Which Neutral Evaluation May Be Appropriate**
 Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

 **Cases for Which Neutral Evaluation May Not Be Appropriate**
 Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

# LOS ANGELES SUPERIOR COURT ADR PROGRAMS

CIVIL:
- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.890-3.898 Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

FAMILY LAW (non-custody):
- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

PROBATE:
- **Mediation**
- **Settlement Conference**

## NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

## COURT ADR PANELS

| | |
|---|---|
| **Party Select Panel** | The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Random Select Panel** | The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Private Neutral** | The market rate for private neutrals can range from $300-$1,000 per hour. |

## ADR ASSISTANCE

**For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.**

| COURTHOUSE | ADDRESS | ROOM | CITY | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8667 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

**Partially Funded by the Los Angeles County Dispute Resolution Program**
**A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office.**

Exhibit A
Page 11 of 67

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

**Information About Alternative Dispute Resolution:**

California Rules of Court, rule 3.221, requires counties participating in the Dispute Resolution Programs Act ("DRPA"), to provide information about the availability of local dispute resolution programs funded under DRPA. In Los Angeles County, these services are made possible through major support from the Los Angeles County Department of Community and Senior Services through DRPA. The list of the local dispute resolution programs funded in Los Angeles County is set forth below.

Superior Court of California, Los Angeles County, ADR Office (213) 974-5425
www.lasuperiorcourt.org/ADR

**Staff and volunteers of the following identified agencies are not employees of the Los Angeles Superior Court:**

Asian-Pacific American Dispute Resolution Center (213) 250-8190 www.apadrc.org

California Academy of Mediation Professionals (818) 377-7250 www.mediationprofessionals.org

California Lawyers for the Arts, Arbitration and Mediation Service (310) 998-5590 www.calawyersforthearts.org/

Center for Conflict Resolution (818) 705-1090 www.ccr4peace.org

Inland Valleys Justice Center (909) 621-7479 www.ivjc.org

Korean American Coalition 4.29 Center (213) 365-5999 www.kacla.org

Los Angeles City Attorney's Office Dispute Resolution Program (213) 485-8324
www.lacity.org/mediate

Los Angeles County Bar Association Dispute Resolution Services
(877) 473-7658 (323) 930-1841 (888) 922-1322 (562) 570-1019 www.lacba.org/drs

Los Angeles County Department of Consumer Affairs (213) 974-0825

The Loyola Law School Center for Conflict Resolution (213) 736-1145 www.lls.edu/ccr

City of Norwalk Dispute Resolution Program (562) 929-5603
www.ci.norwalk.ca.us/socialservices2.asp

---

*These programs do not offer legal advice or help you respond to a summons, but they can assist in resolving your problem through mediation.*

**Dispute Resolution Programs Act**
**Contracts Administration Office: (213) 738-2621**

---

LAADR 007 (Rev. 04/10)
LASC Approved 07-04

**INFORMATION ABOUT**
**ALTERNATIVE DISPUTE RESOLUTION**

NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp

ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:
Click on the button to select the appropriate court address.

PLAINTIFF:

DEFENDANT:

| STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: |

The undersigned parties stipulate to participate in an Alternative Dispute Resolution (ADR) process in the above-entitled action, as follows:

☐ Mediation

☐ Non-Binding Arbitration

☐ Binding Arbitration

☐ Early Neutral Evaluation

☐ Settlement Conference

☐ Other ADR Process (describe): _____

Dated: _____

Name of Stipulating Party | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Stipulating Party | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Stipulating Party | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Stipulating Party | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

☐ Additional signature(s) on reverse

LAADR 001 10-04
LASC Approved
(Rev. 01-07)

## STIPULATION TO PARTICIPATE IN
## ALTERNATIVE DISPUTE RESOLUTION (ADR)

Cal. Rules of Court, rule 3.221
Page 1 of 2

Exhibit A
Page 13 of 67

| Short Title | Case Number |
|---|---|
| | |

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

**Name of Party or Attorney Executing Stipulation**

**Signature of Party or Attorney**

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

**Name of Party or Attorney Executing Stipulation**

**Signature of Party or Attorney**

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

**Name of Party or Attorney Executing Stipulation**

**Signature of Party or Attorney**

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

**Name of Party or Attorney Executing Stipulation**

**Signature of Party or Attorney**

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

**Name of Party or Attorney Executing Stipulation**

**Signature of Party or Attorney**

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

**Name of Party or Attorney Executing Stipulation**

**Signature of Party or Attorney**

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

**Name of Party or Attorney Executing Stipulation**

**Signature of Party or Attorney**

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

**Name of Party or Attorney Executing Stipulation**

**Signature of Party or Attorney**

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

**Name of Party or Attorney Executing Stipulation**

**Signature of Party or Attorney**

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

**Name of Party or Attorney Executing Stipulation**

**Signature of Party or Attorney**

**STIPULATION TO PARTICIPATE IN
ALTERNATIVE DISPUTE RESOLUTION (ADR)**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:   FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lasuperiorcourt.org** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
   (INSERT DATE)                                    (INSERT DATE)
   complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          ➤ _____
        (TYPE OR PRINT NAME)                        (ATTORNEY FOR PLAINTIFF)
Date:

_____          ➤ _____
        (TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤ _____
        (TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤ _____
        (TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤ _____
        (TYPE OR PRINT NAME)                        (ATTORNEY FOR _____ )
Date:

_____          ➤ _____
        (TYPE OR PRINT NAME)                        (ATTORNEY FOR _____ )
Date:

_____          ➤ _____
        (TYPE OR PRINT NAME)                        (ATTORNEY FOR _____ )

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i.   File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii.  Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i.   Also be filed on the approved form (copy attached);

      ii.  Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

---

LACIV 036 (new)
LASC Approved 04/11

**STIPULATION – DISCOVERY RESOLUTION**

Page 2 of 3

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

LACIV 036 (new)
LASC Approved 04/11

**STIPULATION – DISCOVERY RESOLUTION**

Page 3 of 3

Exhibit A
Page 20 of 67

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:               FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1.  This document relates to:
    ☐   Request for Informal Discovery Conference
    ☐   Answer to Request for Informal Discovery Conference
2.  Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3.  Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4.  **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):                    FAX NO. (Optional):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

1 | ROSNER, BARRY & BABBITT, LLP
Christopher P. Barry, SBN: 179308
2 | Angela J. Smith, SBN: 216876
Dana R. Turner, SBN: 280039
3 | 10085 Carroll Canyon Road, Suite 100
San Diego, California 92131
4 | TEL: (858) 348-1005 / FAX: (858) 348-1150

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 13 2012

John A Clarke, Executive Officer/Clerk
By /s/ _____, Deputy
A.EL LaFLEUR-CLAYTON

5

6 | Attorneys for Plaintiffs

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **IN AND FOR THE COUNTY OF LOS ANGELES**

10 | BRIAN FRIEDMAN and DANIEL | CASE NO. **BC488352**
BROWN, individually and on behalf
11 | of all others similarly situated, | **CLASS ACTION**

12 | Plaintiffs, | COMPLAINT FOR INJUNCTIVE
RELIEF, RESTITUTION, AND
13 | v. | DAMAGES:

14 | MERCEDES-BENZ USA, LLC, a
Delaware Limited Liability | 1. VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT – CLASS CLAIM;
15 | Company; | 2. VIOLATION OF BUS. & PROF. CODE
KEYES EUROPEAN LLC, a | SECTION 17200 *ET SEQ* – CLASS CLAIM;
16 | California Limited Liability | 3. VIOLATION OF BUS. & PROF. CODE
Company; | SECTION 17500 *ET SEQ.* – CLASS CLAIM;
17 | MERCEDES-BENZ FINANCIAL | 4. VIOLATION OF THE CONSUMERS LEGAL
SERVICES USA, LLC, a Delaware | REMEDIES ACT – INDIVIDUAL CLAIM; AND
18 | Limited Liability Company; and | 5. UNLAWFUL, UNFAIR, FRAUDULENT
DOES 1 through 10, inclusive, | BUSINESS ACTS & PRACTICES –
19 | | INDIVIDUAL CLAIM.

20 | Defendants.

21

22 | Plaintiffs BRIAN FRIEDMAN and DANIEL BROWN, individually as to all

23 | causes of action, and on behalf of all others similarly-situated as to the First through

24 | Third Causes of Action, allege as follows on information and belief, formed after an

25 | inquiry reasonable under the circumstances:

26 | **NATURE OF ACTION**

27 | 1.    This is a civil action seeking equitable and monetary relief from

28 | Defendants Mercedes-Benz USA, LLC (hereinafter "Mercedes") and Keyes European,



---

1   LLC (hereinafter "Keyes"), arising out of the sales or leases of 2012 Mercedes CLS550

2   vehicles in California in late 2011 and early 2012, and the deceptive advertising of

3   such vehicles that emphasized the availability and introduction of certain features as

4   "standard," including SiriusXM Weather and active parking guidelines on the rear

5   view cameras.   Throughout 2011, Mercedes widely and publicly advertised and

6   marketed its 2012 Mercedes CLS550 vehicles and specifically represented to Plaintiffs,

7   class members, and the general public, that these vehicles came equipped with various

8   standard features and/or features available if the customer purchased Mercedes'

9   "Premium 1 Package" for the CLS550 including, but not limited to, SiriusXM Satellite

10  Radio with SiriusXM Traffic and Weather, the "PARKTRONIC with Active Parking

11  Assist" system, and a rear view camera that came with "active parking guidelines" on

12  the screen.   Yet, Mercedes – and Keyes – proceeded to sell and/or lease 2012 CLS550

13  Mercedes vehicles to hundreds of California consumers that were *missing*, amongst

14  other features, the much-advertised and promised SiriusXM Weather and active

15  parking guidelines.   Mercedes did not – and has not ever – disclosed to Plaintiffs, class

16  members, or the general public – these material facts about these missing features,

17  including that certain early-production 2012 CLS550 vehicles were "pushed out" of

18  production and into the stream of commerce with different features than those

19  Mercedes had advertised.

20       2.     This action is brought on behalf of a class of California lessees and

21  purchasers of model year 2012 CLS550 Mercedes vehicles, who purchased their

22  vehicles in 2011 and/or early 2012, which vehicles are missing the SiriusXM Weather

23  and active parking guidelines features.

24       3.     Mercedes distributes, markets, and sells the Mercedes brand of vehicles

25  throughout California and the United States.   According to sales data publicly

26  available on the Internet, Mercedes sold over 5,000 CLS vehicles (which includes

27  CLS550 and CLS63 AMG models) across the United States between June and

28

1   December, 2011, and over 740 CLS vehicles (both CLS550 and CLS63 AMG) across the

2   United States between January and May 2012.

### MERCEDES' FALSE ADVERTISING OF THE FEATURES
### OF THE 2012 CLS550 VEHICLES

5        4.     In 2011 (if not before), Mercedes actively marketed and advertised the

6   features it would be offering in its Mercedes 2012 CLS550 vehicles, either as

7   "standard" equipment and/or "standard" if the customer purchased certain "packages"

8   for the 2012 CLS550 model vehicle.

9        5.     Most notably, Mercedes' advertising and marketing materials for the 2012

10   CLS550 vehicles, including advertising and promotional materials available on the

11   Mercedes website, represented the CLS550 came equipped with various standard

12   features and/or features available if the customer purchased Mercedes' "Premium 1

13   Package" for the CLS550 including, but not limited to, a trial subscription to SiriusXM

14   Satellite Radio, which included the SiriusXM Traffic and Weather features, the

15   "PARKTRONIC with Active Parking Assist" system, and a rear view camera that came

16   with "active parking guidelines" on the screen.

17        6.     Specifically, Mercedes advertised the 2012 CLS550 vehicle as coming with

18   a free, 6-month trial subscription to SiriusXM Satellite Radio, which included

19   SiriusXM Traffic and SiriusXM Weather.   Additionally, Mercedes advertised the

20   "PARKTRONIC with Active Parking Assist" feature as follows on its website:

21        Active Parking Assist helps you size up parallel-parking spaces as you
        drive by, using sensors in the bumper to determine if a spot can fit your
22        car. It then expertly steers the car into the space while you control the
        brakes and gear selection. In any low-speed maneuver, PARKTRONIC's
23        ultrasonic sensors in the front and rear bumpers help detect nearby
        objects within the system's field of view. Audible signals and illuminated
24        displays in the cabin help you navigate tight spaces with confidence.

25        7.     Mercedes advertised the 2012 CLS550 vehicle, if the customer purchased

26   the "Premium 1 Package," would come with active parking guidelines on the rear view

27   camera. Mercedes' website represented this feature as follows:

28        Rear view camera: This innovative driver-assistance feature helps you to
        see directly behind your vehicle when reversing. Shift into Reverse, and

3

1    a wide-angle camera mounted in the rear displays a live view of what's
     behind the vehicle on the COMAND screen in the dashboard. *Active*
2    *parking guidelines on the screen help you back into a parking*
     *space.*
3

4    (Emphasis added).

5        8.     However, contrary to Mercedes' advertising and marketing materials,

6    early production 2012 CLS550 vehicles were not equipped to offer customers the

7    SiriusXM Weather feature and did not come equipped with active parking guidelines

8    on the rear view camera. In fact, according to information distributed by Mercedes to

9    its authorized dealers, such as Defendant Keyes, only 2012 CLS550 vehicles

10   manufactured *after* July 2011 would be able to offer the SiriusXM Weather feature.

11   But, rather than disclose this information to the public and potential purchasers,

12   Mercedes kept quiet, leaving consumers in the dark as to the true features the

13   consumer would get if they purchased a 2012 CLS550.

14       9.     Accordingly, when customers, like Plaintiffs, leased or purchased their

15   2012 CLS550 vehicles in 2011 (and possibly early 2012) and specifically asked for

16   vehicles equipped with SiriusXM Weather and/or active parking guidelines, Mercedes

17   and Keyes (and Mercedes' other authorized dealers) assured these customers they

18   would get what they were ordering and paying for.

19       10.    Yet, after customers took delivery of their new 2012 CLS550 vehicles, the

20   truth about Mercedes' false advertising was revealed, as these vehicles did *not* have

21   the features Mercedes had all along advertised they would have – *i.e.*, SiriusXM

22   Weather and active parking guidelines. Rather than admit its mistake and provide an

23   appropriate remedy to 2012 CLS550 purchasers/lessees, Mercedes – directly and

24   through its dealers – continued to deceive these consumers. Initially, Mercedes and

25   its dealers – like Keyes – attempted to placate upset Mercedes purchasers/lessees by

26   claiming there was a software "update," which could be installed in the affected

27   vehicles and would provide these consumers with, at least, the SiriusXM Weather

28   feature. However, these representations were false as it was later revealed there was

4

COMPLAINT

1   no software update that could "fix" or retrofit these vehicles to provide the SiriusXM

2   Weather feature.

3       11.    Mercedes knew or reasonably ought to have known it could not "fix" its

4   mistake and false advertising by way of software updates. Yet, instead of admitting

5   its mistake, Mercedes and its dealers continued to deny it and sold or leased 2012

6   CLS550 vehicles other than as advertised.

7       12.    Mercedes' attempts to deny its advertising regarding the features

8   available for the 2012 CLS550 vehicles was false does not change the fact Plaintiffs

9   and hundreds of other California consumers reasonably relied on Mercedes'

10   representations their 2012 CLS550 vehicles would have SiriusXM Weather and active

11   parking guidelines and purchased and/or leased such vehicles based on those

12   representations, only to be provided with vehicles that did not comport with Mercedes'

13   representations.

14       13.    Plaintiffs and other consumers relied on Mercedes' advertising and

15   marketing of the 2012 CLS550's features in deciding to purchase and/or lease a 2012

16   CLS550. Plaintiffs' and class members' attempts to obtain some relief or remedy from

17   Mercedes and/or its authorized dealers – like Keyes – have been frustrating. First they

18   were told updates could remedy the problem (or at least provide the missing SiriusXM

19   Weather feature), when no such updates were possible.   Some class members were

20   "blamed" by Mercedes and/or its dealers – like Keyes – when they complained their

21   CLS550 vehicles were missing key features, with Mercedes and/or its dealers denying

22   these features were advertised as coming standard or with any "premium" package for

23   the CLS550 vehicles and stating the customers got "what they paid for."   These

24   statements by Mercedes and/or its dealers were further misrepresentations, made with

25   the intention of continuing to conceal the true facts from Plaintiffs and the class.

26       14.    Plaintiffs requested, by certified mail return receipt requested, Mercedes

27   and Keyes provide relief for themselves as well as other persons similarly situated in

28   California. Plaintiffs sent notice to Mercedes and Keyes, under the Consumers Legal

1   Remedies Act ("CLRA"), dated May 3, 2012 (the "Notice"). Mercedes received the

2   Notice on May 8, 2012, and Keyes received the Notice on May 5, 2012. Neither

3   Mercedes nor Keyes offered Plaintiffs or class members an appropriate remedy within

4   30 days of receiving the Notice of their violations of the CLRA.

5       15.   The conduct herein described violates, *inter alia*, the Consumers Legal

6   Remedies Act ("CLRA") (Civil Code § 1750, *et seq.*), the Unfair Competition Law

7   ("UCL") (Bus. & Prof. Code § 17200, *et seq.*), and California's False Advertising Law

8   (Bus. & Prof. Code § 17500, *et seq.*).

9                         **JURISDICTION AND VENUE**

10      16.   This Court has jurisdiction over all causes of action asserted herein

11  pursuant to the California Constitution, Article VI, Section 10 and Section 410.10 of

12  the California Code of Civil Procedure. Jurisdiction is also proper under Business &

13  Professions Code Section 17200, *et seq.*

14      17.   Mercedes-Benz USA, LLC, is a Delaware Limited Liability Company with

15  its headquarters located in New Jersey. However, jurisdiction over Mercedes and

16  application of California law is proper as to all Class members because Mercedes has

17  purposely availed itself of the privilege of conducting business activities in California

18  and because it currently maintains systematic and continuous business contacts with

19  this State, and has many thousands of customers who are residents of the State of

20  California and who do business with Mercedes through its dealers at locations across

21  this State.

22      18.   Venue is proper in this County pursuant to Code of Civil Procedure

23  Sections 395(b) and 395.5, and Civil Code Section 1780(d), as Mercedes and Keyes do

24  business in this County, and many Class Members did business with Mercedes and/or

25  its dealers, such as Keyes, and engaged in transactions for the subject vehicles in this

26  County, Mercedes and Keyes engaged in transactions in this County, and have received

27  substantial compensation and profits from customers who engaged in transactions

28  here.

## PARTIES

19.    Plaintiff Brian Friedman is an individual who, at all times material, resided in the City of North Hollywood, County of Los Angeles, State of California.

20.    Plaintiff Daniel Brown is an individual who, at all times material, resided in the City of North Hollywood, County of Los Angeles, State of California.

21.    Defendant Keyes European, LLC, doing business as Keyes European, a California Limited Liability Company, is a new and used car dealership conducting business in the City of Van Nuys, County of Los Angeles, State of California.  Keyes is an authorized retailer and/or seller of vehicles manufactured and distributed by Mercedes.

22.    Defendant Mercedes-Benz USA, LLC, is and was, at all times material, a Delaware Limited Liability Company, but is and was, at all times material, doing business in the County of Los Angeles, State of California.

23.    Defendant Mercedes-Benz Financial Services USA, LLC (hereinafter "MB Financial"), is and was, at all times material, a Delaware Limited Liability Company, but is and was, at all times material, doing business in the County of Los Angeles, State of California.

24.    Plaintiffs do not know the true names and capacities, whether corporate, partnership, associate, individual, or otherwise of Defendants sued herein as Does 1 through 10, inclusive, under the provisions of Section 474 of the California Code of Civil Procedure.   Defendants Does 1 through 10, inclusive, are in some manner responsible for the acts, occurrences, and transactions set forth herein, and are legally liable to Plaintiffs and the class. Plaintiffs will set forth the true names and capacities of the fictitiously-named Defendants together with appropriate charging allegations when ascertained.

25.    When reference in this complaint is made to any act or omission of a Defendant corporation, company, association, business entity, or partnership, such allegation shall be deemed to mean that the Defendant and its owners, officers,

7

COMPLAINT

Exhibit A
Page 30 of 67

1    directors, agents, employees, or representatives did or authorized such act or omission

2    while engaged in the management, direction, or control of the affairs of Defendants and

3    while acting within the scope and course of their duties.

4        26.     An officer, director, or managing agent of each Defendant ratified the

5    wrongful conduct of each other, its agents and/or employees, accepted the benefits of

6    their wrongful conduct, and failed to repudiate the misconduct.

7        27.     Each Defendant, whether actually or fictitiously-named herein, was the

8    principal, agent (actual or ostensible), or employee of each other Defendant and in

9    acting as such principal or within the course and scope of such employment or agency,

10    took some part in the acts and omissions hereinafter set forth by reason of which each

11    Defendant is liable to Plaintiffs for the relief prayed for herein.

12                                   **CLASS ALLEGATIONS**

13        28.     This action is brought, and may properly be maintained, as a class action

14    pursuant to the provisions of California Code of Civil Procedure Section 382 and/or

15    Civil Code Section 1781(a).

16        29.     Plaintiffs bring this action on behalf of themselves and all others

17    similarly-situated as a representative member of the following proposed class:

18            All consumers who purchased or leased a 2012 Mercedes CLS550 vehicle

19            from a California dealership, for personal use to be registered in the State

20            of California, at any time between January 1, 2011 and March 31, 2012,

21            and the vehicle was delivered to the consumer without the SiriusXM

22            Weather and/or active parking guideline features.

23        30.     In this lawsuit, Plaintiffs and the Class seek both equitable relief,

24    including declaratory, injunctive, restitutionary, and other equitable monetary relief

25    and economic and statutory damages as set forth more fully below.

26        31.     Specifically excluded from the proposed Class are the Court and its staff,

27    Defendants, any entity in which any of the Defendants has a controlling interest, and

28

1   the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries,

2   and/or assigns of any such individual or entity.

3       A.    NUMEROSITY OF THE CLASS

4       32.    The proposed Class is so numerous that the individual joinder of the Class

5   Members in one action is impracticable.  The exact number and the identities of the

6   Members of the Class are unknown at this time and can only be ascertained through

7   appropriate investigation and discovery.

8       B.    EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS

9           OF LAW AND FACT

10      33.    Common questions of law and fact arising out of the claims here at issue

11  exist as to all members of the Class and predominate over any individual issue.  These

12  common legal and factual questions include, but are not limited to, the following:

13      a.    whether Mercedes and/or Keyes violated this state's consumer protection

14          statutes;

15      b.    whether the advertisements and statements issued by Defendants or

16          their agents were and are untrue and/or had a likelihood of deceiving

17          Class members;

18      c.    whether Defendants' uniform course of conduct was unconscionable or

19          constitutes untrue or misleading advertising or concealment of material

20          facts;

21      d.    whether Defendants omitted to disclose material facts necessary in order

22          to make Defendants' other statements not misleading for want of

23          disclosure of such omitted facts;

24      e.    whether Defendants continued to collect the monies here at issue despite

25          their knowledge of, or reckless or negligent disregard for, the true facts;

26      f.    when Defendants learned of these misrepresentations and omissions;

27      g.    whether Defendants improperly failed to notify actual and potential Class

28          members of the true facts;

1    h.    whether the gravity of the harm attributable to such conduct was

2        outweighed by any benefits attributable thereto;

3    i.    the amount of revenues and profits Defendants received or saved and/or

4        the amount of monies or other obligations imposed on or lost by Class

5        members as a result of such wrongdoing;

6    j.    whether Class members are threatened with irreparable harm and/or are

7        entitled to injunctive and other equitable relief and, if so, what is the

8        nature of such relief; and

9    k.    whether Plaintiffs and members of the Class are entitled to statutory,

10        actual, or exemplary damages; rescission or equitable relief; and the

11        appropriate measure of such relief.

12    **C.**    **TYPICALITY OF CLAIMS**

13    34.    Plaintiffs' claims are typical of the claims of members of the Class because

14  Plaintiffs and all Class members were injured by the same wrongful conduct and

15  scheme of the Defendants alleged herein. Plaintiffs and each Class member ordered

16  and paid for a Mercedes 2012 CLS550 vehicle equipped with the capability to have

17  SiriusXM Weather and equipped with active parking guidelines. Yet, Plaintiffs and

18  each Class member received a 2012 CLS550 vehicle that did not have these features.

19  Defendants failed to repurchase Plaintiffs' or Class members' vehicles and failed to

20  provide Plaintiffs or Class members with comparable 2012 CLS550 vehicles that *are*

21  equipped with these missing features. Additionally, Defendants failed to refund to

22  Plaintiffs and Class members the value of the missing features. Plaintiffs and each

23  Class member has been injured in fact and lost money or property as a result of

24  Defendants' acts and practices.

25    35.    Accordingly, Plaintiffs and all members of the Class had their legal rights

26  infringed upon, sustained injuries, losses, and damages as described herein, and/or are

27  facing irreparable harm arising out of Defendants' common course of conduct. The

28  right of Plaintiffs and each member of the Class to payment of any actual, incidental,

1   consequential, exemplary, and/or statutory damages or restitution resulting therefrom

2   were proximately caused by Defendants' wrongful conduct, in violation of state law as

3   alleged herein.

4       **D.    ADEQUATE REPRESENTATION**

5       36.   Plaintiffs will fairly and adequately protect the interests of the members

6   of the Class in that they do not have irreconcilable conflicts with or interests materially

7   antagonistic to those of other Class Members.

8       37.   Plaintiffs are committed to the vigorous prosecution of this action and

9   have retained adequate counsel experienced in the prosecution of class actions,

10  including consumer class actions. Accordingly, Plaintiffs are adequate representatives

11  of the Class and will fairly and adequately protect the interests of the Class.

12      **E.    SUPERIORITY AND SUBSTANTIAL BENEFITS OF CLASS**

13      **LITIGATION**

14      38.   To the extent it is an element for establishing class certification for

15  certain causes of action, a class action is superior to other available methods for the

16  fair and efficient group-wide adjudication of this controversy and, as applicable,

17  possesses substantial benefits.   Individual joinder of all Class Members is

18  impracticable, and no other group method of adjudication of all claims asserted herein

19  is more efficient and manageable while at the same time provides all the remedies

20  available to ensure the full purpose of this State's consumer protection laws are

21  effectuated. Furthermore, as the damages suffered by each individual Class Member

22  may be relatively small and the relief sought discrete, the expense and burden of

23  individual Class Members to redress the wrongs done to them, and the cost to the court

24  system of adjudicating such litigation on an individual basis, would be substantial. To

25  counsel's knowledge there has not been any substantial litigation concerning this

26  controversy commenced against the parties. It is not anticipated that there will be any

27  difficulties in the management of this litigation due to the focus of the wrongdoing on

28  Mercedes' and Keyes' conduct and their knowledge of the true facts. Individualized

1   litigation would also present the potential for varying, inconsistent, or contradictory

2   judgments and would magnify the delay and expenses of all parties and  the court

3   system resulting from multiple trials asserting the same factual issues.  The conduct

4   of this action as a class action presents fewer management difficulties, conserves the

5   resources of the parties and the court system, and protects the rights of each Class

6   Member as compared to other methods for the group-wide adjudication of this

7   controversy. Thus, the Class and the court system achieve substantial benefits by the

8   prosecution of this action on a class-wide basis by avoiding the burden of multiple

9   litigation involving identical claims, as well as by aiding legitimate business

10  enterprises in curtailing illegitimate competition and ensuring a therapeutic effect on

11  those companies such as Mercedes and Keyes that indulge in fraudulent practices.

12         39.    Notice of the pendency or any resolution of this action can be provided to

13  the Class Members by publication and/or individual mailed notice, as appropriate

14  under California law, and the costs of such notice are properly imposed on Mercedes.

15         40.    This action should be certified to proceed on a class-wide basis because:

16  a.     the prosecution of separate actions by the individual Class Members

17         would create a risk of inconsistent or varying adjudications with respect

18         to individual Class Members, thus establishing incompatible standards

19         of conduct for Mercedes;

20  b.     due to the nature of the relief sought, the prosecution of separate actions

21         by individual Class Members would create a risk of adjudication with

22         respect to them that would, as a practical matter, be dispositive of the

23         interests of the other Class Members not parties to such adjudications or

24         could substantially impair or impede the ability of such Class Members

25         to protect their interests;  and

26  c.     Mercedes and/or Keyes act or refuse to act in respects generally

27         applicable to the Class, thereby making appropriate final injunctive relief

28

1    with regard to the Class Members as a whole in terms of the equitable

2    relief sought.

3           **SUMMARY OF FACTS RELATIVE TO PLAINTIFFS' INDIVIDUAL**

4                          **TRANSACTION**

5       41.    On or about September 25, 2011, Daniel Brown, who is Mr. Friedman's

6    partner, went to Keyes' Van Nuys dealership to have Mr. Friedman's current vehicle

7    – a 2010 Mercedes GL450 – serviced.  While at Keyes, Mr. Brown looked at a 2012

8    CLS550 and took it for a test drive with a Keyes salesman.  Mr. Brown liked the way

9    the CLS550 handled and, upon returning home that day, started to research the

10    CLS550 vehicles and their features on the Internet, by way of the Mercedes website.

11      42.    Mr. Brown looked at Mercedes' website, paying particular attention to the

12    features offered on the 2012 CLS550 vehicles, as well as the specifications and

13    statistics regarding such things as the engine, etc.  At the time, Mr. Brown was driving

14    a 2011 Infiniti vehicle.  As such, Mr. Brown was specifically looking to see if the 2012

15    CLS550 vehicles had all of the same features that he already had with his 2011 Infiniti

16    or if it offered newer and/or additional features.

17      43.    On the Mercedes website, Mr. Brown saw the 2012 CLS550 was listed as

18    being equipped with various standard features and/or features available if the

19    customer purchased Mercedes' "Premium 1 Package" for the CLS550 including, but not

20    limited to, SiriusXM Satellite Radio with SiriusXM Traffic and Weather, the

21    "PARKTRONIC with Active Parking Assist" system, and a rear view camera that came

22    with "active parking guidelines" on the screen.

23      44.    After researching the 2012 CLS550 on Mercedes' website, Mr. Brown

24    decided he liked the vehicle and was especially interested in the PARKTRONIC system

25    and active parking guideline feature, as the driveway at his house is quite narrow and

26    he and Mr. Friedman have to park two vehicles in a tandem fashion.  The Infiniti

27    vehicle that Mr. Brown had at that time did not have anything equivalent to Mercedes'

28

1   PARKTRONIC system, although the Infiniti did have the parking guidelines and

2   SiriusXM Weather features.

3       45.   A few days later, Mr. Brown and Mr. Friedman went back to Keyes to pick

4   up Mr. Friedman's 2010 GL450 vehicle from Keyes' service department. While at

5   Keyes, Mr. Friedman began looking at other Mercedes SUVs on the lot. As a result of

6   that visit, Mr. Friedman decided to lease a 2011 GL550 for himself from Keyes.

7       46.   Mr. Friedman, Mr. Brown, and the Keyes salesman, whose name was

8   Joseph, took the 2011 GL550 for a test drive. During the test drive, Mr. Brown asked

9   Joseph various questions about the features of the Mercedes 2012 CLS550 vehicles.

10  Specifically, Keyes represented the 2012 CLS550 vehicles had SiriusXM Traffic *and*

11  Weather. Additionally, Keyes represented that *all* 2012 Mercedes vehicles had the

12  active parking guidelines on the rear view camera as "standard" equipment but that

13  the 2011 Mercedes vehicles – like the 2011 GL550 they were test driving – did *not*

14  have the active parking guidelines.

15      47.   During that test drive, Mr. Brown told Joseph the PARKTRONIC system

16  and the rear view camera with active parking guidelines were key features to him

17  because of the size of their driveway and the manner in which he and Mr. Friedman

18  had to park their vehicles. Because it was so important to Mr. Brown, he again asked

19  Joseph whether the Mercedes 2012 CLS550 vehicles had the parking sensors/alarms

20  (*i.e.*, PARKTRONIC) *and* the active parking lines. Joseph responded "yes."

21      48.   Upon returning to the lot, Mr. Friedman and Mr. Brown accompanied

22  Joseph into the dealership to discuss Mr. Friedman's lease of the 2011 GL550. While

23  running the numbers and getting the documents ready for the lease of that vehicle to

24  Mr. Friedman, Joseph kept telling Mr. Brown, "next, we'll get you settled into that

25  CLS." In fact, Joseph had a 2012 CLS550 brought around to the front of the

26  dealership, so Mr. Brown could "look at it again." Mr. Brown repeatedly told Joseph

27  "not to bother" because the 2012 CLS550 was out of his budget.

28  / / /

49.   However, Joseph kept pushing the 2012 CLS550 on Mr. Brown and Mr. Friedman. In fact, while they were waiting for Mr. Friedman's 2011 GL550 to be detailed, Joseph took them both on another test drive in the 2012 CLS550. During this test drive, Joseph again pointed out the features of the 2012 CLS550, focusing on the features that were different between it and the 2011 GL450 Mr. Friedman had just leased from Keyes.

50.   Back at the dealership once again, Joseph took Mr. Brown and Mr. Friedman inside the dealership, this time to talk numbers for Mr. Brown's acquisition of the 2012 CLS550. Mr. Brown told Joseph he wanted to use his Infiniti vehicle as a trade-in vehicle for any deal they reached.  Joseph took Mr. Brown's registration and apparently contacted Infiniti Financial Services to obtain the lease payoff on the Infiniti trade-in.

51.   Joseph told Mr. Brown Keyes would "take his Infiniti and pay it off." Mr. Brown believed Keyes would take the Infiniti as a straight trade and that it would be a "wash" – meaning he would not have to pay any extra down towards the 2012 CLS550 and whatever value they gave him for the Infiniti would be the same as the balance still outstanding on the lease.

52.   Mr. Brown did not believe he was "upside down" or had any negative equity in the Infiniti trade-in as he had only had it for approximately two years and had put $6,000 down towards the lease of it.  Furthermore, if there was any negative equity, he did not believe it would be rolled into any new deal he signed with Keyes. No one at Keyes ever told Mr. Brown or Mr. Friedman that any negative equity (if there was any) in Mr. Brown's Infiniti trade-in vehicle would be rolled into the deal for the 2012 CLS550.  Furthermore, no one at Keyes ever told Mr. Brown how much they were giving him for his trade-in vehicle.

53.   Joseph told Mr. Brown Keyes could get him into the 2012 CLS550 for $5,000 down, with monthly payments of approximately $1,500. Mr. Brown told Joseph that was too much, that he could not afford the vehicle on those terms. Joseph left and

1  returned, offering Mr. Brown the 2012 CLS550 for $5,000 down and monthly payments

2  of $1,200.  Again, Mr. Brown told Joseph it was "too much" and he could not afford it.

3  In fact, Mr. Brown told Joseph he could not afford monthly payments over $1,000 and

4  could not put more than $3,000 down.  After numerous times of Joseph leaving to

5  allegedly speak with a manager and returning, he eventually offered Mr. Brown a

6  "great deal" for the 2012 CLS550, stating Keyes was only offering such a "great deal"

7  because they are getting two vehicles: $3,000 down and monthly payments of

8  approximately $960.

9      54.    Wanting to think about it, Mr. Brown and Mr. Friedman went back

10 outside to look at the 2012 CLS550.  Mr. Brown liked the vehicle – which would be his

11 personal vehicle – and believing they were getting a great deal considering the cost of

12 the vehicle (*i.e.*, roughly $80,000), Plaintiffs decided to lease the 2012 CLS550 on the

13 offered terms.

14     55.    Mr. Brown and Mr. Friedman were then introduced to a Keyes' Finance

15 Manager, who prepared all of the documents for their lease of the 2012 CLS550 vehicle

16 to Mr. Friedman, including a  Motor Vehicle Lease Agreement.  At that time, the

17 Finance Manager presented Mr. Friedman with the lease documents for the 2012

18 CLS550 vehicle, including the Lease Agreement, and simply instructed him where to

19 sign and initial the documents.  Again, no one from Keyes ever told Mr. Friedman or

20 Mr. Brown that Mr. Brown was "upside down" or allegedly had negative equity in the

21 Infiniti trade-in vehicle or that Keyes would be rolling that negative equity into the

22 lease for the 2012 CLS550.

23     56.    After signing the lease documents, Mr. Brown and Mr. Friedman left

24 Keyes' dealership with their newly-leased vehicles.

25     57.    Upon returning home with the vehicles, Mr. Brown began inspecting his

26 new 2012 CLS550 in more detail and trying out the various features of the vehicle.  At

27 that point, Mr. Brown noticed the 2012 CLS550 vehicle they had leased from Keyes did

28 *not* have the PARKTRONIC system or the active parking guidelines on the rear view

1   camera. Upon discovering these facts, Mr. Brown promptly called Joseph at Keyes to

2   report these missing features. Joseph told Mr. Brown to come back to Keyes the

3   following day (as the dealership was closed by then), and they would "figure it out."

4        58.   Accordingly, on September 29, 2011, Mr. Brown returned to Keyes'

5   dealership and met with Joseph. Joseph apologized and told Mr. Brown he believed

6   the 2012 CLS550 Keyes had leased to them *was* equipped with the "PARKTRONIC"

7   system when, in fact, the vehicle did not have PARKTRONIC but instead had a

8   "smart" cruise control feature instead. Joseph and Mr. Brown began looking on Keyes'

9   lot for a different 2012 CLS550 vehicle to "swap out" for the one they had been given

10   the day before.

11        59.   Eventually, Joseph and Mr. Brown located another 2012 CLS550 vehicle

12   (VIN: WDDLJ7DB8CA013758) (the "Vehicle"). Joseph represented the Vehicle had

13   the PARKTRONIC system, as well as the rear view camera with active parking

14   guidelines, and SiriusXM Weather, as well as a few other features that were not on the

15   previous 2012 CLS550 (*i.e.,* illuminated door sills and active multi-contour driver's

16   seat), and was approximately the same price as the previous vehicle. Joseph told

17   Mr. Brown Keyes would lease him the Vehicle in exchange for the previous one and

18   that his monthly payments would be a little higher due to the slightly different

19   features. None of the other financial terms of the lease were discussed, including terms

20   relating to Mr. Brown's Infiniti trade-in vehicle, as Mr. Brown was led to believe none

21   of those terms would be changing as the cars were simply being "swapped out," with

22   the slight difference in monthly lease payments.

23        60.   Keyes prepared the lease documents for the Vehicle. Mr. Friedman left

24   work to return to Keyes' dealership and quickly signed all of the new documents for the

25   lease of the Vehicle, including a Mercedes-Benz Financial Services Motor Vehicle Lease

26   Agreement ("VLA") for the Vehicle. Attached hereto as Exhibit 1 is a true and correct

27   copy of the VLA for the Vehicle, executed by Mr. Friedman and Keyes on

28   September 29, 2011.

61.     Mr. Brown again left Keyes' dealership with a new 2012 CLS550. Having no reason to believe Keyes would have made the same mistake twice, Mr. Brown did not immediately "test" out all the features of the Vehicle. A few days later, after having difficulty locating and/or using the SiriusXM Weather feature, Mr. Brown called Joseph at Keyes to seek his assistance with it.

62.     Joseph told Mr. Brown to look for the "Globe" icon, as that is the icon to activate/use the SiriusXM Weather feature. Mr. Brown then informed Joseph there was no Globe icon anywhere. In response, Joseph told Mr. Brown to return to the dealership with the Vehicle and he would show him where it is and how to use it.

63.     After hanging up with Joseph, Mr. Brown took the Vehicle to a friend of his who works for Mercedes, lives close by, and who also has a 2012 CLS550, to see if his friend could help him access the SiriusXM Weather feature. Once seated in his friend's 2012 CLS550, Mr. Brown noticed a number of differences between his 2012 CLS550 and his friend's car.

64.     For example, the illuminated door sills on the Vehicle were blue (instead of white, as on his friend's 2012 CLS550) and are located higher on the vehicle. The map in his friend's vehicle looked different and, apparently, had Version 6.0 2011/2012 map software and data, whereas his Vehicle came equipped with Version 4.0. 2010/2011. Additionally, his friend's steering wheel was flat-bottomed and all chrome around the buttons, with perforated grips. The steering wheel on Mr. Brown's Vehicle has only perforated grips, has limited chrome, and is completely round.

65.     After noting the various differences between the CLS550 vehicles, his friend told Mr. Brown that the Vehicle was an "early production version" of the 2012 Mercedes CLS550. In fact, his friend told Mr. Brown he had seen an internal Mercedes e-mail stating Mercedes had made some changes to the features of the 2012 CLS550 vehicles after the first 2012 CLS550s had been "pushed out."

///

///

Exhibit A
Page 41 of 67

66.     Upon learning this disturbing information, Mr. Brown went straight to Keyes' dealership to talk to Joseph about the missing features. Mr. Brown told Joseph that the trouble he had been having accessing the SiriusXM Weather feature was because the Vehicle did not, in fact, have SiriusXM Weather. Mr. Brown told Joseph Keyes had sold him an "old car" and one that had outdated map software. Joseph replied he did not know what Mr. Brown was talking about. Mr. Brown then told Joseph that his friend told him the Vehicle was an early-production model 2012 CLS550, which was missing some of the features available on the current production models, such as SiriusXM Weather and the active parking guidelines. Mr. Brown took Joseph into Keyes' showroom, where there was another 2012 CLS500 vehicle, and proceeded to point out the other differences in features he had noticed when comparing his Vehicle to his friend's, such as the illuminated door sills, the steering wheel, and the Map software version. Mr. Brown also pointed out that the audio system in his Vehicle had a compact flash reader, while the showroom floor model had an SD card reader. Mr. Brown told Joseph that the rear view camera in the Vehicle did *not* have the active parking guidelines.

67.     Understandably angry that the Vehicle did not have key features he had wanted and had been assured it had, Mr. Brown demanded that Keyes immediately provide the software update to address the outdated Map software/data problem. He told the Keyes Service Manager that the Map software should be Version 6.0 2011/2012, which was the version installed on his friend's 2012 CLS550. Keyes advised Mr. Brown it did not have the software update in stock and would have to order it, and it would take 2-4 weeks. Mr. Brown left with the Vehicle and Keyes was to call him when the part was in for the software update.

68.     Later, Mr. Brown told his friend that his Vehicle was also missing the active parking guidelines on the rear view camera, to which his friend responded the 2012 CLS550 vehicles did not come "equipped" with active parking guidelines, which

1  is directly contrary to the advertisements on Mercedes' website and to the
2  representations made by Keyes.

3     69.   Approximately six weeks later, Keyes called and told Mr. Brown the parts
4  were in for the software update.  However, the update on the map software failed.
5  Mr. Brown has been told the software update will not work to update his map to the
6  correct version (Version 6.0 2011/2012) because of an apparent difference in the
7  hardware between his Vehicle and other 2012 CLS550 vehicles, for which the software
8  update would work.  Additionally, Keyes told him it could not replace the hardware
9  (which would accept the software update) as those parts were not currently available.
10 As such, Keyes told Mr. Brown it did not know how long it would be before his Vehicle's
11 software could be updated.

12    70.   Accordingly, Mr. Brown demanded Keyes take the Vehicle back, since no
13 one was able to tell him when it would have the features he had asked for and had paid
14 for.  Mr. Brown explained the situation to Keyes' General Sales Manager and
15 demanded Keyes give him a "real" 2012 CLS550.  Keyes' General Sales Manager told
16 Mr. Brown Keyes was not able to grant his request as only Mercedes could authorize
17 a replacement vehicle.

18    71.   In fact, since leasing the Vehicle from Keyes, Mr. Brown and
19 Mr. Friedman have discovered that only *certain* 2012 CLS550 vehicles (*e.g.*, those
20 produced in the latter part of 2011) were equipped with features Mercedes advertised
21 as "standard," and the Vehicle Keyes leased to them was *not* one of those later-built
22 CLS550s.  The advertisements Mr. Brown saw before the lease of the Vehicle from
23 Keyes did not make this discrepancy clear, nor did they state that only certain 2012
24 CLS550 vehicles were equipped with the certain features.  Furthermore, Keyes also
25 misrepresented the features and equipment on the Vehicle on numerous occasions.

26    72.   Most notably, Mercedes and Keyes advertised the 2012 CLS550 vehicles
27 came equipped with a trial subscription for SiriusXM Radio, which included SiriusXM
28 Traffic and Weather features and/or functions, and active parking guidelines on the

1  rear view camera.  Mercedes and Keyes represented these two features were

2  "standard" features of the 2012 CLS550 vehicles for which the "Premium 1 Package"

3  were ordered.  Mr. Brown and Mr. Friedman asked for the "Premium 1 Package" and

4  paid for that package.  Mr. Brown was repeatedly assured his Vehicle would have these

5  features – yet it does not.

6       73.    Additionally, if a customer opted to purchase "upgraded" wheels (*i.e.*, 18"

7  or 19" Alloy 5-spoke wheels) for a 2012 CLS550 vehicle, the vehicle was supposed to

8  come with a "sport-steering wheel," which was "flat-bottomed" for easier ingress and

9  egress, had perforated grips, pronounced contours, and complete chrome around the

10  buttons/controls.  Despite the fact Mr. Brown and Mr. Friedman asked and paid for 19"

11  Alloy 5-spoke wheels, the steering wheel in the Vehicle is completely round and is not

12  all chrome around the buttons/controls.

13       74.    Ironically, on October 21, 2011, Mr. Friedman received a letter from

14  Mercedes and SiriusXM Satellite Radio, welcoming him to the SiriusXM services and

15  stating "Your Mercedes-Benz is equipped with many exciting features – including a 6-

16  month trial subscription to SiriusXM Satellite Radio, SiriusXM Traffic *and SiriusXM*

17  *Weather*."  (Emphasis added.)  Attached hereto as Exhibit 2 is a true and correct copy

18  of the October 21, 2011 "welcome" letter.

19       75.    Mr. Brown and Mr. Friedman would not have leased the Vehicle if they

20  had known it did not have the active parking guidelines for the rear view camera or the

21  SiriusXM Weather feature, because Mr. Brown's Infiniti vehicle also had these

22  features.  As such, they would not have decided to lease a new car for substantially

23  more money if the car had even *fewer* features than the Infiniti Mr. Brown was then

24  driving.

25       76.    Nowhere on Mercedes' website is there a disclaimer that only certain 2012

26  CLS550 vehicles (*i.e.*, those manufactured after a certain date) would be equipped with

27  the SiriusXM Weather feature and/or the active parking guidelines.  Furthermore, no

28  one at Keyes told Mr. Brown or Mr. Friedman SiriusXM Weather would not be

1    available on the Vehicle Keyes was leasing to them or that the Vehicle did not have the

2    active parking guidelines they wanted.  In fact, Mr. Brown and Mr. Friedman were

3    repeatedly told by Keyes the 2012 CLS550 Vehicle leased to them *did* have these

4    features.  Additionally, Mercedes advertises and Keyes repeatedly represented the

5    Vehicle came with active parking guidelines for the rear view camera when it clearly

6    does not have them.

7        77.    Only after customers started complaining did Mercedes admit – in an

8    internal Mercedes communication – that, in July 2011 there had been a production

9    change for the 2012 CLS550 vehicles, which changes included, at a minimum, the

10   addition of the SiriusXM Weather feature. This information was apparently conveyed

11   to its dealers – like Keyes – sometime in 2011.  To date, neither Mercedes nor Keyes

12   have ever publicly acknowledged that certain early-production 2012 CLS550 vehicles

13   are not equipped with all promised and advertised features.

14       78.    According to Keyes, the Vehicle leased to Mr. Friedman and Mr. Brown

15   was allegedly manufactured in May 2011. Therefore, the Vehicle clearly did not have

16   – and never would have – the SiriusXM Weather feature, despite the repeated

17   representations made by Mercedes and Keyes to the contrary.

18       79.    Furthermore, only after signing the lease and taking delivery of the

19   Vehicle did Plaintiffs discover Keyes had credited them only $36,000 for the Infiniti

20   trade-in vehicle, for which the payoff was approximately $38,000, thereby creating over

21   $2,000 in negative equity.  No one at Keyes ever disclosed to Mr. Friedman or

22   Mr. Brown that there was any "negative equity" in Mr. Brown's trade-in or that Keyes

23   would be rolling that negative equity into the lease for the Vehicle. Had Keyes

24   disclosed this material information to Mr. Friedman or Mr. Brown, they would not

25   have agreed to lease the Vehicle. As it turns out, Keyes later placed Mr. Brown's

26   Infiniti on its lot for an advertised price of approximately $43,000, or $7,000 more than

27   it gave Mr. Brown.

28   ///

1    80.    Mr. Friedman and Mr. Brown attempted to resolve this matter without

2   the involvement of legal counsel.  Mr. Brown called Mercedes' Customer Service

3   department and filed a complaint.  In response, Mercedes contacted Mr. Brown and

4   advised him there was "nothing we can do for you."  Mr. Brown also filed a claim with

5   the BBB, which was denied.  All requests for a replacement vehicle or a repurchase of

6   the Vehicle have been rebuffed by Mercedes and/or Keyes.

7    81.    At some point after September 29, 2011, the Motor Vehicle Lease

8   Agreement for the lease of the Vehicle to Plaintiff Brian Friedman was assigned by

9   Keyes to Defendant Mercedes-Benz Financial Services USA, LLC ("MB Financial").

10    82.    Plaintiffs made their monthly payments to MB Financial in accordance

11   with the terms of the VLA.

12    83.    California Vehicle Code § 11614(a) provides it is unlawful for a lessor-

13   retailer licensed in this state to "Make or disseminate, or cause to be made or

14   disseminated, before the public in this state, in any newspaper or other publication, or

15   any advertising device, or by oral representation, or in any manner or  any means

16   whatsoever, any statement that is untrue or misleading and that is known, or which

17   by the exercise or reasonable care should be known, to be untrue or misleading . . . ."

18    84.    California Vehicle Code § 11713(a) provides it is unlawful for any licensed

19   dealer to "Make or disseminate, or cause to be made or disseminated, before the public

20   in this state, in any newspaper or other publication, or any advertising device, or by

21   public outcry or proclamation, or in any manner or  any means whatsoever, any

22   statement that is untrue or misleading and that is known, or which by the exercise or

23   reasonable care should be known, to be untrue or misleading . . . ."

24    85.    Keyes is, on information and belief, a licensed dealer and lessor-retailer

25   in this state within the terms of the California Vehicle Code Sections 285 and 373.

26   / / /

27   / / /

28   / / /

Exhibit A
Page 46 of 67

# FIRST CAUSE OF ACTION

Violation of Consumers Legal Remedies Act, Civil Code Section 1750, *et*

*seq.* – Class Claim – As Against Defendants Mercedes and Does 1-10

86. Plaintiffs, on their own behalf and on behalf of the Class Members, incorporate by reference each and every allegation set forth in Paragraphs 1 through 85, inclusive, of this Complaint and further allege as follows.

87. The vehicles purchased by Plaintiffs and each Class Member constitute "goods" bought for use primarily for personal, family, or household purposes pursuant to Section 1761(a).

88. Plaintiffs and each Class Member are "consumers" pursuant to Section 1761(d).

89. Defendants Mercedes and Does 1-10 are "persons" pursuant to Section 1761(c).

90. The advertisement and sale of the vehicles to Plaintiffs and each Class Member are "transactions" pursuant to Section 1761(e).

91. Mercedes' actions, representations, and conduct are subject to the CLRA, because they extend to "transactions," as defined in Section 1761(e), that have resulted in the sale or lease of goods to "consumers."

92. The CLRA applies to the acts, practices, and/or conduct engaged in by Mercedes and alleged herein, because Mercedes' acts, practices, and/or conduct have resulted in transactions involving the sale and/or lease of the vehicles at issue to Plaintiffs and the Class Members primarily for personal, family, or household purposes. Defendants violated and continued to violate the CLRA in at least the following respects:

    a. Mercedes represented goods had characteristics, uses, and/or benefits which they did not have;

    b. Mercedes represented goods were of a particular standard, quality, style, or model, when they were of another;

24

COMPLAINT

c. Mercedes advertised goods with intent not to sell them as advertised;

d. Mercedes represented transactions conferred or involved rights, remedies, or obligations which they did not have or involve, or which are prohibited by law; and

e. Mercedes represented that the subject of a transaction had been supplied in accordance with a previous representation when it had not.

93. As set forth in detail above, Mercedes produced, manufactured, advertised, distributed, and sold the 2012 CLS550 vehicles as being equipped with certain features including, but not limited to, the SiriusXM Weather function and active rear parking guidelines when, in fact, those vehicles did not have these features.

94. On or about May 3, 2012, Plaintiffs served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and demand letter seeking individual and class relief under the CLRA. The letter was received by Mercedes on May 8, 2012.

95. By misrepresenting and failing to disclose that these early production 2012 CLS550 vehicles did not conform to Mercedes' representations as set forth above, Mercedes violated the CLRA, specifically Section 1770(a)(5), (7), (9), (14), and (16), as set forth above. Plaintiffs have provided notice prior to filing suit requesting Defendants provide a correction, repair, replace or otherwise rectify the matter on behalf of Plaintiffs and the Class Members. Mercedes failed to offer an adequate remedy to Plaintiffs and/or the Class Members.

96. As a result of the acts of unfair competition or unfair or deceptive acts or practices detailed above, Plaintiffs and the Class Members suffered and will continue to suffer damage. Pursuant to the CLRA, Section 1780(a)(2), Mercedes should be enjoined from continuing to employ the unlawful methods, acts, and practices alleged herein to prevent any future harm to Plaintiffs and other Class Members, and should be ordered to pay actual damages and restitution and provide all the relief set forth in Section 1780, including statutory damages of up to $1,000 per consumer and/or up to

1   $5,000 per consumer who qualifies as a "senior citizen" under the CLRA, as well as

2   payment of attorneys' fees and costs. In addition, to the extent such conduct is found

3   to be willful, fraudulent, and/or malicious, Mercedes should be ordered to pay

4   exemplary damages, all in an amount according to proof at time of trial. Plaintiffs seek

5   all available remedies under Civil Code Section 1780, including their reasonable

6   attorney's fees.

7                          **SECOND CAUSE OF ACTION**

8   **Commission of Unlawful and/or Unfair Business Acts and Practices, Bus. &**

9   **Prof. Code Section 17200, *et seq.* – Class Claim – As Against Defendants**

10                         **Mercedes and Does 1-10**

11       97.    Plaintiffs, on their own behalf and on behalf of the Class Members,

12   incorporate by reference each and every allegation set forth in Paragraphs 1 through

13   96, inclusive, of this Complaint and further allege as follows.

14       98.    Mercedes' acts, omissions, misrepresentations, practices, and/or non-

15   disclosures constituted unlawful and/or unfair business acts and/or practices within the

16   meaning of California Business & Professions Code Sections 17200, *et seq.*

17       99.    Plaintiffs and the Class Members suffered injury in fact and lost money

18   as a result of Mercedes' unfair competition, including, but not limited to, their

19   statutory damages under the CLRA caused by Mercedes' misrepresentations regarding

20   the 2012 CLS550 vehicles purchased or leased by Plaintiffs and the Class Members

21   and by purchasing or leasing and/or paying more for those vehicles than Plaintiffs and

22   the Class Members would have if they had known the true facts – *i.e.*, that the vehicles

23   would not have the features advertised by Mercedes.

24       100.   Mercedes' conduct described herein violates California Business &

25   Professions Code § 17200 ("UCL") in the following respects:

26       a.    Mercedes' policies and practices regarding the advertising, marketing,

27             distribution, and sale (through its agents) of 2012 CLS550 vehicles as

28             coming equipped certain features including, but not limited to, the

                                          26

1   SiriusXM Weather function and active rear parking guidelines, when

2   such vehicles did not have these features causes substantial injury to

3   consumers with no countervailing legitimate benefit and thus is immoral,

4   unethical, oppressive, unscrupulous, unconscionable, and/or substantially

5   injurious to Plaintiffs and Class Members, constitutes "unfair" business

6   acts or practices within the meaning of the UCL; and

7   b.   Mercedes' policies and practices regarding the advertising, marketing,

8   distribution, and sale (through its agents) of 2012 CLS550 vehicles as

9   coming equipped certain features including, but not limited to, the

10   SiriusXM Weather function and active rear parking guidelines, without

11   disclosing the true facts that certain early production 2012 CLS550

12   vehicles did not have these features, and in making statements that are

13   likely to mislead Plaintiffs and the Class and the general public,

14   constitutes "fraudulent" business acts or practices within the meaning of

15   the UCL.

16   101.   In addition, Mercedes' practices and/or policies as detailed herein are

17   "unlawful" business practices in the following respects, violating, *inter alia*, Bus. &

18   Prof. Code § 17500, *et seq.*, and the CLRA:

19   a.   Mercedes did not properly or reasonably disclose to customers that

20   certain 2012 CLS550 vehicles did not have – and could not have – the

21   SiriusXM Weather feature and could not be retrofitted to have these

22   features;

23   b.   Mercedes did not properly or reasonably disclose to customers that

24   certain 2012 CLS550 vehicles, for which the "Premium 1 Package" was

25   ordered, would not have the advertised active parking guidelines as part

26   of the rear view camera;

27   ///

28   ///

c.   Mercedes, either directly and/or through its dealers, did not disclose the existence of the material discrepancies detailed herein and have not provided adequate or any compensation therefor;

d.   Mercedes disseminated misleading advertising and promotional materials regarding the features of the 2012 CLS550 vehicles, while not disclosing material facts, including that SiriusXM Weather would not be available on 2012 CLS550 vehicles manufactured before July 2011; and

e.   Mercedes disseminated misleading advertising and promotional materials regarding the features of the 2012 CLS550 vehicles, while not disclosing material facts, including that if customers purchased the "Premium 1 Package," their rear view camera would not have the advertised active parking guidelines.

102.   As a result of Mercedes' violation of the UCL, Plaintiffs and Class Members paid excessive amounts of money for their vehicles, have not been compensated for the diminution in value for such vehicles, and suffered and will continue to suffer injury in fact and a loss of money or property.

103.   Pursuant to California Business and Professions Code Section 17203, Plaintiffs and Class Members seek, and are therefore entitled to an Order enjoining Mercedes from continuing to engage in acts of unfair competition and to engage in a corrective informational and advertising campaign in compliance with all applicable laws. Plaintiffs additionally request an order from the Court requiring Mercedes to provide complete equitable monetary relief so as to prevent Mercedes from benefitting from the practices that constitute unfair competition or the use or employment of any monies resulting from the sale of these vehicles, including requiring the payment of restitution of any monies as may be necessary to restore any money or property which may have been acquired by means of such acts of unfair competition and/or disgorgement of all excessive amounts paid to Mercedes or its agents or incurred by Class Members.

1   104.   Plaintiffs, on behalf of themselves and Class Members, also seek all

2   equitable relief pursuant to California Code of Civil Procedure Section 384, pre- and

3   post-judgment interest at the highest rate allowable by law; and payment of attorneys'

4   fees and costs pursuant to, *inter alia*, Code of Civil  Procedure Section 1021.5, the

5   common fund, and private Attorney General doctrines.

6   ### THIRD CAUSE OF ACTION

7   **False Advertising in Violation of Business & Prof. Code Section 17500 *et***

8   ***seq.* – Class Claim – As Against Defendants Mercedes and Does 1-10**

9   105.   Plaintiffs, on their own behalf and on behalf of the Class Members,

10  incorporate by reference each and every allegation set forth in Paragraphs 1 through

11  104, inclusive, of this Complaint and further allege as follows.

12  106.   In violation of California Business & Professions Code Section 17500 *et*

13  *seq.*, Mercedes has disseminated or caused to be disseminated deceptive advertising

14  misrepresentations, omissions, and practices including, as an example, that the 2012

15  CLS550 vehicles would have certain features including, but not limited to, the

16  SiriusXM Weather function and active parking guidelines for its rear view camera.

17  107.   Mercedes' advertising misrepresentations, omissions, and practices in

18  connection with the marketing of the 2012 CLS550 vehicles and its features are

19  misleading or likely to mislead for the reasons set forth above.

20  108.   Mercedes' advertising misrepresentations, omissions, and practices made

21  in connection with the sale or lease of certain 2012 CLS550 vehicles sold or leased in

22  2011 (and possibly early 2012) are unfair, deceptive and/or misleading within the

23  meaning of California Business & Professions Code Section 17500, *et seq.*  These

24  representations are likely to deceive reasonable consumers.

25  109.   In making and disseminating the statements alleged herein, Mercedes

26  should have known that the statements detailed above were misleading, and thus

27  acted in violation of California Business & Professions Code Section 17500, *et seq.*

28  / / /

110. As detailed above, Plaintiffs and Class Members suffered injury in fact and a loss of money or property as a result of the acts and practices that violate Section 17500, *et seq.*

111. Pursuant to California Business and Professions Code Section 17535, Plaintiffs and Class Members seek, and are therefore entitled to an Order enjoining Mercedes from continuing to engage in acts of unfair competition and to engage in a corrective informational and advertising campaign in compliance with all applicable laws. Plaintiffs additionally request an order from the Court requiring Mercedes to provide complete equitable monetary relief so as to prevent Mercedes from benefitting from the practices that constitute unfair competition or the use or employment of any monies resulting from the sale of these vehicles, including requiring the payment of restitution of any monies as may be necessary to restore any money or property which may have been acquired by means of such acts of unfair competition and/or disgorgement of all excessive amounts paid to Mercedes or its agents or incurred by Class Members.

112. Plaintiffs, on behalf of themselves and Class Members, also seek all equitable relief pursuant to California Code of Civil Procedure Section 384, pre- and post-judgment interest at the highest rate allowable by law; and payment of attorneys' fees and costs pursuant to, *inter alia*, Code of Civil Procedure Section 1021.5, the common fund, and private Attorney General doctrines.

113. As a result of Mercedes' violations of the false advertising statute, Plaintiffs and Class Members are entitled to equitable relief as the Court deems appropriate.

/ / /
/ / /
/ / /
/ / /
/ / /

### FOURTH CAUSE OF ACTION

**Violation of Consumers Legal Remedies Act, Civil Code Section 1750, *et seq.* – Individual Claim – As Against Defendants Keyes, MB Financial, and Does 1-10**

114.   Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 113, inclusive, of this Complaint and further allege as follows. This cause of action is asserted by Plaintiffs individually.

115.   The Vehicle leased to Plaintiffs constitutes "goods" for use primarily for personal, family, or household purposes pursuant to Civil Code Section 1761(a).

116.   Plaintiffs are "consumers" pursuant to Civil Code Section 1761(d).

117.   Defendants are "persons" pursuant to Civil Code Section 1761(c).

118.   The advertisement and lease of the Vehicle to Plaintiffs is a "transaction" pursuant to Civil Code Section 1761(e).

119.   The acts and/or practices engaged in by Defendant Keyes and alleged herein were intended to, and did, result in the lease of the Vehicle to Plaintiffs primarily for personal, family, or household purposes, and violated and continued to violate the CLRA in at least the following respects:

   a.   Keyes represented that the goods or services had sponsorship, characteristics, uses, or benefits which they did not have;

   b.   Keyes represented that the goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model if they are of another;

   c.   Keyes advertised goods with intent not to sell them as advertised;

   d.   Keyes represented that the transaction had been supplied in accordance with previous representations when it had not;

   e.   Keyes represented that the transaction conferred or involved rights, remedies, or obligations which it did not have or involve, or which were prohibited by law; and

f.      Keyes inserted unconscionable arbitration clauses on the back of purchase and/or lease contracts.

120.    On or about May 3, 2012, Plaintiffs served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and demand letter seeking individual relief under the CLRA.  The letter was received by Keyes on May 5, 2012, and by MB Financial on May 7, 2012.

121.    By misrepresenting and failing to disclose the Vehicle Plaintiffs requested and that was delivered to them was *not* equipped with certain features including, but not limited to, SiriusXM Weather or active parking guidelines, Keyes violated the CLRA.

122.    Section 1780(a)(2) of the Act provides a consumer is entitled to an injunction prohibiting acts or practices which violate the Act.  Plaintiffs allege Keyes has established a pattern and practice of: (1) misrepresenting the features of the 2012 CLS550 vehicles; (2) misrepresenting that the rear view camera available on 2012 CLS550 vehicles came with active parking guidelines; (3) misrepresenting that 2012 CLS550 vehicles came equipped with a trial subscription to SiriusXM Radio, that included SiriusXM Traffic *and* SiriusXM Weather; (4) failing to disclose that only certain 2012 CLS550 vehicles were equipped with the above-noted features; (5) failing to disclose that 2012 CLS550 vehicles manufactured before July 2011 would not come equipped with the SiriusXM Weather feature; (6) failing to disclose that it was creating negative equity in Plaintiffs' trade-in vehicle by undervaluing the trade-in and then rolling the negative equity in the trade-in vehicle into the lease contract without Plaintiffs' knowledge and/or consent; and (7) inserting unconscionable arbitration clauses in consumers' contracts.

123.    Pursuant to Civil Code Section 1780, Plaintiffs seek all available relief, including damages, an order enjoining Defendants from the acts, methods, and practices as set forth in this Complaint, and attorneys' fees and costs according to proof at time of trial.

1     124.   As a result of the acts of unfair competition or unfair or deceptive acts or

2    practices detailed above, Plaintiffs suffered and will continue to suffer damage.

3    Pursuant to the CLRA, Section 1780(a)(2), Keyes should be enjoined from continuing

4    to employ the unlawful methods, acts and practices alleged herein to prevent any

5    future harm to Plaintiffs or others.

6                         **FIFTH CAUSE OF ACTION**

7    **Commission of Unlawful, Unfair, and/or Fraudulent Business Acts and**

8    **Practices, Bus. & Prof. Code Section 17200, *et seq.* – Individual Claim**

9    **– As Against Defendants Keyes, MB Financial, and Does 1-10**

10     125.   Plaintiffs incorporate by reference each and every allegation set forth in

11   Paragraphs 1 through 124, inclusive, of this Complaint, and further allege as follows.

12   This cause of action is brought by Plaintiffs individually.

13     126.   Defendants' acts, omissions, misrepresentations, practices, and/or non-

14   disclosures constituted unlawful, unfair, and/or fraudulent business acts and/or

15   practices and untrue and misleading advertising within the meaning of California

16   Business & Professions Code Section 17200, *et seq.*

17     127.   Defendant Keyes has engaged in "unlawful" business acts and/or practices

18   by the following: (1) misrepresenting the features of the 2012 CLS550 vehicles;

19   (2) misrepresenting that the rear view camera available on 2012 CLS550 vehicles came

20   with active parking guidelines; (3) misrepresenting that 2012 CLS550 vehicles came

21   equipped with a trial subscription to SiriusXM Radio, that included SiriusXM Traffic

22   *and* SiriusXM Weather; (4) failing to disclose that only certain 2012 CLS550 vehicles

23   were equipped with the above-noted features; (5) failing to disclose that 2012 CLS550

24   vehicles manufactured before July 2011 would not come equipped with the SiriusXM

25   Weather feature; (6) failing to disclose that it was creating negative equity in Plaintiffs'

26   trade-in vehicle by undervaluing the trade-in and then rolling the negative equity in

27   the trade-in vehicle into the lease contract without Plaintiffs' knowledge and/or

28   consent; and (7) inserting unconscionable arbitration clauses in consumers' contracts.

1    Plaintiffs seek an order enjoining Defendant Keyes from the acts, methods, and/or

2    practices as set forth in the complaint and for payment of restitution. These business

3    acts and/or practices violated numerous provisions of both state and federal law

4    including, *inter alia*, the CLRA, Business and Professions Code Sections 17500 and

5    17531, and California Vehicle Code Sections 11614(a) and 11713(a). Accordingly,

6    Defendant Keyes has violated Business & Professions Code Section 17200's

7    proscription against engaging in an "unlawful" business act or practice. Plaintiffs seek

8    an order enjoining Defendant from engaging in the acts, methods, and/or practices as

9    set forth in this Complaint and for payment of restitution.

10        128.   Defendant Keyes also engaged in a "fraudulent" business act or practice

11   in that the representations and omissions of material fact described above have a

12   tendency and likelihood to deceive purchasers of these vehicles.

13        129.   Defendant Keyes also engaged in an "unfair" business act or practice in

14   that the justification for selling vehicles based on the misrepresentations and

15   omissions of material fact delineated above is outweighed by the gravity of the

16   resulting harm, particularly considering the available alternatives, and offends public

17   policy, is immoral, unscrupulous, unethical, and offensive, or causes substantial injury

18   to consumers.

19        130.   The above-described unlawful, fraudulent, and/or unfair business acts

20   and/or practices conducted by Keyes continue to this day and present a threat to

21   Plaintiffs and the general public in that Keyes failed to publicly acknowledge the

22   wrongfulness of its actions and provide full equitable injunctive and monetary relief

23   as required by the statute.

24        131.   As a result of Keyes' violation of the UCL, Plaintiffs paid excessive

25   amounts of money for the Vehicle, have not been compensated for the diminution in

26   value of the Vehicle since it does not have the features they requested and paid for, and

27   thus suffered and will continue to suffer injury in fact and a loss of money or property.

28   / / /

132. Pursuant to California Business & Professions Code Section 17203, Plaintiffs seek an order of this Court requiring Keyes to immediately cease such acts of unfair competition and enjoining Keyes from continuing to conduct business via the unlawful, fraudulent, and/or unfair business acts and practices set forth in this Complaint and from failing to fully disclose the true nature of their misrepresentations, and ordering Keyes to engage in a corrective notice and advertising campaign. Plaintiffs additionally request an order from the Court requiring Keyes to provide complete equitable monetary relief so as to prevent Keyes from benefitting from the practices that constitute unfair competition or the use or employment of any monies resulting from the sale of these vehicles, including requiring the payment of restitution of any monies as may be necessary to restore any money or property which may have been acquired by means of such acts of unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows, on behalf of themselves, and the Members of the Class, as appropriate for the particular causes of action:

1. An Order certifying the Class under the appropriate provisions of California law, and appointing Plaintiffs and their counsel to represent the Class.

2. For the declaratory, equitable, and/or injunctive relief requested as permitted under the Consumers Legal Remedies Act and Business & Professions Code Section 17203 and/or Section 17535.

3. For general, special, and actual damages according to proof at trial.

4. For rescission and/or restitution of all monies required to be expended by Plaintiffs and Class Members, including restitution of all excessive amounts paid by Plaintiffs and Class Members, including restitution equal to the diminution in value of their vehicles and disgorgement of the ill-gotten gains derived from Defendants' illegal conduct.

5. For incidental and consequential damages according to proof at trial.

1     6.     For the specified causes of action, punitive and/or statutory damages.

2     7.     For pre-judgment interest at the legal rate.

3     8.     For reasonable attorneys' fees and costs of suit as specified under, *inter*

4        *alia*, Code of Civil Procedure Section 1021.5 and Civil Code

5        Section 1780(d).

6     9.     For such other and further relief as the Court deems just and proper

7        under the circumstances.

8

9   DATED: July 12, 2012               ROSNER, BARRY & BABBITT, LLP

10

11                       By: _____

                             CHRISTOPHER P. BARRY

12                        Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1





# EXHIBIT 2

   

October 21, 2011

**The SiriusXM Services In Your New Mercedes-Benz Are Now Active**

Radio ID (ESN):   042664861431
Account #:   111200435653

Brian Friedman
5633 Irvine Ave
North Hollywood, CA 91601-1752

Dear Brian Friedman:

**Welcome to SiriusXM.** Your Mercedes-Benz is equipped with many exciting features — including a 6-month trial subscription to SiriusXM Satellite Radio, SiriusXM Traffic and SiriusXM Weather.

With the Sirius Select package, you have access to over 130 channels of great entertainment, including all types of commercial-free music, plus the best sports, talk, world-class news, kids' programming, comedy, weather and more.

SiriusXM Traffic provides updates on accidents, traffic flow, construction and road closures. This service is integrated with your vehicle's navigation system, so you can pick the fastest route based on current traffic conditions.

SiriusXM Weather uses the same sources that professional pilots and mariners rely on every day and provides you with continuously updated weather information. This service helps you stay in control with detailed weather forecasts and maps at the press of a button.

**Get Free Program Alerts and Newsletters**
Keep in touch with the latest SiriusXM information including new channels, live performances, special events, sports schedule and more. Just click on "Sign Up for Our Free E-Newsletter" at siriusxm.com/GetMostofSiriusTrial.

To continue enjoying SiriusXM once your trial is over, just complete and return the enclosed renewal form in the postage paid envelope provided. You may also renew online at siriusxm.com/extendnow or call SiriusXM at **1-866-635-2487.** After your trial ends, the Sirius Select package is only $12.95* a month — or less if you take an annual or longer plan.

Sincerely,

Ralph Fisher
General Manager
Customer Assistance Center
Mercedes-Benz USA

Joe Zarella
Chief Service Officer
SiriusXM Radio

P.S. For your convenience, you can renew now and you will not be charged until the end of your trial.
Just send in the enclosed renewal form before your trial ends to avoid an interruption in your SiriusXM service.*

*See SiriusXM Customer Agreement for complete terms at www.siriusxm.com. If you decide to continue your SiriusXM service at the end of your trial subscription, the paid plan you choose will automatically renew and bill at then-current rates until you call SiriusXM at 1-866-635-2349 to cancel. Complete details and restrictions on reverse. Prices shown are for the Sirius Select package of audio channels. Prices do not include Sirius Premier, SiriusXM Traffic and SiriusXM Weather.

62321015-002-000002074

1    ROSNER, BARRY & BABBITT, LLP
     Christopher P. Barry, SBN: 179308
2    Angela J. Smith, SBN: 216876
     Dana R. Turner, SBN: 280039
3    10085 Carroll Canyon Road, Suite 100
     San Diego, California 92131
4    TEL: (858) 348-1005 / FAX: (858) 348-1150

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 13 2012

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
A. EL LAFLEUR-CLAYTON

5

6    Attorneys for Plaintiffs

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9             IN AND FOR THE COUNTY OF LOS ANGELES

10   BRIAN FRIEDMAN and DANIEL      CASE NO.
     BROWN, individually and on behalf
11   of all others similarly situated,      CLASS ACTION   BC488352

12              Plaintiffs,

13       v.                     AFFIDAVIT OF VENUE PLAINTIFF
                            BRIAN FRIEDMAN
14   MERCEDES-BENZ USA, LLC, a
     Delaware Limited Liability
15   Company;
     KEYES EUROPEAN LLC, a
16   California Limited Liability
     Company;
17   MERCEDES-BENZ FINANCIAL
     SERVICES USA, LLC, a Delaware
18   Limited Liability Company; and
     DOES 1 through 10, inclusive,
19

20            Defendants.

21

22   I, BRIAN FRIEDMAN, declare as follows:

23       1.     I am the Plaintiff in this action and make this declaration to the best of

24   my knowledge, information and belief of the facts stated herein.

25       2.     I leased the 2012 Mercedes CLS550 (VIN: WDDLJ7DB8CA013758) that

26   is the subject of this litigation from Keyes European LLC, doing business as Keyes

27   European, in the City of Van Nuys, County of Los Angeles, State of California.

28   ///



1      3.     I signed all paperwork for the lease of the 2012 Mercedes CLS550 in Van

2   Nuys, California.

3      4.     Accordingly, the causes of action asserted in the complaint have been

4   commenced in the proper county or judicial district for trial.

5      I declare under penalty of perjury under the laws of the State of California that

6   the foregoing is true and correct and that this declaration was signed on the 26 day

7   of JUNE        , 2012, at Hollywood, California.

8

9                                          BRIAN FRIEDMAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**EXHIBIT B**

 **CT Corporation**

**Service of Process Transmittal**
07/23/2012
CT Log Number 520910357

TO: Michelle Spreitzer
Mercedes-Benz Financial Services USA LLC
36455 Corporate Dr.
Farmington Hills, MI 48331

RE: **Process Served in California**

FOR: Mercedes-Benz Financial Services USA LLC (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Brian Friedman and Daniel Brown, individually and on behalf of all others similarly situated, Pltfs. vs. Mercedes-Benz USA, LLC, etc., et al. including Mercedes-Benz Financial Services USA, LLC, etc., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Instructions, Cover Sheet, Addendum and Statement, Notice(s), ADR Packet, Complaint, Exhibit(s), Affidavit |
| **COURT/AGENCY:** | Los Angeles County - Superior Court - Hill Street, CA Case # BC488352 |
| **NATURE OF ACTION:** | Product Liability Litigation - Breach of Warranty - Class Action - 2012 Mercedes CLS550 vehicles missing the SiriusXM Weather and active parking guidelines feautures - Seeking declaratory and injunctive relief |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/23/2012 at 17:38 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Christopher P. Barry Rosner, Barry & Babbitt, LLP 10085 Carroll Canyon Road Suite 100 San Diego, CA 92131 858-348-1005 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/23/2012, Expected Purge Date: 07/28/2012 Image SOP Email Notification, Diana Rzeppa diana.l.rzeppa@daimler.com Email Notification, Tracie Esquivel Tracie.esquivel@daimler.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of 1 / AG

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

7-23-12
3:10~

## SUMMONS
### (CITACION JUDICIAL)

CONFORMED COPY
OF ORIGINAL FILED
FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE) Superior Court

JUL 13 2012

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
A.E. LaFLEUR-CLAYTON

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MERCEDES-BENZ USA, LLC, a Delaware Limited Liability
Company; [SEE ATTACHMENT]

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
BRIAN FRIEDMAN and DANIEL BROWN, individually and on behalf
of all others similarly situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>LOS ANGELES SUPERIOR COURT - Stanley Mosk Courthouse<br>111 North Hill Street<br>Los Angeles, CA 90012 | **CASE NUMBER:**<br>*(Número del Caso):*<br>BC488352 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Christopher P. Barry                    (858)348-1005
Rosner, Barry & Babbitt, LLP
10085 Carroll Canyon Rd, Ste 100, San Diego, CA 92131

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* | John A. Clarke | Clerk, by<br>*(Secretario)* | AMBER LaFLEUR-CLAYTON, Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

JUL 13 2012

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:
3. [✓] on behalf of *(specify)*: Mercedes - Benz Financial Services USA, LLC,
   a Delaware limited liability company
   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [✓] other *(specify)*: LLC
4. [ ] by personal delivery on *(date)*:

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

Exhibit B
Page 2 of 67

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Friedman / Brown v. Keyes European | |

### INSTRUCTIONS FOR USE

This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties
Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff  ☒ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant

KEYES EUROPEAN LLC, a California Limited Liability Company; MERCEDES-BENZ FINANCIAL
SERVICES USA, LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit B
Page 3 of 67

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Christopher P. Barry, 179308
Rosner, Barry & Babbitt, LLP
10085 Carroll Canyon Rd, Ste 100, San Diego, CA 92131
TELEPHONE NO.: (858)348-1005    FAX NO.: (858)348-1150
ATTORNEY FOR (Name): Brian Friedman and Daniel Brown

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles. CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Friedman / Brown v. Keyes European

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder | | BC488352 |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: | |
| | | | DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [X] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [X] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [X] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action (specify): Five (5)
5. This case [X] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: July 12, 2012

Christopher P. Barry
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

COPY

Exhibit B
Page 4 of 67

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Friedman / Brown v. Keyes European | BC488352 |

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☒ YES   CLASS ACTION? ☒ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 7   ☐ HOURS/ ☒ DAYS

Item II. Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Friedman, Brian v. Keyes European DBA Hak, Inc. | |

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☒ A6009  Contractual Fraud | ①, 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation   Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer- Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

Exhibit B
Page 6 of 67

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Friedman, Brian v. Keyes European DBA Hak, Inc. | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Friedman, Brian v. Keyes European DBA Hak, Inc. | |

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☒1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>5400 Van Nuys Boulevard |
|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| Van Nuys | CA | 91401 |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk_____ courthouse in the Central_____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: _July 12, 2012_____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.0
Page 4 of 4

Exhibit B
Page 8 of 67

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT – CLASS ACTION CASES
Case Number _____

BC488352

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**
Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).

| ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|
| Judge Elihu M. Berle | 323 | 1707 |
| Judge Kenneth Freeman | 322 | 1702 |
| Judge William F. Highberger | 307 | 1402 |
| Judge Jane Johnson | 308 | 1415 |
| Judge Anthony J. Mohr | 309 | 1409 |
| Judge John Shepard Wiley, Jr. | 311 | 1408 |
| OTHER | | |

## Instructions for handling Class Action Civil Cases

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

**APPLICATION**
The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

**PRIORITY OVER OTHER RULES**
The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

**CHALLENGE TO ASSIGNED JUDGE**
A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

**TIME STANDARDS**
Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

**FINAL STATUS CONFERENCE**
The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

**SANCTIONS**
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____      JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

Exhibit B
Page 9 of 67

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for setting a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

**Cases for Which Mediation May Be Appropriate**
Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate**
Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding arbitration* means that the parties are free to request a trial if they do not accept the arbitrator's decision.

**Cases for Which Arbitration May Be Appropriate**
Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate**
If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate**
Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate**
Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

LAADR 005 (Rev.12-09)
LASC Approved 05-09

Page 1 of 2

## LOS ANGELES SUPERIOR COURT ADR PROGRAMS

CIVIL:
- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.890-3.898 Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

FAMILY LAW (non-custody):
- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

PROBATE:
- **Mediation**
- **Settlement Conference**

### NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

### COURT ADR PANELS

| | |
|---|---|
| **Party Select Panel** | The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Random Select Panel** | The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Private Neutral** | The market rate for private neutrals can range from $300-$1,000 per hour. |

### ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| COURTHOUSE | ADDRESS | ROOM | CITY/ZIP | TELEPHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 309 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office.

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

### Information About Alternative Dispute Resolution:

California Rules of Court, rule 3.221, requires counties participating in the Dispute Resolution Programs Act ("DRPA"), to provide information about the availability of local dispute resolution programs funded under DRPA. In Los Angeles County, these services are made possible through major support from the Los Angeles County Department of Community and Senior Services through DRPA. The list of the local dispute resolution programs funded in Los Angeles County is set forth below.

Superior Court of California, Los Angeles County, ADR Office (213) 974-5425
www.lasuperiorcourt.org/ADR

**Staff and volunteers of the following identified agencies are not employees of the Los Angeles Superior Court:**

Asian-Pacific American Dispute Resolution Center (213) 250-8190 www.apadrc.org

California Academy of Mediation Professionals (818) 377-7250 www.mediationprofessionals.org

California Lawyers for the Arts, Arbitration and Mediation Service (310) 998-5590 www.calawyersforthearts.org/

Center for Conflict Resolution (818) 705-1090 www.ccr4peace.org

Inland Valleys Justice Center (909) 621-7479 www.ivjc.org

Korean American Coalition 4.29 Center (213) 365-5999 www.kacla.org

Los Angeles City Attorney's Office Dispute Resolution Program (213) 485-8324
www.lacity.org/mediate

Los Angeles County Bar Association Dispute Resolution Services
(877) 473-7658 (323) 930-1841 (888) 922-1322 (562) 570-1019 www.lacba.org/drs

Los Angeles County Department of Consumer Affairs (213) 974-0825

The Loyola Law School Center for Conflict Resolution (213) 736-1145 www.lls.edu/ccr

City of Norwalk Dispute Resolution Program (562) 929-5603
www.ci.norwalk.ca.us/socialservices2.asp

> *These programs do not offer legal advice or help you respond to a summons,*
> *but they can assist in resolving your problem through mediation.*
>
> **Dispute Resolution Programs Act**
> **Contracts Administration Office: (213) 738-2621**

LAADR 007 (Rev. 04/10)
LASC Approved 07-04

### INFORMATION ABOUT
### ALTERNATIVE DISPUTE RESOLUTION

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
Click on the button to select the appropriate court address.

PLAINTIFF:

DEFENDANT:

| | CASE NUMBER: |
|---|---|
| **STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR)** | |

The undersigned parties stipulate to participate in an Alternative Dispute Resolution (ADR) process in the above-entitled action, as follows:

☐ Mediation
☐ Non-Binding Arbitration
☐ Binding Arbitration
☐ Early Neutral Evaluation
☐ Settlement Conference
☐ Other ADR Process (describe): _____

Dated: _____

| Name of Stipulating Party | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | | |
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

☐ **Additional signature(s) on reverse**

| LAADR 001 10-04<br>LASC Approved<br>(Rev. 01-07) | **STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR)** | Cal. Rules of Court, rule 3.221<br>Page 1 of 2 |
|---|---|---|

Exhibit B
Page 13 of 67

| Short Title | Case Number |
|---|---|
| | |

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant. | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney

**STIPULATION TO PARTICIPATE IN
ALTERNATIVE DISPUTE RESOLUTION (ADR)**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lasuperiorcourt.org* under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

(INSERT DATE) (INSERT DATE)

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          >          _____
(TYPE OR PRINT NAME)                                            (ATTORNEY FOR PLAINTIFF)

Date:

_____          >          _____
(TYPE OR PRINT NAME)                                            (ATTORNEY FOR DEFENDANT)

Date:

_____          >          _____
(TYPE OR PRINT NAME)                                            (ATTORNEY FOR DEFENDANT)

Date:

_____          >          _____
(TYPE OR PRINT NAME)                                            (ATTORNEY FOR DEFENDANT)

Date:

_____          >          _____
(TYPE OR PRINT NAME)                                            (ATTORNEY FOR _____)

Date:

_____          >          _____
(TYPE OR PRINT NAME)                                            (ATTORNEY FOR _____)

Date:

_____          >          _____
(TYPE OR PRINT NAME)                                            (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):                    FAX NO. (Optional):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i.   File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii.  Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i.   Also be filed on the approved form (copy attached);

        ii.  Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

    iii.    Be filed within two (2) court days of receipt of the Request; and

    iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

---

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

➤ _____
  (TYPE OR PRINT NAME)                    (ATTORNEY FOR PLAINTIFF)

Date: _____

➤ _____
  (TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____

➤ _____
  (TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____

➤ _____
  (TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date: _____

➤ _____
  (TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

Date: _____

➤ _____
  (TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

Date: _____

➤ _____
  (TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: | FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, _briefly_ describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, _briefly_ describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):       FAX NO. (Optional):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢   _____
(ATTORNEY FOR PLAINTIFF)

➢   _____
(ATTORNEY FOR DEFENDANT)

➢   _____
(ATTORNEY FOR DEFENDANT)

➢   _____
(ATTORNEY FOR DEFENDANT)

➢   _____
(ATTORNEY FOR _____)

➢   _____
(ATTORNEY FOR _____)

➢   _____
(ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date:   _____

_____
JUDICIAL OFFICER

LACIV 075 (new)
LASC Approved 04/11

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

Page 2 of 2

1   ROSNER, BARRY & BABBITT, LLP
    Christopher P. Barry, SBN: 179308
2   Angela J. Smith, SBN: 216876
    Dana R. Turner, SBN: 280039
3   10085 Carroll Canyon Road, Suite 100
    San Diego, California 92131
4   TEL: (858) 348-1005 / FAX: (858) 348-1150

5
    Attorneys for Plaintiffs
6

7



CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 13 2012

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
R.E. LaFLEUR-CLAYTON

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF LOS ANGELES

10  BRIAN FRIEDMAN and DANIEL          CASE NO.   BC488352
    BROWN, individually and on behalf
11  of all others similarly situated,   CLASS ACTION

12              Plaintiffs,             COMPLAINT FOR INJUNCTIVE
                                        RELIEF, RESTITUTION, AND
13       v.                            DAMAGES:

14  MERCEDES-BENZ USA, LLC, a      1.   VIOLATION OF THE CONSUMERS LEGAL
    Delaware Limited Liability           REMEDIES ACT – CLASS CLAIM;
15  Company;                        2.   VIOLATION OF BUS. & PROF. CODE
    KEYES EUROPEAN LLC, a                SECTION 17200 ET SEQ – CLASS CLAIM;
16  California Limited Liability     3.   VIOLATION OF BUS. & PROF. CODE
    Company;                             SECTION 17500 ET SEQ. – CLASS CLAIM;
17  MERCEDES-BENZ FINANCIAL        4.   VIOLATION OF THE CONSUMERS LEGAL
    SERVICES USA, LLC, a Delaware        REMEDIES ACT – INDIVIDUAL CLAIM; AND
18  Limited Liability Company; and  5.   UNLAWFUL, UNFAIR, FRAUDULENT
    DOES 1 through 10, inclusive,         BUSINESS ACTS & PRACTICES –
19                                       INDIVIDUAL CLAIM.

20              Defendants.

21

22        Plaintiffs BRIAN FRIEDMAN and DANIEL BROWN, individually as to all

23  causes of action, and on behalf of all others similarly-situated as to the First through

24  Third Causes of Action, allege as follows on information and belief, formed after an

25  inquiry reasonable under the circumstances:

26                          NATURE OF ACTION

27       1.    This is a civil action seeking equitable and monetary relief from

28  Defendants Mercedes-Benz USA, LLC (hereinafter "Mercedes") and Keyes European,



                                    1
                                COMPLAINT

                                              Exhibit B
                                              Page 24 of 67

1   LLC (hereinafter "Keyes"), arising out of the sales or leases of 2012 Mercedes CLS550

2   vehicles in California in late 2011 and early 2012, and the deceptive advertising of

3   such vehicles that emphasized the availability and introduction of certain features as

4   "standard," including SiriusXM Weather and active parking guidelines on the rear

5   view cameras.   Throughout 2011, Mercedes widely and publicly advertised and

6   marketed its 2012 Mercedes CLS550 vehicles and specifically represented to Plaintiffs,

7   class members, and the general public, that these vehicles came equipped with various

8   standard features and/or features available if the customer purchased Mercedes'

9   "Premium 1 Package" for the CLS550 including, but not limited to, SiriusXM Satellite

10  Radio with SiriusXM Traffic and Weather, the "PARKTRONIC with Active Parking

11  Assist" system, and a rear view camera that came with "active parking guidelines" on

12  the screen. Yet, Mercedes – and Keyes – proceeded to sell and/or lease 2012 CLS550

13  Mercedes vehicles to hundreds of California consumers that were *missing*, amongst

14  other features, the much-advertised and promised SiriusXM Weather and active

15  parking guidelines. Mercedes did not – and has not ever – disclosed to Plaintiffs, class

16  members, or the general public – these material facts about these missing features,

17  including that certain early-production 2012 CLS550 vehicles were "pushed out" of

18  production and into the stream of commerce with different features than those

19  Mercedes had advertised.

20      2.      This action is brought on behalf of a class of California lessees and

21  purchasers of model year 2012 CLS550 Mercedes vehicles, who purchased their

22  vehicles in 2011 and/or early 2012, which vehicles are missing the SiriusXM Weather

23  and active parking guidelines features.

24      3.      Mercedes distributes, markets, and sells the Mercedes brand of vehicles

25  throughout California and the United States.   According to sales data publicly

26  available on the Internet, Mercedes sold over 5,000 CLS vehicles (which includes

27  CLS550 and CLS63 AMG models) across the United States between June and

28

1  December, 2011, and over 740 CLS vehicles (both CLS550 and CLS63 AMG) across the

2  United States between January and May 2012.

### MERCEDES' FALSE ADVERTISING OF THE FEATURES
### OF THE 2012 CLS550 VEHICLES

5      4.    In 2011 (if not before), Mercedes actively marketed and advertised the

6  features it would be offering in its Mercedes 2012 CLS550 vehicles, either as

7  "standard" equipment and/or "standard" if the customer purchased certain "packages"

8  for the 2012 CLS550 model vehicle.

9      5.    Most notably, Mercedes' advertising and marketing materials for the 2012

10  CLS550 vehicles, including advertising and promotional materials available on the

11  Mercedes website, represented the CLS550 came equipped with various standard

12  features and/or features available if the customer purchased Mercedes' "Premium 1

13  Package" for the CLS550 including, but not limited to, a trial subscription to SiriusXM

14  Satellite Radio, which included the SiriusXM Traffic and Weather features, the

15  "PARKTRONIC with Active Parking Assist" system, and a rear view camera that came

16  with "active parking guidelines" on the screen.

17      6.    Specifically, Mercedes advertised the 2012 CLS550 vehicle as coming with

18  a free, 6-month trial subscription to SiriusXM Satellite Radio, which included

19  SiriusXM Traffic and SiriusXM Weather.   Additionally, Mercedes advertised the

20  "PARKTRONIC with Active Parking Assist" feature as follows on its website:

21      Active Parking Assist helps you size up parallel-parking spaces as you
    drive by, using sensors in the bumper to determine if a spot can fit your

22      car. It then expertly steers the car into the space while you control the
    brakes and gear selection. In any low-speed maneuver, PARKTRONIC's

23      ultrasonic sensors in the front and rear bumpers help detect nearby
    objects within the system's field of view. Audible signals and illuminated

24      displays in the cabin help you navigate tight spaces with confidence.

25      7.    Mercedes advertised the 2012 CLS550 vehicle, if the customer purchased

26  the "Premium 1 Package," would come with active parking guidelines on the rear view

27  camera. Mercedes' website represented this feature as follows:

28      Rear view camera: This innovative driver-assistance feature helps you to
    see directly behind your vehicle when reversing. Shift into Reverse, and

3

1    a wide-angle camera mounted in the rear displays a live view of what's
behind the vehicle on the COMAND screen in the dashboard. *Active*
2    *parking guidelines on the screen help you back into a parking*
*space.*
3

4    (Emphasis added).

5         8.    However, contrary to Mercedes' advertising and marketing materials,

6    early production 2012 CLS550 vehicles were not equipped to offer customers the

7    SiriusXM Weather feature and did not come equipped with active parking guidelines

8    on the rear view camera. In fact, according to information distributed by Mercedes to

9    its authorized dealers, such as Defendant Keyes, only 2012 CLS550 vehicles

10    manufactured *after* July 2011 would be able to offer the SiriusXM Weather feature.

11    But, rather than disclose this information to the public and potential purchasers,

12    Mercedes kept quiet, leaving consumers in the dark as to the true features the

13    consumer would get if they purchased a 2012 CLS550.

14         9.    Accordingly, when customers, like Plaintiffs, leased or purchased their

15    2012 CLS550 vehicles in 2011 (and possibly early 2012) and specifically asked for

16    vehicles equipped with SiriusXM Weather and/or active parking guidelines, Mercedes

17    and Keyes (and Mercedes' other authorized dealers) assured these customers they

18    would get what they were ordering and paying for.

19         10.    Yet, after customers took delivery of their new 2012 CLS550 vehicles, the

20    truth about Mercedes' false advertising was revealed, as these vehicles did *not* have

21    the features Mercedes had all along advertised they would have – *i.e.*, SiriusXM

22    Weather and active parking guidelines. Rather than admit its mistake and provide an

23    appropriate remedy to 2012 CLS550 purchasers/lessees, Mercedes – directly and

24    through its dealers – continued to deceive these consumers. Initially, Mercedes and

25    its dealers – like Keyes – attempted to placate upset Mercedes purchasers/lessees by

26    claiming there was a software "update," which could be installed in the affected

27    vehicles and would provide these consumers with, at least, the SiriusXM Weather

28    feature. However, these representations were false as it was later revealed there was

1   no software update that could "fix" or retrofit these vehicles to provide the SiriusXM

2   Weather feature.

3        11.    Mercedes knew or reasonably ought to have known it could not "fix" its

4   mistake and false advertising by way of software updates. Yet, instead of admitting

5   its mistake, Mercedes and its dealers continued to deny it and sold or leased 2012

6   CLS550 vehicles other than as advertised.

7        12.    Mercedes' attempts to deny its advertising regarding the features

8   available for the 2012 CLS550 vehicles was false does not change the fact Plaintiffs

9   and hundreds of other California consumers reasonably relied on Mercedes'

10  representations their 2012 CLS550 vehicles would have SiriusXM Weather and active

11  parking guidelines and purchased and/or leased such vehicles based on those

12  representations, only to be provided with vehicles that did not comport with Mercedes'

13  representations.

14       13.    Plaintiffs and other consumers relied on Mercedes' advertising and

15  marketing of the 2012 CLS550's features in deciding to purchase and/or lease a 2012

16  CLS550. Plaintiffs' and class members' attempts to obtain some relief or remedy from

17  Mercedes and/or its authorized dealers – like Keyes – have been frustrating. First they

18  were told updates could remedy the problem (or at least provide the missing SiriusXM

19  Weather feature), when no such updates were possible.  Some class members were

20  "blamed" by Mercedes and/or its dealers – like Keyes – when they complained their

21  CLS550 vehicles were missing key features, with Mercedes and/or its dealers denying

22  these features were advertised as coming standard or with any "premium" package for

23  the CLS550 vehicles and stating the customers got "what they paid for."  These

24  statements by Mercedes and/or its dealers were further misrepresentations, made with

25  the intention of continuing to conceal the true facts from Plaintiffs and the class.

26       14.    Plaintiffs requested, by certified mail return receipt requested, Mercedes

27  and Keyes provide relief for themselves as well as other persons similarly situated in

28  California. Plaintiffs sent notice to Mercedes and Keyes, under the Consumers Legal

5

1   Remedies Act ("CLRA"), dated May 3, 2012 (the "Notice"). Mercedes received the

2   Notice on May 8, 2012, and Keyes received the Notice on May 5, 2012. Neither

3   Mercedes nor Keyes offered Plaintiffs or class members an appropriate remedy within

4   30 days of receiving the Notice of their violations of the CLRA.

5       15.   The conduct herein described violates, *inter alia*, the Consumers Legal

6   Remedies Act ("CLRA") (Civil Code § 1750, *et seq.*), the Unfair Competition Law

7   ("UCL") (Bus. & Prof. Code § 17200, *et seq.*), and California's False Advertising Law

8   (Bus. & Prof. Code § 17500, *et seq.*).

9                    **JURISDICTION AND VENUE**

10      16.   This Court has jurisdiction over all causes of action asserted herein

11  pursuant to the California Constitution, Article VI, Section 10 and Section 410.10 of

12  the California Code of Civil Procedure. Jurisdiction is also proper under Business &

13  Professions Code Section 17200, *et seq.*

14      17.   Mercedes-Benz USA, LLC, is a Delaware Limited Liability Company with

15  its headquarters located in New Jersey. However, jurisdiction over Mercedes and

16  application of California law is proper as to all Class members because Mercedes has

17  purposely availed itself of the privilege of conducting business activities in California

18  and because it currently maintains systematic and continuous business contacts with

19  this State, and has many thousands of customers who are residents of the State of

20  California and who do business with Mercedes through its dealers at locations across

21  this State.

22      18.   Venue is proper in this County pursuant to Code of Civil Procedure

23  Sections 395(b) and 395.5, and Civil Code Section 1780(d), as Mercedes and Keyes do

24  business in this County, and many Class Members did business with Mercedes and/or

25  its dealers, such as Keyes, and engaged in transactions for the subject vehicles in this

26  County, Mercedes and Keyes engaged in transactions in this County, and have received

27  substantial compensation and profits from customers who engaged in transactions

28  here.

## PARTIES

19.     Plaintiff Brian Friedman is an individual who, at all times material, resided in the City of North Hollywood, County of Los Angeles, State of California.

20.     Plaintiff Daniel Brown is an individual who, at all times material, resided in the City of North Hollywood, County of Los Angeles, State of California.

21.     Defendant Keyes European, LLC, doing business as Keyes European, a California Limited Liability Company, is a new and used car dealership conducting business in the City of Van Nuys, County of Los Angeles, State of California. Keyes is an authorized retailer and/or seller of vehicles manufactured and distributed by Mercedes.

22.     Defendant Mercedes-Benz USA, LLC, is and was, at all times material, a Delaware Limited Liability Company, but is and was, at all times material, doing business in the County of Los Angeles, State of California.

23.     Defendant Mercedes-Benz Financial Services USA, LLC (hereinafter "MB Financial"), is and was, at all times material, a Delaware Limited Liability Company, but is and was, at all times material, doing business in the County of Los Angeles, State of California.

24.     Plaintiffs do not know the true names and capacities, whether corporate, partnership, associate, individual, or otherwise of Defendants sued herein as Does 1 through 10, inclusive, under the provisions of Section 474 of the California Code of Civil Procedure. Defendants Does 1 through 10, inclusive, are in some manner responsible for the acts, occurrences, and transactions set forth herein, and are legally liable to Plaintiffs and the class. Plaintiffs will set forth the true names and capacities of the fictitiously-named Defendants together with appropriate charging allegations when ascertained.

25.     When reference in this complaint is made to any act or omission of a Defendant corporation, company, association, business entity, or partnership, such allegation shall be deemed to mean that the Defendant and its owners, officers,

7

COMPLAINT

1   directors, agents, employees, or representatives did or authorized such act or omission

2   while engaged in the management, direction, or control of the affairs of Defendants and

3   while acting within the scope and course of their duties.

4       26.    An officer, director, or managing agent of each Defendant ratified the

5   wrongful conduct of each other, its agents and/or employees, accepted the benefits of

6   their wrongful conduct, and failed to repudiate the misconduct.

7       27.    Each Defendant, whether actually or fictitiously-named herein, was the

8   principal, agent (actual or ostensible), or employee of each other Defendant and in

9   acting as such principal or within the course and scope of such employment or agency,

10  took some part in the acts and omissions hereinafter set forth by reason of which each

11  Defendant is liable to Plaintiffs for the relief prayed for herein.

12                                 CLASS ALLEGATIONS

13      28.    This action is brought, and may properly be maintained, as a class action

14  pursuant to the provisions of California Code of Civil Procedure Section 382 and/or

15  Civil Code Section 1781(a).

16      29.    Plaintiffs bring this action on behalf of themselves and all others

17  similarly-situated as a representative member of the following proposed class:

18          All consumers who purchased or leased a 2012 Mercedes CLS550 vehicle

19          from a California dealership, for personal use to be registered in the State

20          of California, at any time between January 1, 2011 and March 31, 2012,

21          and the vehicle was delivered to the consumer without the SiriusXM

22          Weather and/or active parking guideline features.

23      30.    In this lawsuit, Plaintiffs and the Class seek both equitable relief,

24  including declaratory, injunctive, restitutionary, and other equitable monetary relief

25  and economic and statutory damages as set forth more fully below.

26      31.    Specifically excluded from the proposed Class are the Court and its staff,

27  Defendants, any entity in which any of the Defendants has a controlling interest, and

28

8

1  the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries,

2  and/or assigns of any such individual or entity.

3  **A.   NUMEROSITY OF THE CLASS**

4     32.   The proposed Class is so numerous that the individual joinder of the Class

5  Members in one action is impracticable.   The exact number and the identities of the

6  Members of the Class are unknown at this time and can only be ascertained through

7  appropriate investigation and discovery.

8  **B.   EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS**

9       **OF LAW AND FACT**

10     33.   Common questions of law and fact arising out of the claims here at issue

11  exist as to all members of the Class and predominate over any individual issue.  These

12  common legal and factual questions include, but are not limited to, the following:

13     a.   whether Mercedes and/or Keyes violated this state's consumer protection

14         statutes;

15     b.   whether the advertisements and statements issued by Defendants or

16         their agents were and are untrue and/or had a likelihood of deceiving

17         Class members;

18     c.   whether Defendants' uniform course of conduct was unconscionable or

19         constitutes untrue or misleading advertising or concealment of material

20         facts;

21     d.   whether Defendants omitted to disclose material facts necessary in order

22         to make Defendants' other statements not misleading for want of

23         disclosure of such omitted facts;

24     e.   whether Defendants continued to collect the monies here at issue despite

25         their  knowledge of, or reckless or negligent disregard for, the true facts;

26     f.   when Defendants learned of these misrepresentations and omissions;

27     g.   whether Defendants improperly failed to notify actual and potential Class

28         members of the true facts;

9

h. whether the gravity of the harm attributable to such conduct was outweighed by any benefits attributable thereto;

i. the amount of revenues and profits Defendants received or saved and/or the amount of monies or other obligations imposed on or lost by Class members as a result of such wrongdoing;

j. whether Class members are threatened with irreparable harm and/or are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

k. whether Plaintiffs and members of the Class are entitled to statutory, actual, or exemplary damages; rescission or equitable relief; and the appropriate measure of such relief.

C.   TYPICALITY OF CLAIMS

34. Plaintiffs' claims are typical of the claims of members of the Class because Plaintiffs and all Class members were injured by the same wrongful conduct and scheme of the Defendants alleged herein. Plaintiffs and each Class member ordered and paid for a Mercedes 2012 CLS550 vehicle equipped with the capability to have SiriusXM Weather and equipped with active parking guidelines. Yet, Plaintiffs and each Class member received a 2012 CLS550 vehicle that did not have these features. Defendants failed to repurchase Plaintiffs' or Class members' vehicles and failed to provide Plaintiffs or Class members with comparable 2012 CLS550 vehicles that *are* equipped with these missing features. Additionally, Defendants failed to refund to Plaintiffs and Class members the value of the missing features. Plaintiffs and each Class member has been injured in fact and lost money or property as a result of Defendants' acts and practices.

35. Accordingly, Plaintiffs and all members of the Class had their legal rights infringed upon, sustained injuries, losses, and damages as described herein, and/or are facing irreparable harm arising out of Defendants' common course of conduct. The right of Plaintiffs and each member of the Class to payment of any actual, incidental,

1   consequential, exemplary, and/or statutory damages or restitution resulting therefrom

2   were proximately caused by Defendants' wrongful conduct, in violation of state law as

3   alleged herein.

4       **D.**    **ADEQUATE REPRESENTATION**

5       36.    Plaintiffs will fairly and adequately protect the interests of the members

6   of the Class in that they do not have irreconcilable conflicts with or interests materially

7   antagonistic to those of other Class Members.

8       37.    Plaintiffs are committed to the vigorous prosecution of this action and

9   have retained adequate counsel experienced in the prosecution of class actions,

10   including consumer class actions. Accordingly, Plaintiffs are adequate representatives

11   of the Class and will fairly and adequately protect the interests of the Class.

12       **E.**    **SUPERIORITY AND SUBSTANTIAL BENEFITS OF CLASS**

13              **LITIGATION**

14       38.    To the extent it is an element for establishing class certification for

15   certain causes of action, a class action is superior to other available methods for the

16   fair and efficient group-wide adjudication of this controversy and, as applicable,

17   possesses substantial benefits.   Individual joinder of all Class Members is

18   impracticable, and no other group method of adjudication of all claims asserted herein

19   is more efficient and manageable while at the same time provides all the remedies

20   available to ensure the full purpose of this State's consumer protection laws are

21   effectuated. Furthermore, as the damages suffered by each individual Class Member

22   may be relatively small and the relief sought discrete, the expense and burden of

23   individual Class Members to redress the wrongs done to them, and the cost to the court

24   system of adjudicating such litigation on an individual basis, would be substantial. To

25   counsel's knowledge there has not been any substantial litigation concerning this

26   controversy commenced against the parties. It is not anticipated that there will be any

27   difficulties in the management of this litigation due to the focus of the wrongdoing on

28   Mercedes' and Keyes' conduct and their knowledge of the true facts.   Individualized

1   litigation would also present the potential for varying, inconsistent, or contradictory
2   judgments and would magnify the delay and expenses of all parties and  the court
3   system resulting from multiple trials asserting the same factual issues.  The conduct
4   of this action as a class action presents fewer management difficulties, conserves the
5   resources of the parties and the court system, and protects the rights of each Class
6   Member as compared to other methods for the group-wide adjudication of this
7   controversy.  Thus, the Class and the court system achieve substantial benefits by the
8   prosecution of this action on a class-wide basis by avoiding the burden of multiple
9   litigation involving identical claims, as well as by aiding legitimate business
10  enterprises in curtailing illegitimate competition and ensuring a therapeutic effect on
11  those companies such as Mercedes and Keyes that indulge in fraudulent practices.

12      39.     Notice of the pendency or any resolution of this action can be provided to
13  the Class Members by publication and/or individual mailed notice, as appropriate
14  under California law, and the costs of such notice are properly imposed on Mercedes.

15      40.     This action should be certified to proceed on a class-wide basis because:
16      a.      the prosecution of separate actions by the individual Class Members
17              would create a risk of inconsistent or varying adjudications with respect
18              to individual Class Members, thus establishing incompatible standards
19              of conduct for Mercedes;
20      b.      due to the nature of the relief sought, the prosecution of separate actions
21              by individual Class Members would create a risk of adjudication with
22              respect to them that would, as a practical matter, be dispositive of the
23              interests of the other Class Members not parties to such adjudications or
24              could substantially impair or impede the ability of such Class Members
25              to protect their interests;  and
26      c.      Mercedes and/or Keyes act or refuse to act in respects generally
27              applicable to the Class, thereby making appropriate final injunctive relief
28

12

1    with regard to the Class Members as a whole in terms of the equitable

2    relief sought.

3    ## SUMMARY OF FACTS RELATIVE TO PLAINTIFFS' INDIVIDUAL

4    ## TRANSACTION

5    41.    On or about September 25, 2011, Daniel Brown, who is Mr. Friedman's

6    partner, went to Keyes' Van Nuys dealership to have Mr. Friedman's current vehicle

7    – a 2010 Mercedes GL450 – serviced.  While at Keyes, Mr. Brown looked at a 2012

8    CLS550 and took it for a test drive with a Keyes salesman.  Mr. Brown liked the way

9    the CLS550 handled and, upon returning home that day, started to research the

10   CLS550 vehicles and their features on the Internet, by way of the Mercedes website.

11   42.    Mr. Brown looked at Mercedes' website, paying particular attention to the

12   features offered on the 2012 CLS550 vehicles, as well as the specifications and

13   statistics regarding such things as the engine, etc.  At the time, Mr. Brown was driving

14   a 2011 Infiniti vehicle.  As such, Mr. Brown was specifically looking to see if the 2012

15   CLS550 vehicles had all of the same features that he already had with his 2011 Infiniti

16   or if it offered newer and/or additional features.

17   43.    On the Mercedes website, Mr. Brown saw the 2012 CLS550 was listed as

18   being equipped with various standard features and/or features available if the

19   customer purchased Mercedes' "Premium 1 Package" for the CLS550 including, but not

20   limited to, SiriusXM Satellite Radio with SiriusXM Traffic and Weather, the

21   "PARKTRONIC with Active Parking Assist" system, and a rear view camera that came

22   with "active parking guidelines" on the screen.

23   44.    After researching the 2012 CLS550 on Mercedes' website, Mr. Brown

24   decided he liked the vehicle and was especially interested in the PARKTRONIC system

25   and active parking guideline feature, as the driveway at his house is quite narrow and

26   he and Mr. Friedman have to park two vehicles in a tandem fashion.  The Infiniti

27   vehicle that Mr. Brown had at that time did not have anything equivalent to Mercedes'

28

13

1  PARKTRONIC system, although the Infiniti did have the parking guidelines and

2  SiriusXM Weather features.

3      45.    A few days later, Mr. Brown and Mr. Friedman went back to Keyes to pick

4  up Mr. Friedman's 2010 GL450 vehicle from Keyes' service department. While at

5  Keyes, Mr. Friedman began looking at other Mercedes SUVs on the lot. As a result of

6  that visit, Mr. Friedman decided to lease a 2011 GL550 for himself from Keyes.

7      46.    Mr. Friedman, Mr. Brown, and the Keyes salesman, whose name was

8  Joseph, took the 2011 GL550 for a test drive. During the test drive, Mr. Brown asked

9  Joseph various questions about the features of the Mercedes 2012 CLS550 vehicles.

10  Specifically, Keyes represented the 2012 CLS550 vehicles had SiriusXM Traffic *and*

11  Weather. Additionally, Keyes represented that *all* 2012 Mercedes vehicles had the

12  active parking guidelines on the rear view camera as "standard" equipment but that

13  the 2011 Mercedes vehicles – like the 2011 GL550 they were test driving – did *not*

14  have the active parking guidelines.

15      47.    During that test drive, Mr. Brown told Joseph the PARKTRONIC system

16  and the rear view camera with active parking guidelines were key features to him

17  because of the size of their driveway and the manner in which he and Mr. Friedman

18  had to park their vehicles. Because it was so important to Mr. Brown, he again asked

19  Joseph whether the Mercedes 2012 CLS550 vehicles had the parking sensors/alarms

20  (*i.e.*, PARKTRONIC) *and* the active parking lines. Joseph responded "yes."

21      48.    Upon returning to the lot, Mr. Friedman and Mr. Brown accompanied

22  Joseph into the dealership to discuss Mr. Friedman's lease of the 2011 GL550. While

23  running the numbers and getting the documents ready for the lease of that vehicle to

24  Mr. Friedman, Joseph kept telling Mr. Brown, "next, we'll get you settled into that

25  CLS." In fact, Joseph had a 2012 CLS550 brought around to the front of the

26  dealership, so Mr. Brown could "look at it again." Mr. Brown repeatedly told Joseph

27  "not to bother" because the 2012 CLS550 was out of his budget.

28  ///

14

49.   However, Joseph kept pushing the 2012 CLS550 on Mr. Brown and Mr. Friedman. In fact, while they were waiting for Mr. Friedman's 2011 GL550 to be detailed, Joseph took them both on another test drive in the 2012 CLS550. During this test drive, Joseph again pointed out the features of the 2012 CLS550, focusing on the features that were different between it and the 2011 GL450 Mr. Friedman had just leased from Keyes.

50.   Back at the dealership once again, Joseph took Mr. Brown and Mr. Friedman inside the dealership, this time to talk numbers for Mr. Brown's acquisition of the 2012 CLS550. Mr. Brown told Joseph he wanted to use his Infiniti vehicle as a trade-in vehicle for any deal they reached. Joseph took Mr. Brown's registration and apparently contacted Infiniti Financial Services to obtain the lease payoff on the Infiniti trade-in.

51.   Joseph told Mr. Brown Keyes would "take his Infiniti and pay it off." Mr. Brown believed Keyes would take the Infiniti as a straight trade and that it would be a "wash" – meaning he would not have to pay any extra down towards the 2012 CLS550 and whatever value they gave him for the Infiniti would be the same as the balance still outstanding on the lease.

52.   Mr. Brown did not believe he was "upside down" or had any negative equity in the Infiniti trade-in as he had only had it for approximately two years and had put $6,000 down towards the lease of it. Furthermore, if there was any negative equity, he did not believe it would be rolled into any new deal he signed with Keyes. No one at Keyes ever told Mr. Brown or Mr. Friedman that any negative equity (if there was any) in Mr. Brown's Infiniti trade-in vehicle would be rolled into the deal for the 2012 CLS550. Furthermore, no one at Keyes ever told Mr. Brown how much they were giving him for his trade-in vehicle.

53.   Joseph told Mr. Brown Keyes could get him into the 2012 CLS550 for $5,000 down, with monthly payments of approximately $1,500. Mr. Brown told Joseph that was too much, that he could not afford the vehicle on those terms. Joseph left and

15

1   returned, offering Mr. Brown the 2012 CLS550 for $5,000 down and monthly payments

2   of $1,200. Again, Mr. Brown told Joseph it was "too much" and he could not afford it.

3   In fact, Mr. Brown told Joseph he could not afford monthly payments over $1,000 and

4   could not put more than $3,000 down. After numerous times of Joseph leaving to

5   allegedly speak with a manager and returning, he eventually offered Mr. Brown a

6   "great deal" for the 2012 CLS550, stating Keyes was only offering such a "great deal"

7   because they are getting two vehicles: $3,000 down and monthly payments of

8   approximately $960.

9        54.   Wanting to think about it, Mr. Brown and Mr. Friedman went back

10  outside to look at the 2012 CLS550. Mr. Brown liked the vehicle – which would be his

11  personal vehicle – and believing they were getting a great deal considering the cost of

12  the vehicle (i.e., roughly $80,000), Plaintiffs decided to lease the 2012 CLS550 on the

13  offered terms.

14       55.   Mr. Brown and Mr. Friedman were then introduced to a Keyes' Finance

15  Manager, who prepared all of the documents for their lease of the 2012 CLS550 vehicle

16  to Mr. Friedman, including a Motor Vehicle Lease Agreement. At that time, the

17  Finance Manager presented Mr. Friedman with the lease documents for the 2012

18  CLS550 vehicle, including the Lease Agreement, and simply instructed him where to

19  sign and initial the documents. Again, no one from Keyes ever told Mr. Friedman or

20  Mr. Brown that Mr. Brown was "upside down" or allegedly had negative equity in the

21  Infiniti trade-in vehicle or that Keyes would be rolling that negative equity into the

22  lease for the 2012 CLS550.

23       56.   After signing the lease documents, Mr. Brown and Mr. Friedman left

24  Keyes' dealership with their newly-leased vehicles.

25       57.   Upon returning home with the vehicles, Mr. Brown began inspecting his

26  new 2012 CLS550 in more detail and trying out the various features of the vehicle. At

27  that point, Mr. Brown noticed the 2012 CLS550 vehicle they had leased from Keyes did

28  *not* have the PARKTRONIC system or the active parking guidelines on the rear view

1  camera. Upon discovering these facts, Mr. Brown promptly called Joseph at Keyes to

2  report these missing features. Joseph told Mr. Brown to come back to Keyes the

3  following day (as the dealership was closed by then), and they would "figure it out."

4       58.  Accordingly, on September 29, 2011, Mr. Brown returned to Keyes'

5  dealership and met with Joseph. Joseph apologized and told Mr. Brown he believed

6  the 2012 CLS550 Keyes had leased to them *was* equipped with the "PARKTRONIC"

7  system when, in fact, the vehicle did not have PARKTRONIC but instead had a

8  "smart" cruise control feature instead. Joseph and Mr. Brown began looking on Keyes'

9  lot for a different 2012 CLS550 vehicle to "swap out" for the one they had been given

10  the day before.

11       59.  Eventually, Joseph and Mr. Brown located another 2012 CLS550 vehicle

12  (VIN: WDDLJ7DB8CA013758) (the "Vehicle"). Joseph represented the Vehicle had

13  the PARKTRONIC system, as well as the rear view camera with active parking

14  guidelines, and SiriusXM Weather, as well as a few other features that were not on the

15  previous 2012 CLS550 (*i.e.*, illuminated door sills and active multi-contour driver's

16  seat), and was approximately the same price as the previous vehicle. Joseph told

17  Mr. Brown Keyes would lease him the Vehicle in exchange for the previous one and

18  that his monthly payments would be a little higher due to the slightly different

19  features. None of the other financial terms of the lease were discussed, including terms

20  relating to Mr. Brown's Infiniti trade-in vehicle, as Mr. Brown was led to believe none

21  of those terms would be changing as the cars were simply being "swapped out," with

22  the slight difference in monthly lease payments.

23       60.  Keyes prepared the lease documents for the Vehicle. Mr. Friedman left

24  work to return to Keyes' dealership and quickly signed all of the new documents for the

25  lease of the Vehicle, including a Mercedes-Benz Financial Services Motor Vehicle Lease

26  Agreement ("VLA") for the Vehicle. Attached hereto as Exhibit 1 is a true and correct

27  copy of the VLA for the Vehicle, executed by Mr. Friedman and Keyes on

28  September 29, 2011.

17

61.   Mr. Brown again left Keyes' dealership with a new 2012 CLS550. Having no reason to believe Keyes would have made the same mistake twice, Mr. Brown did not immediately "test" out all the features of the Vehicle. A few days later, after having difficulty locating and/or using the SiriusXM Weather feature, Mr. Brown called Joseph at Keyes to seek his assistance with it.

62.   Joseph told Mr. Brown to look for the "Globe" icon, as that is the icon to activate/use the SiriusXM Weather feature. Mr. Brown then informed Joseph there was no Globe icon anywhere. In response, Joseph told Mr. Brown to return to the dealership with the Vehicle and he would show him where it is and how to use it.

63.   After hanging up with Joseph, Mr. Brown took the Vehicle to a friend of his who works for Mercedes, lives close by, and who also has a 2012 CLS550, to see if his friend could help him access the SiriusXM Weather feature. Once seated in his friend's 2012 CLS550, Mr. Brown noticed a number of differences between his 2012 CLS550 and his friend's car.

64.   For example, the illuminated door sills on the Vehicle were blue (instead of white, as on his friend's 2012 CLS550) and are located higher on the vehicle. The map in his friend's vehicle looked different and, apparently, had Version 6.0 2011/2012 map software and data, whereas his Vehicle came equipped with Version 4.0. 2010/2011. Additionally, his friend's steering wheel was flat-bottomed and all chrome around the buttons, with perforated grips. The steering wheel on Mr. Brown's Vehicle has only perforated grips, has limited chrome, and is completely round.

65.   After noting the various differences between the CLS550 vehicles, his friend told Mr. Brown that the Vehicle was an "early production version" of the 2012 Mercedes CLS550. In fact, his friend told Mr. Brown he had seen an internal Mercedes e-mail stating Mercedes had made some changes to the features of the 2012 CLS550 vehicles after the first 2012 CLS550s had been "pushed out."

/ / /

/ / /

66.     Upon learning this disturbing information, Mr. Brown went straight to Keyes' dealership to talk to Joseph about the missing features. Mr. Brown told Joseph that the trouble he had been having accessing the SiriusXM Weather feature was because the Vehicle did not, in fact, have SiriusXM Weather. Mr. Brown told Joseph Keyes had sold him an "old car" and one that had outdated map software.  Joseph replied he did not know what Mr. Brown was talking about.  Mr. Brown then told Joseph that his friend told him the Vehicle was an early-production model 2012 CLS550, which was missing some of the features available on the current production models, such as SiriusXM Weather and the active parking guidelines. Mr. Brown took Joseph into Keyes' showroom, where there was another 2012 CLS500 vehicle, and proceeded to point out the other differences in features he had noticed when comparing his Vehicle to his friend's, such as the illuminated door sills, the steering wheel, and the Map software version.  Mr. Brown also pointed out that the audio system in his Vehicle had a compact flash reader, while the showroom floor model had an SD card reader. Mr. Brown told Joseph that the rear view camera in the Vehicle did *not* have the active parking guidelines.

67.     Understandably angry that the Vehicle did not have key features he had wanted and had been assured it had, Mr. Brown demanded that Keyes immediately provide the software update to address the outdated Map software/data problem. He told the Keyes Service Manager that the Map software should be Version 6.0 2011/2012, which was the version installed on his friend's 2012 CLS550.  Keyes advised Mr. Brown it did not have the software update in stock and would have to order it, and it would take 2-4 weeks. Mr. Brown left with the Vehicle and Keyes was to call him when the part was in for the software update.

68.     Later, Mr. Brown told his friend that his Vehicle was also missing the active parking guidelines on the rear view camera, to which his friend responded the 2012 CLS550 vehicles did not come "equipped" with active parking guidelines, which

19

1  is directly contrary to the advertisements on Mercedes' website and to the

2  representations made by Keyes.

3      69.    Approximately six weeks later, Keyes called and told Mr. Brown the parts

4  were in for the software update. However, the update on the map software failed.

5  Mr. Brown has been told the software update will not work to update his map to the

6  correct version (Version 6.0 2011/2012) because of an apparent difference in the

7  hardware between his Vehicle and other 2012 CLS550 vehicles, for which the software

8  update would work. Additionally, Keyes told him it could not replace the hardware

9  (which would accept the software update) as those parts were not currently available.

10  As such, Keyes told Mr. Brown it did not know how long it would be before his Vehicle's

11  software could be updated.

12      70.    Accordingly, Mr. Brown demanded Keyes take the Vehicle back, since no

13  one was able to tell him when it would have the features he had asked for and had paid

14  for. Mr. Brown explained the situation to Keyes' General Sales Manager and

15  demanded Keyes give him a "real" 2012 CLS550. Keyes' General Sales Manager told

16  Mr. Brown Keyes was not able to grant his request as only Mercedes could authorize

17  a replacement vehicle.

18      71.    In fact, since leasing the Vehicle from Keyes, Mr. Brown and

19  Mr. Friedman have discovered that only *certain* 2012 CLS550 vehicles (*e.g.*, those

20  produced in the latter part of 2011) were equipped with features Mercedes advertised

21  as "standard," and the Vehicle Keyes leased to them was *not* one of those later-built

22  CLS550s. The advertisements Mr. Brown saw before the lease of the Vehicle from

23  Keyes did not make this discrepancy clear, nor did they state that only certain 2012

24  CLS550 vehicles were equipped with the certain features. Furthermore, Keyes also

25  misrepresented the features and equipment on the Vehicle on numerous occasions.

26      72.    Most notably, Mercedes and Keyes advertised the 2012 CLS550 vehicles

27  came equipped with a trial subscription for SiriusXM Radio, which included SiriusXM

28  Traffic and Weather features and/or functions, and active parking guidelines on the

1    rear view camera.   Mercedes and Keyes represented these two features were

2    "standard" features of the 2012 CLS550 vehicles for which the "Premium 1 Package"

3    were ordered.  Mr. Brown and Mr. Friedman asked for the "Premium 1 Package" and

4    paid for that package. Mr. Brown was repeatedly assured his Vehicle would have these

5    features – yet it does not.

6        73.    Additionally, if a customer opted to purchase "upgraded" wheels (*i.e.*, 18"

7    or 19" Alloy 5-spoke wheels) for a 2012 CLS550 vehicle, the vehicle was supposed to

8    come with a "sport-steering wheel," which was "flat-bottomed" for easier ingress and

9    egress, had perforated grips, pronounced contours, and complete chrome around the

10   buttons/controls. Despite the fact Mr. Brown and Mr. Friedman asked and paid for 19"

11   Alloy 5-spoke wheels, the steering wheel in the Vehicle is completely round and is not

12   all chrome around the buttons/controls.

13       74.    Ironically, on October 21, 2011, Mr. Friedman received a letter from

14   Mercedes and SiriusXM Satellite Radio, welcoming him to the SiriusXM services and

15   stating "Your Mercedes-Benz is equipped with many exciting features – including a 6-

16   month trial subscription to SiriusXM Satellite Radio, SiriusXM Traffic *and SiriusXM*

17   *Weather.*" (Emphasis added.) Attached hereto as Exhibit 2 is a true and correct copy

18   of the October 21, 2011 "welcome" letter.

19       75.    Mr. Brown and Mr. Friedman would not have leased the Vehicle if they

20   had known it did not have the active parking guidelines for the rear view camera or the

21   SiriusXM Weather feature, because Mr. Brown's Infiniti vehicle also had these

22   features.  As such, they would not have decided to lease a new car for substantially

23   more money if the car had even *fewer* features than the Infiniti Mr. Brown was then

24   driving.

25       76.    Nowhere on Mercedes' website is there a disclaimer that only certain 2012

26   CLS550 vehicles (*i.e.*, those manufactured after a certain date) would be equipped with

27   the SiriusXM Weather feature and/or the active parking guidelines.  Furthermore, no

28   one at Keyes told Mr. Brown or Mr. Friedman SiriusXM Weather would not be

1   available on the Vehicle Keyes was leasing to them or that the Vehicle did not have the

2   active parking guidelines they wanted.  In fact, Mr. Brown and Mr. Friedman were

3   repeatedly told by Keyes the 2012 CLS550 Vehicle leased to them *did* have these

4   features.  Additionally, Mercedes advertises and Keyes repeatedly represented the

5   Vehicle came with active parking guidelines for the rear view camera when it clearly

6   does not have them.

7        77.   Only after customers started complaining did Mercedes admit – in an

8   internal Mercedes communication – that, in July 2011 there had been a production

9   change for the 2012 CLS550 vehicles, which changes included, at a minimum, the

10  addition of the SiriusXM Weather feature. This information was apparently conveyed

11  to its dealers – like Keyes – sometime in 2011.  To date, neither Mercedes nor Keyes

12  have ever publicly acknowledged that certain early-production 2012 CLS550 vehicles

13  are not equipped with all promised and advertised features.

14       78.   According to Keyes, the Vehicle leased to Mr. Friedman and Mr. Brown

15  was allegedly manufactured in May 2011. Therefore, the Vehicle clearly did not have

16  – and never would have – the SiriusXM Weather feature, despite the repeated

17  representations made by Mercedes and Keyes to the contrary.

18       79.   Furthermore, only after signing the lease and taking delivery of the

19  Vehicle did Plaintiffs discover Keyes had credited them only $36,000 for the Infiniti

20  trade-in vehicle, for which the payoff was approximately $38,000, thereby creating over

21  $2,000 in negative equity.   No one at Keyes ever disclosed to Mr. Friedman or

22  Mr. Brown that there was any "negative equity" in Mr. Brown's trade-in or that Keyes

23  would be rolling that negative equity into the lease for the Vehicle.  Had Keyes

24  disclosed this material information to Mr. Friedman or Mr. Brown, they would not

25  have agreed to lease the Vehicle.  As it turns out, Keyes later placed Mr. Brown's

26  Infiniti on its lot for an advertised price of approximately $43,000, or $7,000 more than

27  it gave Mr. Brown.

28  ///

1       80.   Mr. Friedman and Mr. Brown attempted to resolve this matter without

2   the involvement of legal counsel.  Mr. Brown called Mercedes' Customer Service

3   department and filed a complaint.  In response, Mercedes contacted Mr. Brown and

4   advised him there was "nothing we can do for you."  Mr. Brown also filed a claim with

5   the BBB, which was denied.  All requests for a replacement vehicle or a repurchase of

6   the Vehicle have been rebuffed by Mercedes and/or Keyes.

7       81.   At some point after September 29, 2011, the Motor Vehicle Lease

8   Agreement for the lease of the Vehicle to Plaintiff Brian Friedman was assigned by

9   Keyes to Defendant Mercedes-Benz Financial Services USA, LLC ("MB Financial").

10      82.   Plaintiffs made their monthly payments to MB Financial in accordance

11  with the terms of the VLA.

12      83.   California Vehicle Code § 11614(a) provides it is unlawful for a lessor-

13  retailer licensed in this state to "Make or disseminate, or cause to be made or

14  disseminated, before the public in this state, in any newspaper or other publication, or

15  any advertising device, or by oral representation, or in any manner or  any means

16  whatsoever, any statement that is untrue or misleading and that is known, or which

17  by the exercise or reasonable care should be known, to be untrue or misleading . . . ."

18      84.   California Vehicle Code § 11713(a) provides it is unlawful for any licensed

19  dealer to "Make or disseminate, or cause to be made or disseminated, before the public

20  in this state, in any newspaper or other publication, or any advertising device, or by

21  public outcry or proclamation, or in any manner or  any means whatsoever, any

22  statement that is untrue or misleading and that is known, or which by the exercise or

23  reasonable care should be known, to be untrue or misleading . . . ."

24      85.   Keyes is, on information and belief, a licensed dealer and lessor-retailer

25  in this state within the terms of the California Vehicle Code Sections 285 and 373.

26  / / /

27  / / /

28  / / /

**FIRST CAUSE OF ACTION**

Violation of Consumers Legal Remedies Act, Civil Code Section 1750, *et seq.* – Class Claim – As Against Defendants Mercedes and Does 1-10

86.     Plaintiffs, on their own behalf and on behalf of the Class Members, incorporate by reference each and every allegation set forth in Paragraphs 1 through 85, inclusive, of this Complaint and further allege as follows.

87.     The vehicles purchased by Plaintiffs and each Class Member constitute "goods" bought for use primarily for personal, family, or household purposes pursuant to Section 1761(a).

88.     Plaintiffs and each Class Member are "consumers" pursuant to Section 1761(d).

89.     Defendants Mercedes and Does 1-10 are "persons" pursuant to Section 1761(c).

90.     The advertisement and sale of the vehicles to Plaintiffs and each Class Member are "transactions" pursuant to Section 1761(e).

91.     Mercedes' actions, representations, and conduct are subject to the CLRA, because they extend to "transactions," as defined in Section 1761(e), that have resulted in the sale or lease of goods to "consumers."

92.     The CLRA applies to the acts, practices, and/or conduct engaged in by Mercedes and alleged herein, because Mercedes' acts, practices, and/or conduct have resulted in transactions involving the sale and/or lease of the vehicles at issue to Plaintiffs and the Class Members primarily for personal, family, or household purposes.   Defendants violated and continued to violate the CLRA in at least the following respects:

a.     Mercedes represented goods had characteristics, uses, and/or benefits which they did not have;

b.     Mercedes represented goods were of a particular standard, quality, style, or model, when they were of another;

24

COMPLAINT

c.    Mercedes advertised goods with intent not to sell them as advertised;

d.    Mercedes represented transactions conferred or involved rights, remedies, or obligations which they did not have or involve, or which are prohibited by law; and

e.    Mercedes represented that the subject of a transaction had been supplied in accordance with a previous representation when it had not.

93.    As set forth in detail above, Mercedes produced, manufactured, advertised, distributed, and sold the 2012 CLS550 vehicles as being equipped with certain features including, but not limited to, the SiriusXM Weather function and active rear parking guidelines when, in fact, those vehicles did not have these features.

94.    On or about May 3, 2012, Plaintiffs served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and demand letter seeking individual and class relief under the CLRA. The letter was received by Mercedes on May 8, 2012.

95.    By misrepresenting and failing to disclose that these early production 2012 CLS550 vehicles did not conform to Mercedes' representations as set forth above, Mercedes violated the CLRA, specifically Section 1770(a)(5), (7), (9), (14), and (16), as set forth above.  Plaintiffs have provided notice prior to filing suit requesting Defendants provide a correction, repair, replace or otherwise rectify the matter on behalf of Plaintiffs and the Class Members.  Mercedes failed to offer an adequate remedy to Plaintiffs and/or the Class Members.

96.    As a result of the acts of unfair competition or unfair or deceptive acts or practices detailed above, Plaintiffs and the Class Members suffered and will continue to suffer damage.  Pursuant to the CLRA, Section 1780(a)(2), Mercedes should be enjoined from continuing to employ the unlawful methods, acts, and practices alleged herein to prevent any future harm to Plaintiffs and other Class Members, and should be ordered to pay actual damages and restitution and provide all the relief set forth in Section 1780, including statutory damages of up to $1,000 per consumer and/or up to

1    $5,000 per consumer who qualifies as a "senior citizen" under the CLRA, as well as

2    payment of attorneys' fees and costs. In addition, to the extent such conduct is found

3    to be willful, fraudulent, and/or malicious, Mercedes should be ordered to pay

4    exemplary damages, all in an amount according to proof at time of trial. Plaintiffs seek

5    all available remedies under Civil Code Section 1780, including their reasonable

6    attorney's fees.

7                            SECOND CAUSE OF ACTION

8    Commission of Unlawful and/or Unfair Business Acts and Practices, Bus. &

9        Prof. Code Section 17200, *et seq.* – Class Claim – As Against Defendants

10                          Mercedes and Does 1-10

11          97.    Plaintiffs, on their own behalf and on behalf of the Class Members,

12   incorporate by reference each and every allegation set forth in Paragraphs 1 through

13   96, inclusive, of this Complaint and further allege as follows.

14          98.    Mercedes' acts, omissions, misrepresentations, practices, and/or non-

15   disclosures constituted unlawful and/or unfair business acts and/or practices within the

16   meaning of California Business & Professions Code Sections 17200, *et seq.*

17          99.    Plaintiffs and the Class Members suffered injury in fact and lost money

18   as a result of Mercedes' unfair competition, including, but not limited to, their

19   statutory damages under the CLRA caused by Mercedes' misrepresentations regarding

20   the 2012 CLS550 vehicles purchased or leased by Plaintiffs and the Class Members

21   and by purchasing or leasing and/or paying more for those vehicles than Plaintiffs and

22   the Class Members would have if they had known the true facts – *i.e.*, that the vehicles

23   would not have the features advertised by Mercedes.

24          100.   Mercedes' conduct described herein violates California Business &

25   Professions Code § 17200 ("UCL") in the following respects:

26          a.     Mercedes' policies and practices regarding the advertising, marketing,

27                 distribution, and sale (through its agents) of 2012 CLS550 vehicles as

28                 coming equipped certain features including, but not limited to, the

                                          26

SiriusXM Weather function and active rear parking guidelines, when such vehicles did not have these features causes substantial injury to consumers with no countervailing legitimate benefit and thus is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class Members, constitutes "unfair" business acts or practices within the meaning of the UCL; and

b.    Mercedes' policies and practices regarding the advertising, marketing, distribution, and sale (through its agents) of 2012 CLS550 vehicles as coming equipped certain features including, but not limited to, the SiriusXM Weather function and active rear parking guidelines, without disclosing the true facts that certain early production 2012 CLS550 vehicles did not have these features, and in making statements that are likely to mislead Plaintiffs and the Class and the general public, constitutes "fraudulent" business acts or practices within the meaning of the UCL.

101.    In addition, Mercedes' practices and/or policies as detailed herein are "unlawful" business practices in the following respects, violating, *inter alia*, Bus. & Prof. Code § 17500, *et seq.*, and the CLRA:

a.    Mercedes did not properly or reasonably disclose to customers that certain 2012 CLS550 vehicles did not have – and could not have – the SiriusXM Weather feature and could not be retrofitted to have these features;

b.    Mercedes did not properly or reasonably disclose to customers that certain 2012 CLS550 vehicles, for which the "Premium 1 Package" was ordered, would not have the advertised active parking guidelines as part of the rear view camera;

///

///

c.    Mercedes, either directly and/or through its dealers, did not disclose the existence of the material discrepancies detailed herein and have not provided adequate or any compensation therefor;

d.    Mercedes disseminated misleading advertising and promotional materials regarding the features of the 2012 CLS550 vehicles, while not disclosing material facts, including that SiriusXM Weather would not be available on 2012 CLS550 vehicles manufactured before July 2011; and

e.    Mercedes disseminated misleading advertising and promotional materials regarding the features of the 2012 CLS550 vehicles, while not disclosing material facts, including that if customers purchased the "Premium 1 Package," their rear view camera would not have the advertised active parking guidelines.

102.    As a result of Mercedes' violation of the UCL, Plaintiffs and Class Members paid excessive amounts of money for their vehicles, have not been compensated for the diminution in value for such vehicles, and suffered and will continue to suffer injury in fact and a loss of money or property.

103.    Pursuant to California Business and Professions Code Section 17203, Plaintiffs and Class Members seek, and are therefore entitled to an Order enjoining Mercedes from continuing to engage in acts of unfair competition and to engage in a corrective informational and advertising campaign in compliance with all applicable laws. Plaintiffs additionally request an order from the Court requiring Mercedes to provide complete equitable monetary relief so as to prevent Mercedes from benefitting from the practices that constitute unfair competition or the use or employment of any monies resulting from the sale of these vehicles, including requiring the payment of restitution of any monies as may be necessary to restore any money or property which may have been acquired by means of such acts of unfair competition and/or disgorgement of all excessive amounts paid to Mercedes or its agents or incurred by Class Members.

1    104.   Plaintiffs, on behalf of themselves and Class Members, also seek all

2  equitable relief pursuant to California Code of Civil Procedure Section 384, pre- and

3  post-judgment interest at the highest rate allowable by law; and payment of attorneys'

4  fees and costs pursuant to, *inter alia*, Code of Civil  Procedure Section 1021.5, the

5  common fund, and private Attorney General doctrines.

6                                   <u>THIRD CAUSE OF ACTION</u>

7     **False Advertising in Violation of Business & Prof. Code Section 17500 *et***

8       ***seq.* – Class Claim – As Against Defendants Mercedes and Does 1-10**

9    105.   Plaintiffs, on their own behalf and on behalf of the Class Members,

10  incorporate by reference each and every allegation set forth in Paragraphs 1 through

11  104, inclusive, of this Complaint and further allege as follows.

12    106.   In violation of California Business & Professions Code Section 17500 *et*

13  *seq.*, Mercedes has disseminated or caused to be disseminated deceptive advertising

14  misrepresentations, omissions, and practices including, as an example, that the 2012

15  CLS550 vehicles would have certain features including, but not limited to, the

16  SiriusXM Weather function and active parking guidelines for its rear view camera.

17    107.   Mercedes' advertising misrepresentations, omissions, and practices in

18  connection with the marketing of the 2012 CLS550 vehicles and its features are

19  misleading or likely to mislead for the reasons set forth above.

20    108.   Mercedes' advertising misrepresentations, omissions, and practices made

21  in connection with the sale or lease of certain 2012 CLS550 vehicles sold or leased in

22  2011 (and possibly early 2012) are unfair, deceptive and/or misleading within the

23  meaning of California Business & Professions Code Section 17500, *et seq.*  These

24  representations are likely to deceive reasonable consumers.

25    109.   In making and disseminating the statements alleged herein, Mercedes

26  should have known that the statements detailed above were misleading, and thus

27  acted in violation of California Business & Professions Code Section 17500, *et seq.*

28  / / /

29

COMPLAINT

110.   As detailed above, Plaintiffs and Class Members suffered injury in fact and a loss of money or property as a result of the acts and practices that violate Section 17500, *et seq.*

111.   Pursuant to California Business and Professions Code Section 17535, Plaintiffs and Class Members seek, and are therefore entitled to an Order enjoining Mercedes from continuing to engage in acts of unfair competition and to engage in a corrective informational and advertising campaign in compliance with all applicable laws. Plaintiffs additionally request an order from the Court requiring Mercedes to provide complete equitable monetary relief so as to prevent Mercedes from benefitting from the practices that constitute unfair competition or the use or employment of any monies resulting from the sale of these vehicles, including requiring the payment of restitution of any monies as may be necessary to restore any money or property which may have been acquired by means of such acts of unfair competition and/or disgorgement of all excessive amounts paid to Mercedes or its agents or incurred by Class Members.

112.   Plaintiffs, on behalf of themselves and Class Members, also seek all equitable relief pursuant to California Code of Civil Procedure Section 384, pre- and post-judgment interest at the highest rate allowable by law; and payment of attorneys' fees and costs pursuant to, *inter alia*, Code of Civil Procedure Section 1021.5, the common fund, and private Attorney General doctrines.

113.   As a result of Mercedes' violations of the false advertising statute, Plaintiffs and Class Members are entitled to equitable relief as the Court deems appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT

## FOURTH CAUSE OF ACTION

### Violation of Consumers Legal Remedies Act, Civil Code Section 1750, *et seq.* – Individual Claim – As Against Defendants Keyes, MB Financial, and Does 1-10

114.   Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 113, inclusive, of this Complaint and further allege as follows. This cause of action is asserted by Plaintiffs individually.

115.   The Vehicle leased to Plaintiffs constitutes "goods" for use primarily for personal, family, or household purposes pursuant to Civil Code Section 1761(a).

116.   Plaintiffs are "consumers" pursuant to Civil Code Section 1761(d).

117.   Defendants are "persons" pursuant to Civil Code Section 1761(c).

118.   The advertisement and lease of the Vehicle to Plaintiffs is a "transaction" pursuant to Civil Code Section 1761(e).

119.   The acts and/or practices engaged in by Defendant Keyes and alleged herein were intended to, and did, result in the lease of the Vehicle to Plaintiffs primarily for personal, family, or household purposes, and violated and continued to violate the CLRA in at least the following respects:

a.   Keyes represented that the goods or services had sponsorship, characteristics, uses, or benefits which they did not have;

b.   Keyes represented that the goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model if they are of another;

c.   Keyes advertised goods with intent not to sell them as advertised;

d.   Keyes represented that the transaction had been supplied in accordance with previous representations when it had not;

e.   Keyes represented that the transaction conferred or involved rights, remedies, or obligations which it did not have or involve, or which were prohibited by law; and

31

f.      Keyes inserted unconscionable arbitration clauses on the back of purchase and/or lease contracts.

120.   On or about May 3, 2012, Plaintiffs served Defendants via certified mail, return receipt requested, a Consumers Legal Remedies Act notification and demand letter seeking individual relief under the CLRA.  The letter was received by Keyes on May 5, 2012, and by MB Financial on May 7, 2012.

121.   By misrepresenting and failing to disclose the Vehicle Plaintiffs requested and that was delivered to them was *not* equipped with certain features including, but not limited to, SiriusXM Weather or active parking guidelines, Keyes violated the CLRA.

122.   Section 1780(a)(2) of the Act provides a consumer is entitled to an injunction prohibiting acts or practices which violate the Act.  Plaintiffs allege Keyes has established a pattern and practice of: (1) misrepresenting the features of the 2012 CLS550 vehicles; (2) misrepresenting that the rear view camera available on 2012 CLS550 vehicles came with active parking guidelines; (3) misrepresenting that 2012 CLS550 vehicles came equipped with a trial subscription to SiriusXM Radio, that included SiriusXM Traffic *and* SiriusXM Weather; (4) failing to disclose that only certain 2012 CLS550 vehicles were equipped with the above-noted features; (5) failing to disclose that 2012 CLS550 vehicles manufactured before July 2011 would not come equipped with the SiriusXM Weather feature; (6) failing to disclose that it was creating negative equity in Plaintiffs' trade-in vehicle by undervaluing the trade-in and then rolling the negative equity in the trade-in vehicle into the lease contract without Plaintiffs' knowledge and/or consent; and (7) inserting unconscionable arbitration clauses in consumers' contracts.

123.   Pursuant to Civil Code Section 1780, Plaintiffs seek all available relief, including damages, an order enjoining Defendants from the acts, methods, and practices as set forth in this Complaint, and attorneys' fees and costs according to proof at time of trial.

32

124.   As a result of the acts of unfair competition or unfair or deceptive acts or practices detailed above, Plaintiffs suffered and will continue to suffer damage. Pursuant to the CLRA, Section 1780(a)(2), Keyes should be enjoined from continuing to employ the unlawful methods, acts and practices alleged herein to prevent any future harm to Plaintiffs or others.

## FIFTH CAUSE OF ACTION

### Commission of Unlawful, Unfair, and/or Fraudulent Business Acts and Practices, Bus. & Prof. Code Section 17200, *et seq.* – Individual Claim – As Against Defendants Keyes, MB Financial, and Does 1-10

125.   Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 124, inclusive, of this Complaint, and further allege as follows. This cause of action is brought by Plaintiffs individually.

126.   Defendants' acts, omissions, misrepresentations, practices, and/or non-disclosures constituted unlawful, unfair, and/or fraudulent business acts and/or practices and untrue and misleading advertising within the meaning of California Business & Professions Code Section 17200, *et seq.*

127.   Defendant Keyes has engaged in "unlawful" business acts and/or practices by the following: (1) misrepresenting the features of the 2012 CLS550 vehicles; (2) misrepresenting that the rear view camera available on 2012 CLS550 vehicles came with active parking guidelines; (3) misrepresenting that 2012 CLS550 vehicles came equipped with a trial subscription to SiriusXM Radio, that included SiriusXM Traffic *and* SiriusXM Weather; (4) failing to disclose that only certain 2012 CLS550 vehicles were equipped with the above-noted features; (5) failing to disclose that 2012 CLS550 vehicles manufactured before July 2011 would not come equipped with the SiriusXM Weather feature; (6) failing to disclose that it was creating negative equity in Plaintiffs' trade-in vehicle by undervaluing the trade-in and then rolling the negative equity in the trade-in vehicle into the lease contract without Plaintiffs' knowledge and/or consent; and (7) inserting unconscionable arbitration clauses in consumers' contracts.

1  Plaintiffs seek an order enjoining Defendant Keyes from the acts, methods, and/or
2  practices as set forth in the complaint and for payment of restitution. These business
3  acts and/or practices violated numerous provisions of both state and federal law
4  including, *inter alia,* the CLRA, Business and Professions Code Sections 17500 and
5  17531, and California Vehicle Code Sections 11614(a) and 11713(a). Accordingly,
6  Defendant Keyes has violated Business & Professions Code Section 17200's
7  proscription against engaging in an "unlawful" business act or practice. Plaintiffs seek
8  an order enjoining Defendant from engaging in the acts, methods, and/or practices as
9  set forth in this Complaint and for payment of restitution.

10       128.   Defendant Keyes also engaged in a "fraudulent" business act or practice
11  in that the representations and omissions of material fact described above have a
12  tendency and likelihood to deceive purchasers of these vehicles.

13       129.   Defendant Keyes also engaged in an "unfair" business act or practice in
14  that the justification for selling vehicles based on the misrepresentations and
15  omissions of material fact delineated above is outweighed by the gravity of the
16  resulting harm, particularly considering the available alternatives, and offends public
17  policy, is immoral, unscrupulous, unethical, and offensive, or causes substantial injury
18  to consumers.

19       130.   The above-described unlawful, fraudulent, and/or unfair business acts
20  and/or practices conducted by Keyes continue to this day and present a threat to
21  Plaintiffs and the general public in that Keyes failed to publicly acknowledge the
22  wrongfulness of its actions and provide full equitable injunctive and monetary relief
23  as required by the statute.

24       131.   As a result of Keyes' violation of the UCL, Plaintiffs paid excessive
25  amounts of money for the Vehicle, have not been compensated for the diminution in
26  value of the Vehicle since it does not have the features they requested and paid for, and
27  thus suffered and will continue to suffer injury in fact and a loss of money or property.
28  / / /

132.   Pursuant to California Business & Professions Code Section 17203, Plaintiffs seek an order of this Court requiring Keyes to immediately cease such acts of unfair competition and enjoining Keyes from continuing to conduct business via the unlawful, fraudulent, and/or unfair business acts and practices set forth in this Complaint and from failing to fully disclose the true nature of their misrepresentations, and ordering Keyes to engage in a corrective notice and advertising campaign.   Plaintiffs additionally request an order from the Court requiring Keyes to provide complete equitable monetary relief so as to prevent Keyes from benefitting from the practices that constitute unfair competition or the use or employment of any monies resulting from the sale of these vehicles, including requiring the payment of restitution of any monies as may be necessary to restore any money or property which may have been acquired by means of such acts of unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows, on behalf of themselves, and the Members of the Class, as appropriate for the particular causes of action:

1.   An Order certifying the Class under the appropriate provisions of California law, and appointing Plaintiffs and their counsel to represent the Class.

2.   For the declaratory, equitable, and/or injunctive relief requested as permitted under the Consumers Legal Remedies Act and Business & Professions Code Section 17203 and/or Section 17535.

3.   For general, special, and actual damages according to proof at trial.

4.   For rescission and/or restitution of all monies required to be expended by Plaintiffs and Class Members, including restitution of all excessive amounts paid by Plaintiffs and Class Members, including restitution equal to the diminution in value of their vehicles and disgorgement of the ill-gotten gains derived from Defendants' illegal conduct.

5.   For incidental and consequential damages according to proof at trial.

6.   For the specified causes of action, punitive and/or statutory damages.

7.   For pre-judgment interest at the legal rate.

8.   For reasonable attorneys' fees and costs of suit as specified under, *inter alia*, Code of Civil Procedure Section 1021.5 and Civil Code Section 1780(d).

9.   For such other and further relief as the Court deems just and proper under the circumstances.

DATED: July 12, 2012

ROSNER, BARRY & BABBITT, LLP

By: _____

CHRISTOPHER P. BARRY
Attorneys for Plaintiffs

36

COMPLAINT

# EXHIBIT 1



Exhibit B
Page 61 of 67





# EXHIBIT 2

 Mercedes-Benz



October 21, 2011

**The SiriusXM Services in Your New
Mercedes-Benz Are Now Active**

Radio ID (ESN):   042664861431
Account #:        112200435653

Brian Friedman                 0064
5633 Irvine Ave
North Hollywood, CA 91601-1752

Dear Brian Friedman:

**Welcome to SiriusXM.** Your Mercedes-Benz is equipped with many exciting features — including a 6-month trial subscription to SiriusXM Satellite Radio, SiriusXM Traffic and SiriusXM Weather.

With the Sirius Select package, you have access to over 130 channels of great entertainment, including all types of commercial-free music, plus the best sports, talk, world-class news, kids' programming, comedy, weather and more.

SiriusXM Traffic provides updates on accidents, traffic flow, construction and road closures. This service is integrated with your vehicle's navigation system, so you can pick the fastest route based on current traffic conditions.

SiriusXM Weather uses the same sources that professional pilots and mariners rely on every day and provides you with continuously updated weather information. This service helps you stay in control with detailed weather forecasts and maps at the press of a button.

**Get Free Program Alerts and Newsletters**
Keep in touch with the latest SiriusXM information including new channels, live performances, special events, sports schedules and more. Just click on "Sign Up for Our Free E-Newsletter" at siriusxm.com/GetMostofSiriusTrial.

To continue enjoying SiriusXM once your trial is over, just complete and return the enclosed renewal form in the postage paid envelope provided. You may also renew online at siriusxm.com/extendnow or call SiriusXM at 1-866-635-2487. After your trial ends, the Sirius Select package is only $12.95* a month — or less if you take an annual or longer plan.

Sincerely,

Ralph Fisher
General Manager
Customer Assistance Center
Mercedes-Benz USA

Joe Zarella
Chief Service Officer
SiriusXM Radio

P.S. For your convenience, you can renew now and you will not be charged until the end of your trial. Just send in the enclosed renewal form before your trial ends to avoid an interruption in your SiriusXM service.*

*See SiriusXM Customer Agreement for complete terms at www.siriusxm.com. If you decide to continue your SiriusXM service at the end of your trial subscription, the paid plan you choose will automatically renew and bill at then-current rates until you call SiriusXM at 1-866-635-2349 to cancel. Complete details and restrictions on reverse. Prices shown are for the Sirius Select package of audio channels. Prices do not include Sirius Premier, SiriusXM Traffic and SiriusXM Weather.

SXMRENEWLEATHER-AM1          L2323015-008-000002074

1  ROSNER, BARRY & BABBITT, LLP
   Christopher P. Barry, SBN: 179308
2  Angela J. Smith, SBN: 216876
   Dana R. Turner, SBN: 280039
3  10085 Carroll Canyon Road, Suite 100
   San Diego, California 92131
4  TEL: (858) 348-1005 / FAX: (858) 348-1150

5

6  Attorneys for Plaintiffs

7

8         SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            IN AND FOR THE COUNTY OF LOS ANGELES

10  BRIAN FRIEDMAN and DANIEL        CASE NO.
    BROWN, individually and on behalf                B C 4 8 8 3 5 2
11  of all others similarly situated,   CLASS ACTION

12              Plaintiffs,

13        v.                          AFFIDAVIT OF VENUE PLAINTIFF
                                      BRIAN FRIEDMAN
14  MERCEDES-BENZ USA, LLC, a
    Delaware Limited Liability
15  Company;
    KEYES EUROPEAN LLC, a
16  California Limited Liability
    Company;
17  MERCEDES-BENZ FINANCIAL
    SERVICES USA, LLC, a Delaware
18  Limited Liability Company; and
    DOES 1 through 10, inclusive,
19

20              Defendants.

21

22  I, BRIAN FRIEDMAN, declare as follows:

23        1.    I am the Plaintiff in this action and make this declaration to the best of

24  my knowledge, information and belief of the facts stated herein.

25        2.    I leased the 2012 Mercedes CLS550 (VIN: WDDLJ7DB8CA013758) that

26  is the subject of this litigation from Keyes European LLC, doing business as Keyes

27  European, in the City of Van Nuys, County of Los Angeles, State of California.

28  ///

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 13 2012

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
A.T. LaFLEUR-GRATTON



1

1    3.    I signed all paperwork for the lease of the 2012 Mercedes CLS550 in Van

2  Nuys, California.

3    4.    Accordingly, the causes of action asserted in the complaint have been

4  commenced in the proper county or judicial district for trial.

5    I declare under penalty of perjury under the laws of the State of California that

6  the foregoing is true and correct and that this declaration was signed on the 26 day

7  of JUNE , 2012, at Hollywood, California.

8

9

10  BRIAN FRIEDMAN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

AFFIDAVIT OF VENUE BY PLAINTIFF BRIAN FRIEDMAN          Exhibit B
                                                        Page 67 of 67

**EXHIBIT C**

 CT Corporation

**Service of Process Transmittal**
07/26/2012
CT Log Number 520936650

**TO:** Marco DeSanto, General Counsel
Mercedes-Benz USA, LLC
One Mercedes Drive, PO Box 350
Montvale, NJ 07645-0350

**RE:  Process Served in California**

**FOR:** Mercedes-Benz USA, LLC (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Brian Friedman and Daniel Brown, Pltfs. vs. Mercedes-Benz USA, LLC, Dft. |
| **DOCUMENT(S) SERVED:** | Affidavit, Proof of Service |
| **COURT/AGENCY:** | Los Angeles County - Superior Court - Hill Street, CA<br>Case # BC488352 |
| **NATURE OF ACTION:** | Product Liability Litigation - Breach of Warranty - Affidavit of prejudice peremptory challenge to judicial officer |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Regular Mail on 07/26/2012 postmarked on 07/24/2012 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | Christopher P. Barry<br>Rosner, Barry & Babbitt, LLP<br>10085 Carroll Canyon Road<br>Suite 100<br>San Diego, CA 92131<br>858 348 1005 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/27/2012, Expected Purge Date: 08/26/2012<br>Image SOP<br>Email Notification, Marco DeSanto marco.desanto@daimler.com<br>Email Notification, Sharon Duffy Sharon.Duffy@mbusa.com<br>Email Notification, Paula Staropoli paula.staropoli@mbusa.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street<br>Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Exhibit C
Page 1 of 15

 CT Corporation

**Service of Process
Transmittal**
07/26/2012
CT Log Number 520936650

**TO:**  Marco DeSanto, General Counsel
Mercedes-Benz USA, LLC
One Mercedes Drive, PO Box 350
Montvale, NJ 07645-0350

**RE:**  **Process Served in California**

**FOR:**  Mercedes-Benz USA, LLC (Domestic State: DE)

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
|---|---|---|---|
| Summons, Instructions, Cover Sheet, Addendum and Statement, Notice, ADR Packet, Complaint, Exhibit(s), Affidavit | By Process Server on 07/23/2012 at 17:38 | Marco DeSanto, General Counsel Mercedes-Benz USA, LLC | 520910676 |

Page 2 of  2 / WT

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Exhibit C
Page 2 of 15

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| Christopher P. Barry<br>Rosner, Barry & Babbitt, LLP<br>10085 Carroll Canyon Rd, Ste 100<br>San Diego, California 92131 | 179308 | |

ATTORNEY FOR (Name): Brian Friedman and Daniel Brown

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:
600 South Commonwealth Avenue

PLAINTIFF:
Brian Friedman and Daniel Brown

DEFENDANT:
Keyes European

| AFFIDAVIT OF PREJUDICE<br>PEREMPTORY CHALLENGE TO JUDICIAL OFFICER<br>(Code Civ. Proc., § 170.6) | CASE NUMBER:<br>BC 488352 |
|---|---|

| Name of Judicial Officer<br>Honorable Anthony J. Mohr | Dept./Div. Number<br>309 |
|---|---|
| ☒ Judge          ☐ Commissioner | ☐ Referee |

I am a party (or attorney for a party) to this action or special proceeding. The judicial officer named above, before whom the trial of, or a hearing in, this case is pending, or to whom it has been assigned, is prejudiced against the party (or his or her attorney) or the interest of the party (or his or her attorney), so that declarant cannot, or believes that he or she cannot, have a fair and impartial trial or hearing before the judicial officer.

| I declare under penalty of perjury, under the laws of the State of California<br>that the foregoing is true and correct. | | |
|---|---|---|
| Date:<br><br>July 24, 2012 | Signature of Declarant | Christopher P. Barry<br>(Name of Party)<br>☒ Plaintiff   ☐ Cross Complainant<br>☐ Defendant   ☐ Cross Defendant |

## AFFIDAVIT OF PREJUDICE
PEREMPTORY CHALLENGE TO JUDICIAL OFFICER

Code Civ. Proc., § 170.6

Exhibit C
Page 3 of 15

## PROOF OF SERVICE

*FRIEDMAN v. KEYES EUROPEAN*
CASE NO. **BC 488352**

    I am employed in the County of San Diego, State of California.  I am over the age of 18 and not a party to the within action.  My business address is: 10085 Carroll Canyon Road, First Floor, San Diego, California 92131.

    On July 24, 2012, I served the foregoing document(s) described as:

### AFFIDAVIT OF PREJUDICE / PEREMPTORY CHALLENGE TO JUDICIAL OFFICER

on the interested parties in this action at San Diego, California addressed as follows:

| | |
|---|---|
| Jeffrey S. Gubernick, Esq.<br>Bishton Gubernick<br>6701 Center Drive West, Suite 925<br>Los Angeles, CA 90045<br><br>Tel:  (310) 337-4866<br>Fax:  (310) 337-4860<br><br>Attorney for Defendant<br>Keyes European | Mercedes-Benz Financial Services USA, LLC<br>c/o CT Corporation Service<br>818 West Seventh Street<br>Los Angeles, CA 90017<br><br>Agent for Service of Process |
| Mercedes-Benz USA, LLC<br>c/o CT Corporation Service<br>818 West Seventh Street<br>Los Angeles, CA 90017<br><br>Agent for Service of Process | |

[X]  **BY U.S. MAIL:**  I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and:

    [X] placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the business's practice for collecting and processing correspondence for mailing.  Under that practice, on the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage thereon fully prepaid, at San Diego, California.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]  **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    Executed on July 24, 2012 at San Diego, California.

_____
Amie Olesko



UNITED STATES POSTAGE
PITNEY BOWES
$ 000.45⁰
02 1P
0003103693    JUL 24 2012
MAILED FROM ZIP CODE 92131

Exhibit C
Page 5 of 15

Mercedes-Benz USA, LLC
c/o CT Corporation Service
818 West Seventh Street
Los Angeles, CA 90017

Rosner, Barry & Babbitt, LLP's

AUTO
FRAUD
LEGAL CENTER
Because nobody should be cheated.™

10085 Carroll Canyon Road, Suite 100
San Diego, CA 92131

 CT Corporation

**Service of Process
Transmittal**
08/09/2012
CT Log Number 521015600

**TO:**   Marco DeSanto, General Counsel
Mercedes-Benz USA, LLC
One Mercedes Drive, PO Box 350
Montvale, NJ 07645-0350

**RE:**   **Process Served in California**

**FOR:**   Mercedes-Benz USA, LLC (Domestic State: DE)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:**   Brian Friedman and Daniel Brown, etc., Pltfs. vs. Mercedes-Benz USA, LLC, etc., et al., Dfts.

**DOCUMENT(S) SERVED:**   Proof of Service, Minutes

**COURT/AGENCY:**   Los Angeles County - Superior Court - Hill Street, CA
Case # BC488352

**NATURE OF ACTION:**   Product Liability Litigation - Breach of Warranty - Minute order re: peremptory challenge

**ON WHOM PROCESS WAS SERVED:**   C T Corporation System, Los Angeles, CA

**DATE AND HOUR OF SERVICE:**   By Regular Mail on 08/09/2012 postmarked on 08/07/2012

**JURISDICTION SERVED :**   California

**APPEARANCE OR ANSWER DUE:**   None Specified

**ATTORNEY(S) / SENDER(S):**   Christopher P. Barry
Rosner, Barry & Rabbitt, LLP
10085 Carroll Canyon Road
Suite 100
San Diego, CA 92131
858 348 1005

**ACTION ITEMS:**   CT has retained the current log, Retain Date: 08/10/2012, Expected Purge Date: 09/09/2012
Image SOP
Email Notification, Marco DeSanto marco.desanto@daimler.com
Email Notification, Sharon Duffy Sharon.Duffy@mbusa.com
Email Notification, Paula Staropoli paula.staropoli@mbusa.com

**SIGNED:**   C T Corporation System
**PER:**   Nancy Flores
**ADDRESS:**   818 West Seventh Street
Los Angeles, CA 90017
**TELEPHONE:**   213-337-4615

---

Page 1 of 2 / AP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Exhibit C
Page 6 of 15

 CT Corporation

**Service of Process Transmittal**
08/09/2012
CT Log Number 521015600

**TO:**  Marco DeSanto, General Counsel
Mercedes-Benz USA, LLC
One Mercedes Drive, PO Box 350
Montvale, NJ 07645-0350

**RE:**  **Process Served in California**

**FOR:**  Mercedes-Benz USA, LLC (Domestic State: DE)

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
|---|---|---|---|
| Affidavit, Proof of Service | By Regular Mail on 07/26/2012 postmarked on 07/24/2012 | Marco DeSanto, General Counsel Mercedes-Benz USA, LLC | 520936650 |
| Summons, Instructions, Cover Sheet, Addendum and Statement, Notice, ADR Packet, Complaint, Exhibit(s), Affidavit | By Process Server on 07/23/2012 at 17:38 | Marco DeSanto, General Counsel Mercedes-Benz USA, LLC | 520910676 |

Page 2 of  2 / AP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Exhibit C
Page 7 of 15

1 | ROSNER, BARRY & BABBITT, LLP
Christopher P. Barry, SBN: 179308
2 | Angela J. Smith, SBN: 216876
Dana R. Turner, SBN: 280039
3 | 10085 Carroll Canyon Road, Suite 100
San Diego, California 92131
4 | TEL: (858) 348-1005 / FAX: (858) 348-1150

5

Attorneys for Plaintiffs

6

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **IN AND FOR THE COUNTY OF LOS ANGELES**

10 | BRIAN FRIEDMAN and DANIEL | CASE NO. BC488352
BROWN, individually and on behalf
11 | of all others similarly situated, | **CLASS ACTION**

12 | Plaintiffs, | **PROOF OF SERVICE**

13 | v.

14 | MERCEDES-BENZ USA, LLC, a | Dept: 322
Delaware Limited Liability | Judge: Hon. Kenneth R. Freeman
15 | Company;
KEYES EUROPEAN LLC, a | Complaint Filed: July 13, 2012
16 | California Limited Liability
Company;
17 | MERCEDES-BENZ FINANCIAL
SERVICES USA, LLC, a Delaware
18 | Limited Liability Company; and
DOES 1 through 10, inclusive,
19

20 | Defendants.

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

*FRIEDMAN v. KEYES EUROPEAN*
CASE NO. **BC 488352**

    I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action. My business address is: 10085 Carroll Canyon Road, First Floor, San Diego, California 92131.

    On August 7, 2012, I served the foregoing document(s) described as:

### MINUTE ORDER RE: PEREMPTORY CHALLENGE

### REASSIGNMENT UPON CCP 170.6 CHALLENGE

on the interested parties in this action at San Diego, California addressed as follows:

| | |
|---|---|
| Jeffrey S. Gubernick, Esq.<br>Bishton Gubernick<br>6701 Center Drive West, Suite 925<br>Los Angeles, CA 90045<br><br>Tel:  (310) 337-4866<br>Fax:  (310) 337-4860<br><br>Attorney for Defendant<br>Keyes European | MERCEDES-BENZ USA, LLC<br>c/o CT Corporation System<br>818 West Seventh Street<br>Los Angeles, CA 90017<br><br>Agent for Service of Process |
| MERCEDES-BENZ FINANCIAL<br>SERVICES USA, LLC<br>c/o CT Corporation System<br>818 West Seventh Street<br>Los Angeles, CA 90017<br><br>Agent for Service of Process | |

[X]  **BY U.S. MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and:

    (1) [] deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2) [X] placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the business's practice for collecting and processing correspondence for mailing. Under that practice, on the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage thereon fully prepaid, at San Diego, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]  **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

1

[]     **(FEDERAL]** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 7, 2012 at San Diego, California.

_Amie Olesko_

Amie Olesko

2

PROOF OF SERVICE

Exhibit C
Page 10 of 15

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/02/12

DEPT. 324

HONORABLE EMILIE H. ELIAS        JUDGE | A. MORALES        DEPUTY CLERK

HONORABLE                JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR
#8
        E. MUNOZ, C.A.        Deputy Sheriff | NONE        Reporter

BC488352

BRIAN FRIEDMAN ET AL
VS
MERCEDES-BENZ USA LLC ET AL

Plaintiff
Counsel        NONE

Defendant
Counsel

P-170.6 MOHR

**NATURE OF PROCEEDINGS:**

REASSIGNMENT UPON CCP 170.6 CHALLENGE

Good cause appearing, the above matter is reassigned
from Judge Anthony J. Mohr in Department 309
to Judge Kenneth R. Freeman in Department 322
for all purposes.

Any party who has appeared and has not previously
filed a peremptory challenge under Section 170.6 Code
of Civil Procedure, may exercise a peremptory
challenge to the newly assigned judge within the 15
day period specified in Section 170.6 Code of Civil
Procedure (with extensions of time pursuant to Code
of Civil Procedure Section 1013 if service of notice
is by mail). Any party who has not yet appeared may
exercise a peremptory challenge under Section 170.6
Code of Civil Procedure within the 15 day statutory
period from first appearance.

Counsel for the moving party is to give notice to
all parties.

        CLERK'S CERTIFICATE OF MAILING

I, the below-named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served the

        Page    1 of    2    DEPT. 324

MINUTES ENTERED
08/02/12
COUNTY CLERK

Exhibit C
Page 11 of 15

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/02/12 | DEPT. 324 |
| HONORABLE EMILIE H. ELIAS          JUDGE | A. MORALES          DEPUTY CLERK |
| HONORABLE #8          JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| E. MUNOZ, C.A.          Deputy Sheriff | NONE          Reporter |

BC488352

BRIAN FRIEDMAN ET AL
VS
MERCEDES-BENZ USA LLC ET AL

P-170.6 MOHR

Plaintiff Counsel          NONE

Defendant Counsel

---

**NATURE OF PROCEEDINGS:**

Minut Order
upon each party or counsel named below by placing
the document for collection and mailing so as to
cause it to be deposited in the United States mail
at the courthouse in Los Angeles,
California, cne copy of the original filed/entered
herein in a separate sealed envelope to each address
as shown below with the postage thereon fully prepaid,
in accordance with standard court practices.

Dated: 8-2-12

John A. Clarke, Executive Officer/Clerk

By: _____
          A. MORALES

ROSNER, BARRY & BABBITT, LLP
Christopher P. Barry
10085 Carroll Canyon Rd., Ste. 100
San Diego, California 92131

Page   2 of   2   DEPT. 324

MINUTES ENTERED
08/02/12
COUNTY CLERK

Exhibit C
Page 12 of 15

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/01/12                                                          DEPT. 309

HONORABLE ANTHONY J. MOHR        JUDGE      M. CERVANTES         DEPUTY CLERK
                                            M. RODRIGUEZ, Courtroom Assistant
HONORABLE                     JUDGE PRO TEM            ELECTRONIC RECORDING MONITOR
5
        NONE                  Deputy Sheriff  NONE              Reporter

| BC488352 | Plaintiff Counsel | |
| BRIAN FRIEDMAN ET AL | Defendant Counsel | |
| VS | | |
| MERCEDES-BENZ USA LLC ET AL | NO APPEARANCES | |

NATURE OF PROCEEDINGS:

PEREMPTORY CHALLENGE

A peremptory challenge under Section 170.6 of the
Code of Civil Procedure was filed herein on
July 24, 2012.

The Court finds that it was timely filed, in proper
format, and it is accepted.

The case is ordered transferred to Department 324 for
reassignment.

Moving party is to give notice.

         CLERK'S CERTIFICATE OF MAILING


I, the below-named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served the Minute Order dated August 1, 2012,
upon each party or counsel named below by placing
the document for collection and mailing so as to
cause it to be deposited in the United States mail
at the courthouse in Los Angeles,
California, one copy of the original filed/entered
herein in a separate sealed envelope to each address
as shown below with the postage thereon fully prepaid,
in accordance with standard court practices.

                  Page    1 of   2    DEPT. 309

| MINUTES ENTERED |
| 08/01/12 |
| COUNTY CLERK |

Exhibit C
Page 13 of 15

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/01/12                                                    DEPT. 309

HONORABLE ANTHONY J. MOHR           JUDGE   M. CERVANTES          DEPUTY CLERK
                                            M. RODRIGUEZ, Courtroom Assistant
HONORABLE                        JUDGE PRO TEM                    ELECTRONIC RECORDING MONITOR
5
        NONE                     Deputy Sheriff   NONE                        Reporter

---

        BC488352                        Plaintiff
                                        Counsel
        BRIAN FRIEDMAN ET AL
                                        Defendant
                 VS                     Counsel
        MERCEDES-BENZ USA LLC ET AL
                                                  NO APPEARANCES

---

        NATURE OF PROCEEDINGS:


        Dated:  August 2, 2012

        John A. Clarke, Executive Officer/Clerk


        By: _____
                   M. Cervantes


        Christopher P. Barry, Esq.
        Rosner, Barry & Babbitt, LLP
        10085 Carroll Canyon Road, Suite 100
        San Diego, California 92131










                     Page   2 of   2   DEPT. 309

                                                 ┌─────────────────────┐
                                                 │ MINUTES ENTERED      │
                                                 │ 08/01/12             │
                                                 │ COUNTY CLERK         │
                                                 └─────────────────────┘




Exhibit C
Page 14 of 15



*Rosner, Barry & Babbitt, LLP's*

**AUTO FRAUD** LEGAL CENTER™

*Because nobody should be cheated.™*

10085 Carroll Canyon Road, Suite 100
San Diego, CA 92131

UNITED STATES POSTAGE

$ 000.65⁰
PITNEY BOWES

02 1P        $ 000.65⁰
0003103693   AUG 07 2012
MAILED FROM ZIP CODE 92131

MERCEDES-BENZ USA, LLC
c/o CT Corporation System
818 West Seventh Street
Los Angeles, CA 90017

Exhibit C
Page 15 of 15

**EXHIBIT D**

PL510.0938 BB

*Rosner, Barry & Babbitt, LLP's*



**Because nobody should be cheated. ™**

*10085 Carroll Canyon Road, Suite 100, San Diego, CA 92131, Tel (858) 348-1005, (800) 466-5366, FAX (858) 348-1150*

May 3, 2012

## VIA U.S. MAIL & CERTIFIED MAIL
## RETURN RECEIPT REQUESTED

Keyes European
5746 Van Nuys Blvd.
Van Nuys, CA 91401

Mercedes-Benz USA, LLC
One Mercedes Drive
Montvale, NJ 07645

Mercedes-Benz Financial Services
 USA, LLC
36455 Corporate Drive
Farmington Hills, MI 48331

| | Re: | Clients: | Brian Friedman and Daniel Brown |
| | | Vehicle: | 2012 Mercedes CLS550 |
| | | VIN: | WDDLJ7DB8CA013758 |

## *NOTICE OF VIOLATION OF CALIFORNIA LAW, INCLUDING BUT NOT LIMITED TO THE CONSUMERS LEGAL REMEDIES ACT*

To Whom It May Concern:

Please be advised that this law firm has been retained by Brian Friedman and Daniel Brown to enforce their legal rights regarding the 2012 Mercedes CLS550 identified above, which Mr. Friedman leased from Keyes European (hereinafter "Keyes") on September 29, 2011. The vehicle was manufactured/distributed and advertised by Mercedes-Benz USA, LLC (hereinafter "Mercedes"). I am writing to set forth the facts, cite the applicable law, and provide you with your statutory right to resolve all of our clients' individual damage claims under the Consumers Legal Remedies Act ("CLRA").

Keyes European
Mercedes-Benz USA, LLC
May 3, 2012
Page 2

## Facts

On or about September 25, 2011, Mr. Brown was at Keyes' dealership in Van Nuys, California, to have Mr. Friedman's vehicle (a 2010 GL450) serviced. While at Keyes, Mr. Brown looked at a 2012 CLS550 and took it for a test drive with a Keyes' salesman. Mr. Brown liked the way the CLS550 handled and, upon returning home, started to research the CLS550 vehicles and their features on the Internet, by way of the Mercedes website.

Mr. Brown looked at Mercedes' website, paying particular attention to the features offered on the CLS550 vehicles, as well as the specifications and statistics regarding such things as the engine, etc. At the time, Mr. Brown was driving a 2011 Infiniti vehicle. As such, Mr. Brown was specifically looking to see if the CLS550 vehicles had all of the same features that he already had with his 2011 Infiniti or if it offered newer and/or additional features.

On the Mercedes website, the CLS550 was listed as being equipped with various standard features and/or features available if the customer purchased Mercedes' "Premium 1 Package" for the CLS550 including, but not limited to, SiriusXM Satellite Radio with SiriusXM Traffic and Weather, the "PARKTRONIC with Active Parking Assist" system, and a rear view camera that came with "active parking guidelines" on the screen. Mercedes advertises the 2012 CLS550 vehicle as coming with a free, 6-month trial subscription to SiriusXM Satellite Radio, which included SiriusXM Traffic and SiriusXM Weather. Mercedes advertises the PARKTRONIC with Active Parking Assist as follows on its website: "Active Parking Assist helps you size up parallel-parking spaces as you drive by, using sensors in the bumper to determine if a spot can fit your car. It then expertly steers the car into the space while you control the brakes and gear selection. In any low-speed maneuver, PARKTRONIC's ultrasonic sensors in the front and rear bumpers help detect nearby objects within the system's field of view. Audible signals and illuminated displays in the cabin help you navigate tight spaces with confidence."

After researching on Mercedes' website, Mr. Brown decided he liked the 2012 CLS550 and was particularly interested in the above-noted features, as the driveway at his house is quite narrow and he and Mr. Friedman have to park two vehicles in a tandem fashion. Moreover, the Infiniti vehicle that Mr. Brown had at that time did not have anything equivalent to Mercedes' PARKTRONIC system, although the Infiniti did have the parking guidelines and SiriusXM Weather features.

Keyes European
Mercedes-Benz USA, LLC
May 3, 2012
Page 3

A few days later, Mr. Brown and Mr. Friedman went back to Keyes to pick up Mr. Friedman's 2010 GL450 vehicle from Keyes' service department. While at Keyes, Mr. Friedman began looking at other Mercedes SUVs on the lot. Eventually, Mr. Friedman decided to lease a 2011 GL550, which would be his vehicle, that Keyes had on its lot.

Mr. Friedman, Mr. Brown, and the Keyes salesman they were dealing with – Joseph – took the 2011 GL550 for a test drive. During the test drive, Mr. Brown asked Joseph various questions about the features of the CLS550 vehicles. Specifically, Joseph represented that the 2012 CLS550 vehicles had SiriusXM Traffic *and* Weather. Additionally, Joseph represented that *all* 2012 Mercedes vehicles had the active parking guidelines on the rear view camera as "standard" equipment but that the 2011 Mercedes vehicles – like the 2011 GL550 they were test driving – did *not* have the active parking guidelines. Mr. Brown told Joseph the PARKTRONIC system and the rear view camera with active parking guidelines were critical features to him because of the size of their driveway and the manner in which they parked. Because it was so important to Mr. Brown, he again asked Joseph whether the 2012 CLS550 vehicles had the parking sensors/alarms (*i.e.*, PARKTRONIC) and the active parking lines. Joseph responded "yes."

Upon returning to the lot, Mr. Friedman and Mr. Brown accompanied Joseph into the dealership to discuss Mr. Friedman's lease of the 2011 GL550. While running the numbers and getting the documents ready for the lease of that vehicle to Mr. Friedman, Joseph kept telling Mr. Brown, "next, we'll get you settled into that CLS." In fact, Joseph had a CLS550 brought around to the front of the dealership, so Mr. Brown could "look at it again." Mr. Brown repeatedly told Joseph "not to bother" because the CLS550 was out of his budget.

However, Joseph kept pushing the CLS550 on Mr. Brown and Mr. Friedman. In fact, while they were waiting for Mr. Friedman's 2011 GL550 to be detailed, Joseph took them both on another test drive in the CLS550. During this test drive, Joseph again pointed out the features of the CLS550, focusing on the features that were different from the 2011 GL450 Mr. Friedman had just leased from Keyes.

Back at the dealership once again, Joseph took Mr. Brown and Mr. Friedman inside the dealership, this time to talk numbers for the CLS550. Mr. Brown told Joseph he wanted to use his Infiniti vehicle as a trade-in. Joseph took Mr. Brown's registration and apparently contacted Infiniti Financial Services to obtain the lease payoff on the Infiniti trade-in. Joseph told Mr. Brown Keyes would "take his Infiniti and pay it off." Mr. Brown believed Keyes would take the Infiniti as a straight trade

Keyes European
Mercedes-Benz USA, LLC
May 3, 2012
Page 4

and that it would be a "wash" – meaning he would not have to pay any extra down towards the CLS550 and whatever value they gave him for the Infiniti would be the same as whatever he still owed on the lease on it.

Mr. Brown did not believe he was "upside down" or had any negative equity in the Infiniti as he had only had it for approximately two years and had put $6,000 down towards the lease of it. Furthermore, if there was any negative equity, he did not believe it would be rolled into any new deal he signed with Keyes. Further, no one at Keyes ever told Mr. Brown or Mr. Friedman that any negative equity (if there was any) in Mr. Brown's Infiniti vehicle would be rolled into the deal for the CLS550. Furthermore, no one at Keyes ever told Mr. Brown how much they were giving him for his trade-in vehicle. Only after signing the lease and taking delivery did our clients discover Keyes had credited them only $36,000 for the Infiniti, for which the payoff was approximately $38,000, thereby creating over $2,000 in negative equity. As it turns out, Keyes later placed Mr. Brown's Infiniti on its lot for an advertised price of approximately $43,000.

Joseph told Mr. Brown Keyes could get him into the CLS550 for $5,000 down, with monthly payments of approximately $1,500. Mr. Brown told Joseph that was too much, that he could not afford the vehicle on those terms. Joseph left and returned, offering Mr. Brown the CLS550 for $5,000 down and monthly payments of $1,200. Again, Mr. Brown told Joseph it was "too much" and he could not afford it. In fact, Mr. Brown told Joseph he could not afford monthly payments over $1,000 and could not put more than $3,000 down. After numerous times of Joseph leaving to allegedly speak with a manager and returning, he eventually offered Mr. Brown a "great deal" for the CLS550 (stating Keyes was only offering such a "great deal" because they are getting two vehicles) – $3,000 down and monthly payments of approximately $960.

Wanting to think about it, Mr. Brown and Mr. Friedman went back outside to look at the CLS550. Mr. Brown liked the vehicle – which would be his personal vehicle – and believing they were getting a great deal considering the cost of the vehicle (*i.e.*, roughly $80,000), they decided to lease the CLS550 on the offered terms.

Mr. Brown and Mr. Friedman were then introduced to a Keyes' Finance Manager, who prepared all of the documents for their lease of the CLS550 vehicle, including a Motor Vehicle Lease Agreement. At that time, the Finance Manager presented Mr. Friedman with the lease documents for the CLS550 vehicle, including the Lease Agreement, and simply instructed him where to sign and initial the documents. Again, no one from Keyes ever told Mr. Friedman or Mr. Brown that Mr. Brown was "upside down" or allegedly had negative equity in the Infiniti trade-in

Keyes European
Mercedes-Benz USA, LLC
May 3, 2012
Page 5

vehicle or that Keyes would be rolling that negative equity into the lease for the CLS550.

After signing the lease documents, Mr. Brown and Mr. Friedman left Keyes' dealership with their newly-leased vehicles.

Upon returning home with the vehicles, Mr. Brown began inspecting his CLS550 in more detail and trying out the various features of the vehicle. At that point, Mr. Brown noticed that the CLS550 vehicle they had leased from Keyes did *not* have the PARKTRONIC system or the active parking guidelines on the rear view camera. Upon discovering these facts, Mr. Brown promptly called Joseph at Keyes to report these missing features. Joseph told Mr. Brown to come back to Keyes the following day (as the dealership was closed by then), and they would figure it out.

Accordingly, on September 29, 2011, Mr. Brown returned to Keyes' dealership and met with Joseph. At that time, Joseph apologized and told Mr. Brown he believed the CLS550 Keyes had leased to them *was* equipped with the "PARKTRONIC" system when, in fact, the vehicle did not have PARKTRONIC but instead had a "smart" cruise control feature instead. Joseph and Mr. Brown began looking on Keyes' lot for a different CLS550 vehicle to "swap out" for the one they had been given the day before.

Eventually, Joseph and Mr. Brown located another 2012 CLS550 vehicle (VIN: WDDLJ7DB8CA013758) (the "Vehicle"). Joseph represented the Vehicle had the PARKTRONIC system, as well as the rear view camera with active parking guidelines, and SiriusXM Weather as well as a few other features that were not on the previous 2012 CLS550 (*i.e.*, illuminated door sills and active multi-contour driver's seat), and was approximately the same price as the previous vehicle. Joseph told Mr. Brown Keyes would lease him the Vehicle in exchange for the previous one and that his monthly payments would be a little higher due to the slightly different features. None of the other financial terms of the lease were discussed, including terms relating to Mr. Brown's trade-in vehicle, as Mr. Brown was lead to believe that none of those terms would be changing as the cars were simply being "swapped out," with the slight difference in monthly lease payments.

Keyes prepared the lease documents for the Vehicle and Mr. Friedman came to the dealership from his work and quickly signed all of the new documents for the lease of the Vehicle, including a Mercedes-Benz Financial Services Motor Vehicle Lease Agreement ("VLA") for the Vehicle. Enclosed for your convenience is a true and correct copy of the VLA executed by Mr. Friedman and Keyes on September 29, 2011.

Keyes European
Mercedes-Benz USA, LLC
May 3, 2012
Page 6

Mr. Brown again left Keyes' dealership with a 2012 CLS550. Having no reason to believe Keyes would have made the same mistake twice, Mr. Brown did not immediately "test" out all the features of the Vehicle. A few days later, after having difficulty locating and/or using the SiriusXM Weather feature, Mr. Brown called Joseph at Keyes to seek his assistance with it.

Joseph told Mr. Brown to look for the "Globe" icon, as that is the icon to activate/use the SiriusXM Weather feature. Mr. Brown then informed Joseph there was no Globe icon anywhere. At which point Joseph told Mr. Brown to return to the dealership with the Vehicle and he would show him where it is and how to use it.

After hanging up with Joseph, Mr. Brown took the Vehicle to a friend of his who works for Mercedes, lives close by, and who also has a 2012 CLS550, to see if his friend could help him access the SiriusXM Weather feature. Once seated in his friend's 2012 CLS550, Mr. Brown noticed a number of differences between his 2012 CLS550 and his friend's car.

For example, the illuminated door sills on the Vehicle were blue (instead of white, as on his friend's CLS550) and are located higher on the vehicle. The map in his friend's vehicle looked different and, apparently, had Version 6.0 2011/2012 map software and data, when his Vehicle came equipped with Version 4.0. 2010/2011. Additionally, his friend's steering wheel was flat-bottomed and all chrome around the buttons, with perforated grips. The steering wheel on Mr. Brown's Vehicle has only perforated grips, has limited chrome, and is completely round.

After noting the various differences between the CLS550 vehicles, his friend told Mr. Brown that his Vehicle was an "early production version" of the Mercedes 2012 CLS550 vehicle. In fact, his friend told him he had seen an internal Mercedes e-mail stating Mercedes had made some changes to the features of the 2012 CLS550 vehicles after the first 2012 CLS550s had been "pushed out."

Upon learning this disturbing information, Mr. Brown went straight to Keyes' dealership to talk to Joseph about the missing features. Mr. Brown told Joseph that the trouble he had been having accessing the SiriusXM Weather feature was because the Vehicle did not, in fact, have SiriusXM Weather. Mr. Brown told Joseph Keyes had sold him an "old car" with outdated software. Joseph replied he did not know what Mr. Brown was talking about. Mr. Brown then told Joseph his friend told him the Vehicle was an early-production model CLS550, which was missing some of the features available on the current production models. Mr. Brown took Joseph into Keyes' showroom, where there was another 2012 CLS500 vehicle, and proceeded to

Keyes European
Mercedes-Benz USA, LLC
May 3, 2012
Page 7

point out the other differences in features he had noticed when comparing his Vehicle to his friend's, such as illuminated door sills, the steering wheel, and the Map software version. Mr. Brown also pointed out that the audio system in his Vehicle had a compact flash reader, while the showroom floor model had an SD card reader. Mr. Brown told Joseph that the rear view camera in the Vehicle did *not* have the active parking guidelines.

Understandably angry that the Vehicle Keyes had leased them did not have key features he had wanted and had been assured it had, Mr. Brown demanded that Keyes immediately provide the software update to address the outdated Map software/data problem. He told the Service Manager that the Map software should be Version 6.0 2011/2012, which was the version installed on his friend's 2012 CLS550. Keyes advised Mr. Brown that it did not have the software update in stock and would have to order it, and it would take 2-4 weeks. Mr. Brown left with the Vehicle and Keyes was to call him when the part was in for the software update.

Later, Mr. Brown told his friend that his Vehicle was also missing the active parking guidelines on the rear view camera, to which his friend responded that the 2012 CLS550 did not come "equipped" with active parking guidelines, which is directly contrary to the advertisements on Mercedes' website and to the representations made by Keyes.

Finally, approximately six weeks later, Keyes called and told Mr. Brown the parts were in for the software update. However, the update on the map software failed. Mr. Brown has been told the software update will not work to update his map to the correct version (Version 6.0 2011/2012) because of an apparent difference in the hardware between his Vehicle and other 2012 CLS550 vehicles, for which the software update would work. Additionally, Keyes told him it could not replace the hardware (which would accept the software update) as those parts were not currently available. As such, Keyes told Mr. Brown it did not know how long it would be before his Vehicle's software could be updated.

Accordingly, Mr. Brown demanded Keyes take the Vehicle back, since no one was able to tell him when it would have the features he had asked for and had paid for. Mr. Brown explained the situation to Keyes' General Sales Manager and demanded Keyes give him a "real" 2012 CLS550. Keyes' General Sales Manager told Mr. Brown Keyes was not able to grant his request as only Mercedes-Benz could authorize a replacement vehicle.

Keyes European
Mercedes-Benz USA, LLC
May 3, 2012
Page 8

In fact, since leasing the Vehicle from Keyes, Mr. Brown and Mr. Friedman have discovered that only *certain* 2012 models (*e.g.*, those produced in the latter part of 2011) were equipped with features Mercedes advertised as "standard," and the vehicle Keyes leased to him was *not* one of those later 2012 models. The advertisements Mr. Brown saw before the lease of the Vehicle from Keyes did not make this discrepancy clear, nor did they state that only certain 2012 models were equipped with the certain features. Furthermore, Keyes also misrepresented the features and equipment on the Vehicle on numerous occasions.

Most notably, Mercedes and Keyes advertised the 2012 CLS550 vehicles came equipped with SiriusXM Radio, including SiriusXM Traffic and Weather, and active parking guidelines on the rear view camera. Mercedes and Keyes represented these two features were "standard" features of the 2012 CLS550 vehicles for which the "Premium 1 Package" were ordered. Mr. Brown asked for the "Premium 1 Package" and paid for that package. Mr. Brown was repeatedly assured his Vehicle would have these features – yet it does not. Additionally, if a customer opted to purchase "upgraded" wheels (*i.e.*, 18" or 19" Alloy 5-spoke wheels), the vehicle was supposed to come with a "sport-steering wheel," which was "flat-bottomed" for easier ingress and egress, had perforated grips, pronounced contours, and complete chrome around the buttons/controls. Despite the fact Mr. Brown and Mr. Friedman asked and paid for 19" Alloy 5-spoke wheels, the steering wheel in the Vehicle is completely round and is not all chrome around the buttons/controls.

Ironically, on October 21, 2011, Mr. Friedman received a letter from Mercedes and SiriusXM Satellite Radio, welcoming him to the SiriusXM services and stating "Your Mercedes-Benz is equipped with many exciting features – including a 6-month trial subscription to SiriusXM Satellite Radio, SiriusXM Traffic *and SiriusXM Weather.*" (Emphasis added.) Enclosed for your convenience is a copy of the October 21, 2011 "welcome" letter.

Mr. Brown and Mr. Friedman would not have leased the Vehicle if they had known it did not have the active parking guidelines for the rear view camera or the SiriusXM Weather feature, because he already had these features in his Infiniti. As such, he would not have decided to lease a new car for substantially more money if the car had even *fewer* features than the Infiniti he was then driving.

Nowhere on Mercedes' website is there a disclaimer that only 2012 CLS550 vehicles manufactured after a certain date would be equipped with the SiriusXM Weather feature. Furthermore, no one at Keyes told Mr. Brown or Mr. Friedman that SiriusXM Weather would not be available on the Vehicle it was leasing to them. In

Keyes European
Mercedes-Benz USA, LLC
May 3, 2012
Page 9

fact, Mr. Brown and Mr. Friedman were repeatedly told by Keyes the 2012 CLS550 Vehicle leased to them did have SiriusXM Weather. Additionally, Mercedes advertises and Keyes repeatedly represented the Vehicle came with active parking guidelines for the rear view camera when it clearly does not have them.

Mr. Friedman and Mr. Brown have attempted to resolve this matter without the involvement of legal counsel. Mr. Brown called Mercedes' Customer Service department and filed a complaint. In response, Mercedes contacted Mr. Brown and advised him there was "nothing we can do for you." Mr. Brown also filed a claim with the BBB, which was denied.

Importantly, Keyes admitted to the BBB that in July, 2011, there was a production change for the 2012 CLS550 vehicles, which added the SiriusXM Weather feature. Therefore, the Vehicle leased to Mr. Friedman and Mr. Brown, which was allegedly manufactured by Mercedes in May, 2011, clearly did not – and never would have – had the SiriusXM Weather feature, despite the representations made by Mercedes and Keyes, at the time, to the contrary.

Mercedes-Benz Financial Services USA, LLC ("MB Financial") is the assignee who accepted assignment of the VLA for Mr. Friedman's lease of the Vehicle. Because MB Financial is the assignee, all claims and defenses that Mr. Friedman can maintain against Keyes can also be maintained against MB Financial.

<u>**Applicable Law**</u>

Under Civil Code § 1770(a) of the CLRA, the following acts are prohibited:

(5)   representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

(7)   representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

(9)   advertising goods or services with intent not to sell them as advertised;

(14)   representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and

Keyes European
Mercedes-Benz USA, LLC
May 3, 2012
Page 10

(16)   representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

Mercedes and Keyes have violated the CLRA by: (1) misrepresenting the features of the 2012 CLS550 vehicles; (2) misrepresenting that the rear view camera available on 2012 CLS550 vehicles came with active parking guidelines; (3) misrepresenting that 2012 CLS550 vehicles came equipped with a trial subscription to SiriusXM Radio, that included SiriusXM Traffic *and* SiriusXM Weather; (4) misrepresenting that 2012 CLS550 vehicles purchased together with a "5-spoke wheel package" would come equipped with a flat-bottomed steering wheel and all chrome around the bottons on the steering wheel;  (5) failing to disclose that only certain 2012 CLS550 vehicles were equipped with the above-noted features; and (6) failing to disclose that 2012 CLS550 vehicles manufactured before July 2011 would not come equipped with the SiriusXM Weather feature.

## Individual CLRA Demand

Accordingly, on behalf of my clients I request that you remedy the violations detailed above within 30 days.  I also request that you rescind Mr. Friedman's lease agreement, refund his lease inception payment, return all of his lease payments, and pay all other incidental and consequential damages he has incurred.  You must also pay the legal fees our clients' have incurred in enforcing their legal rights.  If you fully comply with these requests, that will resolve our clients' individual CLRA damage claims.

## Demand for Injunctive Relief and Class-Wide Remedy

We also demand that Keyes and Mercedes consent to the entry of a specific injunction preventing any further predatory acts against the public. The proposed injunction would prohibit Keyes and Mercedes from violating the previously set-forth CLRA provisions and/or engaging in the aforementioned illegal acts perpetrated against my clients.

Keyes and Mercedes must also undertake all of the following actions to satisfy the requirements of California Civil Code § 1782(c).

(1)   Keyes and Mercedes must identify or make a reasonable attempt to identify all consumers who leased or purchased a 2012 CLS550 [manufactured in 2011], from Keyes and Keyes and/or Mercedes engaged in any of the illegal acts identified above.

Keyes European
Mercedes-Benz USA, LLC
May 3, 2012
Page 11

(2)    Notify all persons so identified that, upon their request, you will offer an appropriate correction, replacement, or other remedy for your wrongful conduct.

(3)    Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all affected persons who so request.

(4)    Cease the unlawful methods, acts, or practices set forth above.

(5)    Agree to an injunction to establish written policies and procedures to prevent further violations.

Furthermore, you are hereby on notice to preserve any and all documents, data and tangible things that may be relevant to this litigation. This duty applies to physical as well as electronically stored information, which include but are not limited to: e-mails, voicemails (both sent and received), word-processing documents (including drafts and revisions), spreadsheets, all presentation data and slides, all graphs, charts, and other data produced by project management software, all databases, all databases generated by calendaring, task management and personal information management software (such as Microsoft Outlook or Lotus Notes), and all associated metadata created by document management software, logs of network use by employees, and any and all other files generated by users through the use of computers that pertain to Mr. Brown, Mr. Friedman, and/or the 2012 Mercedes-Benz CLS550 identified above.

Under California law you have 30 days from your receipt of this letter to remedy your illegal conduct. While a lawsuit for injunctive relief under the CLRA will be filed, as well as other causes of actions, the 30-day period is provided to all potential Defendants.

Finally, Mr. Friedman and Mr. Brown have turned this matter over to our firm. Do not under any circumstances attempt to contact them directly. Instead, send all further correspondence regarding this matter to me at the address listed above.

Very truly yours,

Hawk Barry

HB:jdd
Enclosures

cc:    Brian Friedman and Daniel Brown

**Mercedes-Benz Financial Services**

The First Class Lease®

**CALIFORNIA**
Motor Vehicle Lease Agreement

**Type of Lease**

☐ Standard Lease   ☐ Single Payment Lease

**Dates**

**Parties**

**Vehicle Information**

☐ New   ☐ Preowned   VIN

| Year | Make | Model | Body Style | Odometer reading |
|------|------|-------|-----------|------------------|
| 2012 | MERCEDES | CLS550C | 4DR CPE | 19 |

Optional Factory Equipment

☐ CD Player          ☐ Telephone
☐ Other (please specify)

Primary Intended Use
☐ Personal   ☐ Business, Commercial, or Agricultural Purposes

**Consumer Leasing Act Disclosures**

6. Your monthly payment is determined as shown below:

  

October 21, 2011

**The SiriusXM Services In Your New**
**Mercedes-Benz Are Now Active**

Radio ID (ESN):   042664861431
Account #:        111200435653

Brian Friedman              00014
5633 Irvine Ave
North Hollywood, CA  91601-1752

Dear Brian Friedman:

**Welcome to SiriusXM.** Your Mercedes-Benz is equipped with many exciting features — including a 6-month trial subscription to SiriusXM Satellite Radio, SiriusXM Traffic and SiriusXM Weather.

With the Sirius Select package, you have access to over 130 channels of great entertainment, including all types of commercial-free music, plus the best sports, talk, world-class news, kids' programming, comedy, weather and more.

SiriusXM Traffic provides updates on accidents, traffic flow, construction and road closures. This service is integrated with your vehicle's navigation system, so you can pick the fastest route based on current traffic conditions.

SiriusXM Weather uses the same sources that professional pilots and mariners rely on every day and provides you with continuously updated weather information. This service helps you stay in control with detailed weather forecasts and maps at the press of a button.

**Get Free Program Alerts and Newsletters**
Keep in touch with the latest SiriusXM information including new channels, live performances, special events, sports schedules and more. Just click on "Sign Up for Our Free E-Newsletter" at **siriusxm.com/GetMostofSiriusTrial.**

To continue enjoying SiriusXM once your trial is over, just complete and return the enclosed renewal form in the postage paid envelope provided. You may also renew online at **siriusxm.com/extendnow** or call SiriusXM at **1-866-635-2487.** After your trial ends, the Sirius Select package is only $12.95* a month — or less if you take an annual or longer plan.

Sincerely,

Ralph Fisher
General Manager
Customer Assistance Center
Mercedes-Benz USA

Joe Zarella
Chief Service Officer
SiriusXM Radio

P.S. For your convenience, you can renew now and you will not be charged until the end of your trial.
Just send in the enclosed renewal form *before* your trial ends to avoid an interruption in your SiriusXM service.*

*See SiriusXM Customer Agreement for complete terms at www.siriusxm.com. If you decide to continue your SiriusXM service at the end of your trial subscription, the paid plan you choose will automatically renew and bill at then-current rates until you call SiriusXM at 1-866-635-2349 to cancel. Complete details and restrictions on reverse. Prices shown are for the Sirius Select package of audio channels. Prices do not include Sirius Premier, SiriusXM Traffic and SiriusXM Weather.